Cam Ferenbach
Nevada Bar No. 96
Jennifer L. Braster
Nevada Bar No. 9982
LIONEL SAWYER & COLLINS
1700 Bank of America Plaza
300 South Fourth Street
Las Vegas, Nevada 89101
(702) 383-8888 (Telephone)
(702) 383-8845 (Fax)
cferenbach@lionelsawyer.com
jbraster@lionelsawyer.com

Mark A. Hannemann, *admitted pro hac vice*
Jeffrey S. Ginsberg, *admitted pro hac vice*
Richard M. Cowell, *admitted pro hac vice*
KENYON & KENYON LLP
One Broadway
New York, NY 10004
(212) 425-7200 (Telephone)
mhannemann@kenyon.com
jginsberg@kenyon.com
rcowell@kenyon.com

*Attorneys for Robert Bosch LLC*

## UNITED STATES DISTRICT COURT
### DISTRICT OF NEVADA

| | |
|---|---|
| ROBERT BOSCH LLC,<br><br>       Plaintiff,<br><br>   v.<br><br>ADM 21 CO., LTD.; ADM USA; and<br>ADM NORTH AMERICA,<br><br>       Defendants. | Case No. 2:10-cv-01930-RLH-LRL |

### PLAINTIFF ROBERT BOSCH LLC'S
### <u>OPENING CLAIM CONSTRUCTION BRIEF</u>

LIONEL SAWYER
& COLLINS
ATTORNEYS AT LAW
1700 BANK OF AMERICA PLAZA
300 SOUTH FOURTH ST.
LAS VEGAS,
NEVADA 89101
(702) 383-8888

1

## TABLE OF CONTENTS

2  I.   STATEMENT OF FACTS ...................................................................................... 1

3       A.  Bosch's '905 and '698 patents ................................................................. 2

4       B.  Bosch's '607 Patent ................................................................................. 3

5  II.  ARGUMENT ....................................................................................................... 3

6       A.  Relevant Claim Construction Principles ................................................. 3

7       B.  Claim Terms From The '607 Patent .......................................................... 5

8       C.  Claim Terms From The '698 Patent .......................................................... 8

9       D.  Claim Terms From The '905 Patent ........................................................ 12

10 III. CONCLUSION .................................................................................................. 21

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

LIONEL SAWYER
& COLLINS
ATTORNEYS AT LAW
1700 BANK OF AMERICA PLAZA
300 SOUTH FOURTH ST.
LAS VEGAS,
NEVADA 89101
(702) 383-8888

# TABLE OF AUTHORITIES

**Cases**

*Acumed LLC v. Stryker Corp.*,
   483 F.3d 800 (Fed. Cir. 2007)..................................................................... 7, 13

*Akamai Techs., Inc. v. Cable & Wireless Internet Servs., Inc.*,
   344 F.3d 1186 (Fed. Cir. 2003)........................................................................ 16

*Astrazeneca L.P. v. Apotex, Inc.*,
   633 F3d 1042 (Fed. Cir. 2010) ......................................................................... 10

*Becton, Dickinson & Co. v. Tyco Healthcare Grp., LP*,
   616 F.3d 1249 (Fed. Cir. 2010)........................................................................ 20

*Broadcom Corp. v. Int'l Trade Comm'n*,
   542 F.3d 894 (Fed. Cir. 2008)..................................................................... 14, 15

*Chimie v. PPG Indus., Inc.*,
   No. Civ. A. 01-389-KAJ, 2003 WL 22400215 (D. Del. Oct. 9, 2003),
   *aff'd*, 402 F.3d 1371 (Fed. Cir. 2005)............................................................... 17

*Comark Commc'ns, Inc. v. Harris Corp.*,
   156 F.3d 1182 (Fed. Cir. 1998).......................................................................... 7

*Elkay Mfg. Co. v. Ebco Mfg. Co.*,
   192 F.3d 973 (Fed. Cir. 1999)............................................................................ 8

*Ex parte Fressola*,
   No. 93-0828, 27 U.S.P.Q.2d 1608 (B.P.A.I. May 11, 1993) ........................... *passim*

*Halo Elecs., Inc. v. Pulse Eng'g, Inc.*,
   721 F. Supp. 2d 989 (D. Nev. 2010) ................................................................. *passim*

*Kinik Co. v. Int'l Trade Comm'n*,
   362 F.3d 1359 (Fed. Cir. 2004).......................................................................... 10

*Liebel-Flarsheim Co. v. Medrad, Inc.*,
   358 F.3d 898 (Fed. Cir. 2004)..................................................................... 13, 14

*Markman v. Westview Instruments, Inc.*,
   52 F.3d 967 (Fed. Cir. 1995) (en banc).............................................................. 3

*MBO Labs., Inc. v. Becton, Dickinson & Co.*,
   474 F.3d 1323 (Fed. Cir. 2007)..................................................................... 13, 18

*Medtronic Xomed, Inc. v. Gyrus ENT LLC*,
   440 F. Supp. 2d 1300 (M.D. Fla. 2006) ............................................................ 17

*Oakley, Inc. v. Sunglass Hut Int'l*,
   316 F.3d 1331 (Fed. Cir. 2003)..................................................................... 10, 17

*Phillips v. AWH Corp.*,
   415 F.3d 1303 (Fed. Cir. 2005) (en banc)......................................................... *passim*

LIONEL SAWYER
& COLLINS
ATTORNEYS AT LAW
1700 BANK OF AMERICA PLAZA
300 SOUTH FOURTH ST.
LAS VEGAS,
NEVADA 89101
(702) 383-8888

*Primos, Inc. v. Hunter's Specialties, Inc.*,
  451 F.3d 841 (Fed. Cir. 2006).................................................................................. 20

*Silicon Graphics, Inc. v. ATI Techs., Inc.*,
  607 F.3d 784 (Fed. Cir. 2010)............................................................................ *passim*

*Source Search Techs., LLC v. Lending Tree, LLC*,
  588 F.3d 1063 (Fed. Cir. 2009)....................................................................... 4, 6, 9

*Sun Race Roots Enter. Co., Ltd. v. SRAM Corp.*,
  336 F.3d 1298 (Fed. Cir. 2003)................................................................................ 14

*Thermal Eng'g Corp. v. Clean Air Sys., Inc.*,
  706 F. Supp. 436 (W.D.N.C. 1987) ......................................................................... 17

*U.S. Surgical Corp. v. Ethicon, Inc.*,
  103 F.3d 1554 (Fed. Cir. 1997)........................................................................ *passim*

*Vitronics Corp. v. Conceptronic, Inc.*,
  90 F.3d 1576 (Fed. Cir. 1996)................................................................................. 10

*Zenith Labs., Inc. v. Bristol-Myers Squibb Co.*,
  19 F.3d 1418 (Fed. Cir. 1994)................................................................................. 17

**Statutes**

35 U.S.C. §§ 102, 103 (2006) ..................................................................................... 4

**Other Authorities**

Manual of Patent Examining Procedure § 608.01 ................................................ passim

LIONEL SAWYER
& COLLINS
ATTORNEYS AT LAW
1700 BANK OF AMERICA PLAZA
300 SOUTH FOURTH ST.
LAS VEGAS,
NEVADA 89101
(702) 383-8888

1      Plaintiff Robert Bosch LLC ("Bosch") submits this *Markman* brief in support of its

2 proposed claim constructions with respect to United States Patent Nos. 6,944,905 ("the '905

3 patent," Ex. A), 6,973,698 ("the '698 patent," Ex. B), and 6,553,607 ("the '607 patent," Ex. C)

4 (collectively, "the Bosch patents-in-suit").[1]   For the reasons that follow, Bosch respectfully

5 requests that the Court adopt its proposed claim constructions where offered and decline to

6 construe the remaining terms, which are clear on their face and can be properly applied by a jury

7 without construction.

8 ## I.       STATEMENT OF FACTS

9      Bosch filed this patent infringement suit in November 2010 accusing ADM21 Co., Ltd.,

10 ADM USA and ADM North America (collectively, "ADM" or "defendants") of infringing the

11 '905, '698, and '607 patents.   The '905 and '698 patents relate to improvements in "beam"-type

12 windshield wiper blades that have led to better performance, better visibility, and thus better

13 safety on the road.   The '607 patent relates to a wiper apparatus that includes means for

14 connecting a wiper blade to a particular type of wiper arm, known as a sidelock wiper arm.

15      In this action, Bosch asserts that defendants' accused wiper blades infringe claims 1, 3, 4,

16 8, 10, 11 and 15 of the '905 patent, claim 1 of the '698 patent, and claims 1–7, 9–12 and 14 of

17 the '607 patent.

18      Pursuant to the Scheduling Order (D.I. 39), Bosch identified 3 terms in need of

19 construction, while ADM informed Bosch that 20 terms—many of which are lengthy phrases—

20 require construction.   (Ex. D, Bosch's Identification of Claim Terms; Ex. E, ADM's Identification

21 of Claim Terms; Ex. F, Bosch's Proposed Constructions.)   Bosch requested that ADM provide

22 more specificity with regard to the claim terms that it believed required construction, but ADM

23 refused.   (Ex. G, March 23 Letter from Cowell to Budin; Ex. H, March 24 Letter from Budin to

24 Cowell.)   ADM ultimately provided constructions for 10 of the 20 terms it identified, and asserts

25 that the remaining terms are indefinite.   (Ex. I, ADM's Proposed Constructions.)

26

27     [1]     On April 13, 2011, Bosch filed a Motion to Amend its Complaint to add allegations of infringement of three additional patents, U.S. Patent Nos. 6,523,218, 6,611,988 and 6,836,926.

28 (D.I. 44.) ADM's response is due on May 2, 2011.

LIONEL SAWYER
& COLLINS
ATTORNEYS AT LAW
1700 BANK OF AMERICA PLAZA
300 SOUTH FOURTH ST.
LAS VEGAS,
NEVADA 89101
(702) 383-8888

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

### A.    Bosch's '905 and '698 patents

Prior art conventional wiper blades utilize a support superstructure, composed of yokes to distribute pressure applied by the wiper arm, a design that presents a number of disadvantages. The superstructure fails to evenly distribute the pressure applied by the wiper arm, resulting in pressure points on the rubber wiping element and thus an uneven wipe.   Further, the superstructure of conventional wiper blades tends to become clogged by debris, ice and snow, which impairs performance.

Beam wiper blades substitute the support superstructure, also known as a bracket, with a spring-elastic support element.   The spring-elastic support element assures an even wipe by distributing the load applied by the wiper arm along the entire wiper strip.   One of the problems addressed by the Bosch inventions is the tendency of the beam blade to lift off from the windshield at high speeds.

The '905 patent (Ex. A) is directed to a beam-type, or frameless wiper blade that includes a spoiler (also called a wind deflection strip) with two diverging legs.   Known beam-type wiper blades include solid spoilers, which make them rigid, heavy, and expensive to manufacture.  (*Id.* at 1:40–52.)   The spoiler structure disclosed and claimed in the '905 patent, which includes two diverging legs and a hollow space therebetween, results in a lighter spoiler having less impact on the force distribution function of the spring-elastic support element (beam), with lower manufacturing costs due to savings in material.  (*Id.* at 1:55–64.)[2]

The '698 patent (Ex. B) is also directed to a beam blade and more particularly, it is directed to a beam blade that includes a support element that distributes pressure along the length of the wiper strip such that the contact force of the wiper strip with the window is greater in the center section of the wiper blade than in at least one of its ends.  (*Id.* at Abstract, 1:59–62.)   The reduced force in the end sections encourages the wiper lip, the portion of the wiper strip that contacts the windshield, to flip over sequentially from the ends to the center, avoiding a knocking noise that would otherwise occur if the entire lip flips over simultaneously.  (*Id.* at

---

[2]    Citations to patents in the form of "Ex. ___ at X:Y" refer to Column X, line Y of the referenced patent.

LIONEL SAWYER
& COLLINS
ATTORNEYS AT LAW
1700 BANK OF AMERICA PLAZA
300 SOUTH FOURTH ST.
LAS VEGAS,
NEVADA 89101
(702) 383-8888

1:65–2:4.)   The wiping quality at the ends of the wiper blade is maintained by having the curvature of the support element be greater than the greatest curvature of the windshield in the wiping region.  (*Id.* at 2:20–28.)

### B.   Bosch's '607 Patent

The '607 patent (Ex. C) is directed to a wiper apparatus that includes means for securing a wiper blade to a particular type of wiper arm commonly referred to as a sidelock wiper arm. The securing means enables a wiper blade to be secured to a sidelock wiper arm while allowing the wiper arm to maintain an advantageously low profile to prevent wind lift.  (*Id.* at 1:48–55, 2:7–17.)  The unique design of the connection makes it easier and less expensive to manufacture than other low profile connections.  (*Id.* at 1:55–62.)  Further, the unique design allows for the efficient removal and replacement of the wiper blade from the wiper arm.  (*Id.* at 1:40–47.)

## II.   ARGUMENT

Bosch's proposed claim constructions are dictated by the claim language, specifications and prosecution histories of the patents-in-suit.  By contrast, defendants seek claim constructions on an excessive number of terms.  Many of ADM's constructions are at odds with the intrinsic evidence, improperly import limitations into the claims from the specification, and are contrary to the ordinary meanings of the same.

### A.   Relevant Claim Construction Principles

"It is a bedrock principle of patent law that the claims of the patent define the invention to which the patentee is entitled the right to exclude." *Phillips v. AWH Corp.*, 415 F.3d 1303, 1312 (Fed. Cir. 2005) (en banc) (internal quotation marks omitted).  The construction of claim terms "is a matter of law exclusively for the court." *Markman v. Westview Instruments, Inc.*, 52 F.3d 967, 977 (Fed. Cir. 1995) (en banc).  However, it is not necessary to construe every claim. *E.g., Silicon Graphics, Inc. v. ATI Techs., Inc.*, 607 F.3d 784, 798 (Fed. Cir. 2010) (affirming district court's choice to not construe term and apply its ordinary meaning); *Halo Elecs., Inc. v. Pulse Eng'g, Inc.*, 721 F. Supp. 2d 989, 1004 (D. Nev. 2010) (holding that a claim term should be given its ordinary meaning and did not require construction).  Claim terms should generally

LIONEL SAWYER
& COLLINS
ATTORNEYS AT LAW
1700 BANK OF AMERICA PLAZA
300 SOUTH FOURTH ST.
LAS VEGAS,
NEVADA 89101
(702) 383-8888

- 3 -

1  be "given their ordinary and customary meaning" as informed by the specification. *Phillips*, 415

2  F.3d at 1312–14. *See also U.S. Surgical Corp. v. Ethicon, Inc.*, 103 F.3d 1554, 1568 (Fed. Cir.

3  1997) (claim construction "is not an obligatory exercise in redundancy").

4      Although a patentee may use the specification to assign unique definitions to claim terms,

5  limitations from the written description should not be imported into the claims. *Phillips*, 415

6  F.3d at 1315–16, 1320, 1323. Nevertheless, a claim is read "in the context of the entire patent,

7  including the specification." *Id.* at 1313. In particular, the description of an embodiment in the

8  specification does not, without more, limit the claims to that single embodiment. *Id.* at 1323

9  ("we have expressly rejected the contention that if a patent describes only a single embodiment,

10  the claims of the patent must be construed as being limited to that embodiment").

11      A patent's prosecution history can also be considered. *Id.* at 1317 ("Like the

12  specification, the prosecution history provides evidence of how the PTO and the inventor

13  understood the patent."). However, the prosecution history "often lacks the clarity of the

14  specification and thus is less useful for claim construction purposes." *Id.*

15      A claim may be held invalid as indefinite only if it is impossible to understand. *Source*

16  *Search Techs., LLC v. Lending Tree, LLC*, 588 F.3d 1063, 1076 (Fed. Cir. 2009) ("If the

17  meaning of the claim is discernible, even though the task may be formidable and the conclusion

18  may be one over which reasonable persons will disagree, we have held the claim sufficiently

19  clear to avoid invalidity on indefiniteness grounds. Only claims not amenable to construction or

20  insolubly ambiguous are indefinite.") (citations and internal quotation marks omitted). ADM

21  argues that many of the claim terms described below are indefinite, but nevertheless has

22  contended that the claims are invalid under 35 U.S.C. §§ 102 and 103, and that its products do

23  not infringe the asserted claims, both of which require that ADM understand the claims well

24  enough to determine if all of the elements are contained within a single or multiple prior art

25  references, or its products. (Ex. J, Defendants' Responses to Bosch's Third Set of

26  Interrogatories, at pp. 3–5, 7–8.) Since ADM was able to define these terms, its position to the

27  contrary lacks merit.

28

LIONEL SAWYER
& COLLINS
ATTORNEYS AT LAW
1700 BANK OF AMERICA PLAZA
300 SOUTH FOURTH ST.
LAS VEGAS,
NEVADA 89101
(702) 383-8888

**B.     Claim Terms From The '607 Patent**

**1.     "with an elongated driven wiper arm (12) located on a motor vehicle body, movable between reversing positions"**

| Claim | Bosch's Proposed Construction | ADM's Proposed Construction |
|-------|-------------------------------|------------------------------|
| 1 | Reference numerals are not limiting. | The entirety of the phrase is limiting. The phrase is not a preamble, but even if it is, it is nevertheless limiting |

After the parties exchanged proposed claim constructions, they reached an agreement that the entirety of this phrase is limiting with the exception of the reference numeral "(12)." Accordingly, the Court does not need to construe this phrase. (Although the claims of the '607 patent include reference numerals, which were originally included in the claims of the first filed German priority application (Ex. K at BOS_LLC0000352–353), reference characters have no effect on claim scope and should not be presented to the jury. *Ex parte Fressola*, No. 93-0828, 27 U.S.P.Q.2d 1608, 1613 (B.P.A.I. May 11, 1993) ("Reference characters are now treated as having no effect on claim scope."). *See also* Manual of Patent Examining Procedure ("MPEP") § 608.01 ("The use of reference characters is to be considered as having no effect on the scope of the claims.").)

**2.     "on a free end of said arm is fixed on [*sic*] one end of a cantilevered joint pin (56) with a joint axis"**

| Claim | Bosch's Proposed Construction | ADM's Proposed Construction |
|-------|-------------------------------|------------------------------|
| 1 | No construction is necessary. | indefinite |

The phrase "on a free end of said arm is fixed on one end of a cantilevered joint pin with a joint axis" recited in claim 1 of the '607 patent includes the word "on" between "fixed" and "one." Such inclusion was a typographical error as evidenced by the fact that the original PCT application filed with the Patent and Trademark Office ("PTO"), on which the '607 patent is based, did not include "on" in claim 1. (*See* Ex. K at BOS_LLC0000352.) The extraneous "on"

LIONEL SAWYER
& COLLINS
ATTORNEYS AT LAW
1700 BANK OF AMERICA PLAZA
300 SOUTH FOURTH ST.
LAS VEGAS,
NEVADA 89101
(702) 383-8888

- 5 -

was not added by amendment of the patentee nor by the Examiner and was apparently inadvertently introduced by the PTO.  Accordingly, the phrase is properly read as "on a free end of said arm is fixed one end of a cantilevered joint pin with a joint axis."  This phrase is readily understood—one end of a cantilevered pin is fixed on a free end of the wiper arm (*see* Ex. C at Figs. 3, 6; 4:65–5:5)—and can be properly applied by a jury without construction.[3]  *See Silicon Graphics*, 607 F.3d at 798 (affirming district court choice to not construe term and apply its ordinary meaning); *Phillips*, 415 F.3d at 1312 ("We have frequently stated that the words of a claim 'are generally given their ordinary and customary meaning.'").  *See also Halo Elecs.,* 721 F. Supp. 2d at 1004 (holding that claim term should be given its ordinary meaning); *U.S. Surgical Corp.*, 103 F.3d at 1568 (claim construction "is not an obligatory exercise in redundancy").

In view of the fact that the claim is readily understandable, ADM's position that the phrase is indefinite is untenable.  *Source Search Techs.*, 588 F.3d at 1076 ("Only claims not amenable to construction or insolubly ambiguous are indefinite." (internal quotation marks omitted)).  ADM has not yet advanced any theory of indefiniteness.  If such a theory is provided, Bosch intends to respond in its answering claim construction brief.

**3.**   **"the bearing bore (36) is disposed in the coupling part (30) near one end thereof"**

| Claim | Bosch's Proposed Construction | ADM's Proposed Construction |
|---|---|---|
| 6 | No construction is necessary<br><br>The only construction that may be useful is to replace the term "disposed" with "located" to make it easier for the jury to understand. | the bearing bore (36) is disposed in the coupling part (30) and is located close to one longitudinal end of the coupling part and closer to that end than to the other longitudinal end of the coupling part |

The phrase "the bearing bore (36) is disposed in the coupling part (30) near one end thereof" recited in claim 6 of the '607 patent  is also clear and can be properly applied by a jury

---

[3]     The reference characters included in the claim do not affect the claim's construction and should not be presented to the jury.  *Fressola*, 27 U.S.P.Q.2d at 1613; MPEP § 608.01.

LIONEL SAWYER
& COLLINS
ATTORNEYS AT LAW
1700 BANK OF AMERICA PLAZA
300 SOUTH FOURTH ST.
LAS VEGAS,
NEVADA 89101
(702) 383-8888

- 6 -

1    without construction.[4]  *Silicon Graphics*, 607 F.3d at 798 (affirming district court choice to not

2    construe term and apply its ordinary meaning); *Halo Elecs.*, 721 F. Supp. 2d at 1004.  The only

3    construction that may be useful is to replace the term "disposed" with "located" to make it easier

4    for the jury to understand.   (*See* Ex. C at Figs. 1, 4, 4:29–33.)   The claim language

5    unambiguously defines that the bearing bore is located in the coupling part near one end thereof.

6    *See U.S. Surgical Corp.*, 103 F.3d at 1568 (claim construction "is not an obligatory exercise in

7    redundancy").

8        By contrast, ADM seeks to improperly read limitations into the claim through its

9    proposed construction.  In particular, ADM seeks to improperly narrow the construction of "the

10   bearing bore (36) is disposed in the coupling part (30) near one end thereof" to require that "the

11   bearing bore be disposed in the coupling part and be located close to one *longitudinal* end of the

12   coupling part and *closer to that end than to the other longitudinal end* of the coupling part."

13   ADM's proposed construction would impermissibly limit the claims to a disclosed embodiment

14   (specifically, that which is described at column 6 lines 8–21 of the '607 patent).  *See Comark*

15   *Commc'ns, Inc. v. Harris Corp.*, 156 F.3d 1182, 1187 (Fed. Cir. 1998) ("the language that Harris

16   [the defendant] argues should limit claim 1 is clearly found in the . . . patent's description of the

17   preferred embodiment. It is precisely against this type of claim construction that our prior case

18   law counsels."); *see also Acumed LLC v. Stryker Corp.*, 483 F.3d 800, 807–08 (Fed. Cir. 2007)

19   (rejecting defendant's proposed construction as "an improper attempt to read a feature of the

20   preferred embodiment into the claims as a limitation").  The claim language merely states that

21   the bearing bore be "near" one end of the coupling part, with no words describing any relation to

22   the other end.   While language similar to ADM's proposed construction is found in the

23   specification describing a preferred embodiment (Ex. C at 6:8–21), claim 6 of the '607 patent

24   does not so limit the bearing bore's location.   Moreover, ADM adds the limitation

25   "longitudinal."  Such addition is neither necessary nor supported by the intrinsic evidence.

26

27

28

---

[4]      The reference characters included in the claim do not affect the claim's construction and should not be presented to the jury. *Fressola*, 27 U.S.P.Q.2d at 1613; MPEP § 608.01.

LIONEL SAWYER
& COLLINS
ATTORNEYS AT LAW
1700 BANK OF AMERICA PLAZA
300 SOUTH FOURTH ST.
LAS VEGAS,
NEVADA 89101
(702) 383-8888

- 7 -

**C.    Claim Terms From The '698 Patent**

**1.    "an elongated spring-elastic carrying element disposed on a side of the wiper strip remote from the window"**

| Claim | Bosch's Proposed Construction | ADM's Proposed Construction |
|-------|-------------------------------|------------------------------|
| 1 | No construction is necessary.<br><br>The only construction that may be useful is to replace the term "disposed" with "located" to make it easier for the jury to understand. | an elongated spring-elastic carrying is attached on one side of the wiper strip—the side away from the window |

The phrase "an elongated spring-elastic carrying element disposed on a side of the wiper strip remote from the window" in claim 1 of the '698 patent is clear on its face and can be properly applied by a jury without construction. Again, the only construction that may be useful is to replace the term "disposed" with "located" to make it easier for the jury to understand. (*See, e.g.*, Ex. B at 3:41–45.)

ADM's proposed construction improperly replaces "disposed on" with "attached on." The phrase "disposed on" as used in the specification refers to the location of the support element and does not require attachment at any particular point or in any particular fashion.  (Ex. B at 3:6–8, 39–40.)

ADM's proposed construction also impermissibly restricts "a side" of the wiper strip to "the side."  The claim language, by using the indefinite article "a" sets forth that there can be more than one side of the wiper strip remote from the window.  *See, e.g., Elkay Mfg. Co. v. Ebco Mfg. Co.*, 192 F.3d 973, 977 (Fed. Cir. 1999) ("our cases emphasize that 'a' or 'an' can mean 'one' or 'more than one'").  Accordingly, ADM's proposed construction should be rejected.

**2.    "said wiper strip having a center section and two end sections"**

| Claim | Bosch's Proposed Construction | ADM's Proposed Construction |
|-------|-------------------------------|------------------------------|
| 1 | No construction is necessary | indefinite |

The phrase "said wiper strip having a center section and two end sections" is also clear and can be properly applied by a jury without construction.  It is easy to understand and therefore

LIONEL SAWYER
& COLLINS
ATTORNEYS AT LAW
1700 BANK OF AMERICA PLAZA
300 SOUTH FOURTH ST.
LAS VEGAS,
NEVADA 89101
(702) 383-8888

1    not indefinite.  *Source Search Techs.*, 588 F.3d at 1076 (A claim may be held invalid as

2    indefinite only if it is "insolubly ambiguous" or impossible to understand).

3           ADM has not yet advanced any theory of indefiniteness.  If such a theory is provided,

4    Bosch intends to respond in its answering brief.

5                   **3.    "said contact force of said wiper strip being greater in said center**
                            **section than in at least one of said two end sections"**
6

7    | Claim | Bosch's Proposed Construction | ADM's Proposed Construction |
8    | :---: | :--- | :--- |
     | 1 | No construction is necessary. | indefinite |
9

10          The phrase "said contact force of said wiper strip being greater in said center section than

11   in at least one of said two end sections" is also clear and can be properly applied by a jury

12   without construction.[5]  Simply put, the phrase says what it means and means what it says—the

13   contact force, which is applied to the wiper strip through the spring-elastic carrying element, is

14   greater in the center section of the wiper strip than in at least one of the end sections.

15          ADM has not yet advanced any theory of indefiniteness.  If such a theory is provided,

16   Bosch intends to respond in its answering brief.  That said, it is not necessary for a patentee to

17   "define his invention with mathematical precision in order to comply with the definiteness

18   requirement."  *Oakley, Inc. v. Sunglass Hut Int'l*, 316 F.3d 1331, 1341 (Fed. Cir. 2003).

19

20

21

22

23   _____

24   [5]     The phrase is recited in claim 1 of the '698 patent in the following context:

                    said spring-elastic carrying element extending parallel to an axis of
25                  elongation of said wiper strip to distribute a contact force against
                    the window over an entire length of said wiper strip

26                  said wiper strip having a center section and two end sections

27                  said contact force of said wiper strip being greater in said center
                    section than in at least one of said two end sections

28   Ex. B at 6:9–15.

LIONEL SAWYER
& COLLINS
ATTORNEYS AT LAW
1700 BANK OF AMERICA PLAZA
300 SOUTH FOURTH ST.
LAS VEGAS,
NEVADA 89101
(702) 383-8888

### 4.    "a spherically curved window"

| Claim | Bosch's Proposed Construction | ADM's Proposed Construction |
|-------|-------------------------------|-----------------------------|
| 1 | a window having at least one radius of curvature | a window with the same radius of curvature at all points in every direction |

Bosch submits that the term "a spherically curved window" should be construed as "a window having at least one radius of curvature." Bosch's construction stems from the specification, wherein the spherically curved window is described as having multiple radii of curvature depending on which portion of the window is being examined. (Ex. B at 1:19–20 (stating that "the curvature radii of spherically curved vehicle windows change with each wiper blade position").) The specification, and claim 1, also explain that the invention requires that the curvature of the wiper blade is *sharper* than the *sharpest* curvature of a spherically curved window. (*E.g.*, Ex. B at 3:20–27 (discussing the "maximal curvature of a spherically curved window"); 6:17–19.) *See Phillips*, 415 F.3d at 1316 ("the specification may reveal a special definition given to a claim term by the patentee that differs from the meaning it would otherwise possess. In such cases, the inventor's lexicography governs."); *Astrazeneca L.P. v. Apotex, Inc.*, 633 F3d 1042, 1051–52 (Fed. Cir. 2010) ("[W]hen a patentee uses a claim term throughout the entire patent specification, in a manner consistent with only a single meaning, he has defined that term 'by implication.'" (quoting *Vitronics Corp. v. Conceptronic, Inc.*, 90 F.3d 1576, 1582 (Fed. Cir. 1996))).

ADM's construction finds no support in the specification and appears to be based on a dictionary definition of a sphere as having a single radius of curvature. A dictionary definition in clear conflict with the patentee's preferred terms is improper. *Kinik Co. v. Int'l Trade Comm'n*, 362 F.3d 1359, 1365 (Fed. Cir. 2004) ("The issue, however, is not one of dictionary definition of a common word, but the meaning of 'mixture' as used in the patent documents. The words of patent claims have the meaning and scope with which they are used in the specification and the prosecution history." (internal citation omitted)). ADM's construction should therefore be rejected.

LIONEL SAWYER
& COLLINS
ATTORNEYS AT LAW
1700 BANK OF AMERICA PLAZA
300 SOUTH FOURTH ST.
LAS VEGAS,
NEVADA 89101
(702) 383-8888

5.      **"concave curvature that is sharper than the sharpest curvature of a spherically curved window in a region of a wiping field that can be swept across by said wiper blade"**

| Claim | Bosch's Proposed Construction | ADM's Proposed Construction |
|-------|-------------------------------|-----------------------------|
| 1 | concave curvature that is **greater** than the **greatest** curvature of a window having a spherically curved window in a region of a wiping field that can be swept across by the wiper blade | indefinite |

Bosch submits that "sharper" and "sharpest," when referring to curvature, should be construed to mean "greater" and "greatest," respectively.  The figures and specification confirm that Bosch's construction is appropriate.  (*See* Ex. B at Figs. 2, 8; 3:21–27.)  Moreover, during the prosecution of the '698 patent, applicants explained that a curvature was "sharper," i.e., curved more, when the curvature was greater.  (*E.g.*, Ex. L, Applicants' Brief On Appeal to the Board of Patent Appeals and Interferences, at BOS_LLC0000260.)  The Examiner applied a similar definition.  (Ex. L, Examiner's Answer to Applicants' Brief, at BOS_LLC0000302.)  Bosch's construction is thus supported by intrinsic evidence.  *Phillips*, 415 F.3d at 1317 ("Like the specification, the prosecution history provides evidence of how the PTO and the inventor understood the patent.")

ADM has not yet advanced any theory of indefiniteness.  If such a theory is provided, Bosch intends to respond in its answering brief.

6.      **"a concave curvature in said center section of the carrying element is sharper than in said sections thereof"**

| Claim | Bosch's Proposed Construction | ADM's Proposed Construction |
|-------|-------------------------------|-----------------------------|
| 1 | a concave curvature in said center section of the carrying element is **greater** than **at the ends of the wiper blade** | indefinite |

As noted above, the term "sharper" in relation to curvature should be construed as "greater."  Bosch submits that the term "in said sections thereof" should be construed as "at the ends of the wiper blade."  This construction comes directly from the specification, which states that the curvature of the wiper blade is such that the curvature "is sharper in the center section of

LIONEL SAWYER
& COLLINS
ATTORNEYS AT LAW
1700 BANK OF AMERICA PLAZA
300 SOUTH FOURTH ST.
LAS VEGAS,
NEVADA 89101
(702) 383-8888

- 11 -

1   the carrying element than at its end sections."  (Ex. B, at 4:56–58.  *See also id.* at 2:26–28 ("the

2   concave curvature in the center section of the carrying element is sharper than that of its end

3   sections").)  Bosch's proposed construction is also consistent with the prosecution history of the

4   application that led to the '698 patent.  (*See* Ex. L, Examiner's Answer to Applicants' brief in

5   support of appeal, at BOS_LLC0000303.)

6          Further, the language of the claim makes clear that "said sections thereof" refers to the

7   end sections of the wiper blade.  (*See* Ex. B at 6:13 (defining a "center *section*" and "two end

8   *sections*.") (emphasis added).)

9          ADM has not yet advanced any theory of indefiniteness.  If such a theory is provided,

10  Bosch intends to respond in its answering brief.

11         D.     **Claim Terms From The '905 Patent**

12                1.     **"an upper band surface (11) of the support element (12; 30, 30) has a
                        wind deflection strip (42) disposed on it"**

| Claim | Bosch's Proposed Construction | ADM's Proposed Construction |
|-------|-------------------------------|------------------------------|
| 1, 15 | No construction needed.<br><br>The only construction that may be useful is to replace the term "disposed" with "located" to make it easier to understand by the jury. | an upper band surface (11) of the support element (12; 30, 30) has a wind deflection strip (42) along its entire length |

19         Claim 1 of the '905 patent requires that "an upper band surface (11) of the support

20  element (12; 30, 30) has a wind deflection strip (42) disposed on it."  Claim 15 similarly recites

21  an "upper band surface (11) has a wind deflection strip (42) disposed on it."  Bosch submits that

22  this term is clear on its face and can be properly applied by a jury without construction.[6]  *Silicon*

23  *Graphics*, 607 F.3d at 798; *Halo Elecs.*, 721 F. Supp. 2d at 1004.  The only construction that

24  may be useful is to replace the term "disposed" with "located" to make it easier to understand by

25  the jury.  (*See* Ex. A at Figs. 1, 2, 4.)  The patentee has not imparted a special meaning to any

27  _____
    [6]      The reference characters included in the claim do not affect the claim's construction and
28  should not be presented to the jury.  *Fressola*, 27 U.S.P.Q.2d at 1613; MPEP § 608.01.

LIONEL SAWYER
& COLLINS
ATTORNEYS AT LAW
1700 BANK OF AMERICA PLAZA
300 SOUTH FOURTH ST.
LAS VEGAS,
NEVADA 89101
(702) 383-8888

- 12 -

terms in this phrase and there is no special meanings within the art to be ascribed to these terms. *See Liebel-Flarsheim Co. v. Medrad, Inc.*, 358 F.3d 898, 908 (Fed. Cir. 2004). *See also U.S. Surgical Corp.*, 103 F.3d at 1568 (claim construction "is not an obligatory exercise in redundancy").

As with other terms, however, ADM would read in additional limitations—here, requiring the upper band surface of the support element to have a wind deflection strip "along its entire length." There is no support for such a requirement. ADM appears to be improperly importing this limitation from Figure 1 of the '905 patent, but the Federal Circuit has rejected similar attempts in other cases. *See, e.g., MBO Labs., Inc. v. Becton, Dickinson & Co.*, 474 F.3d 1323, 1333 (Fed. Cir. 2007) ("patent coverage is not necessarily limited to inventions that look like the ones in the figures"). Indeed, the specification of the '905 patent contemplates a wind deflection strip that is limited to one region of the wiper blade. (Ex. A at 6:51–54 ("it can be quite useful for the wiper blade . . . to be provided with only one section 40 or 140 of the wind deflection strip").) ADM's proposed construction would improperly limit the claims to a single embodiment and should be rejected. *See Acumed*, 483 F.3d at 807–08 (rejecting defendant's proposed construction as "an improper attempt to read a feature of the preferred embodiment into the claims as a limitation").

### 2. "wherein the two diverging legs are connected to each other at a common base"

| Claim | Bosch's Proposed Construction | ADM's Proposed Construction |
|-------|-------------------------------|-----------------------------|
| 1, 15 | no construction needed | wherein the two diverging legs throughout their lengths meet at a shared point |

Bosch submits that the phrase "wherein the two diverging legs are connected to each other at a common base" in claims 1 and 15 is clear on its face—the two diverging legs of the wind deflection strip are connected at a common base—and can be properly applied by a jury without construction. *Silicon Graphics*, 607 F.3d at 798; *Halo Elecs.*, 721 F. Supp. 2d at 1004. The patentee has not imparted a special meaning to the term and there is no special meaning within the art to be ascribed to this term. *See Liebel-Flarsheim*, 358 F.3d at 908.

LIONEL SAWYER
& COLLINS
ATTORNEYS AT LAW
1700 BANK OF AMERICA PLAZA
300 SOUTH FOURTH ST.
LAS VEGAS,
NEVADA 89101
(702) 383-8888

- 13 -

1  ADM's proposed construction impermissibly adds the unsupported limitation that the two

2  diverging legs meet at a shared point "throughout their lengths."  Indeed, claim 2, which depends

3  on claim 1, recites a similar limitation: "wherein the profile of the cross-section [of the diverging

4  legs] is the same over the entire length of the wind deflection strip."  (Ex. A at 7:20–22.)

5  Different claims are presumed to have different scope and a construction that would make a

6  dependent claim redundant should be avoided, unless there is no other construction.  *Broadcom*

7  *Corp. v. Int'l Trade Comm'n*, 542 F.3d 894, 906–07 (Fed. Cir. 2008) ("Qualcomm's argument

8  that the PLL control signal must change during operation to reflect changes in a characteristic of

9  the PLL would make claim 37 redundant, a consequence that renders the argument suspect.");

10 *Sun Race Roots Enter. Co., Ltd. v. SRAM Corp.*, 336 F.3d 1298, 1302–03 (Fed. Cir. 2003)

11 ("'While we recognize that the doctrine of claim differentiation is not a hard and fast rule of

12 construction, it does create a presumption that each claim in a patent has a different scope.' That

13 presumption is especially strong when the limitation in dispute is the only meaningful difference

14 between an independent and dependent claim, and one party is urging that the limitation in the

15 dependent claim should be read into the independent claim." (internal citations omitted)).

16 ADM's construction of "common base" as "shared point" is similarly unsupported.

17 Indeed, the language of claim 1 makes clear that the base is not limited to being a "point" but can

18 include a region, as the claim requires that the legs form therebetween an angular hollow space

19 that expands from "an upper narrowest *point*" of the base.  (Ex. A at 7:14 (emphasis added).)

20 This interpretation is supported by the specification, which shows the common base as a region

21 near the top of the wind deflection strip.  (*E.g.*, *id.* at Figs. 2, 3, 5 (showing common base 48);

22 4:43–45.)

23

24

25

26

27

28

LIONEL SAWYER
& COLLINS
ATTORNEYS AT LAW
1700 BANK OF AMERICA PLAZA
300 SOUTH FOURTH ST.
LAS VEGAS,
NEVADA 89101
(702) 383-8888

- 14 -

**3.**   **"the legs (44, 46) form therebetween an angular hollow space that expands from an upper narrowest point of the base downwardly to the upper band surface of the support element"**

| Claim | Bosch's Proposed Construction | ADM's Proposed Construction |
|-------|-------------------------------|-----------------------------|
| 1 | no construction needed | the legs (44, 46) throughout their length have an angular unfilled area that expands from an upper narrowest point of the base downwardly to the upper band surface of the support element |

Bosch submits that the phrase "the legs form therebetween an angular hollow space that expands from an upper narrowest point of the base downwardly to the upper band surface of the support element" recited in claim 1 of the '905 patent is clear and can be properly applied by a jury without construction.[7]

ADM's proposed construction again seeks to impermissibly add the limitation "throughout their length." As set forth above, there is no support for such a limitation and claim 2 recites a similar limitation. (Ex. A at 7:20–22.) *See Broadcom*, 542 F.3d at 906–07; *see also* discussion *supra* Part II.D.2.

ADM's construction also seeks to redefine "hollow" as "unfilled." There is no need for such construction. Either "unfilled" means "hollow," in which case no construction is needed, s*ee U.S. Surgical Corp.,* 103 F.3d at 1568 (claim construction "is not an obligatory exercise in redundancy"), or it means something else, in which case there is no support for ADM's proposed construction. Accordingly, ADM's construction should be rejected.

---

[7]    The reference characters included in the claim do not affect the claim's construction and should not be presented to the jury. *Fressola*, 27 U.S.P.Q.2d at 1613; MPEP § 608.01.

LIONEL SAWYER
& COLLINS
ATTORNEYS AT LAW
1700 BANK OF AMERICA PLAZA
300 SOUTH FOURTH ST.
LAS VEGAS,
NEVADA 89101
(702) 383-8888

- 15 -

**4.** **"said legs contacting the upper band surface at a location laterally spaced from said rubber-elastic wiper strip"**

| Claim | Bosch's Proposed Construction | ADM's Proposed Construction |
|-------|-------------------------------|------------------------------|
| 1 | no construction needed | said legs throughout their length contact the upper band surface at a location laterally spaced form [*sic*] said rubber-elastic wiper strip |

The phrase "said legs contacting the upper band surface at a location laterally spaced from said rubber-elastic wiper strip" recited in claim 1 of the '905 patent is clear and can be properly applied by a jury without construction—the legs contact the upper band surface of the support element at a location that is laterally spaced from the rubber-elastic wiper strip.

ADM's construction again seeks to impermissibly add the limitation "throughout their length." Again, there is no support for such a limitation and ADM's construction should be rejected. *See Akamai Techs., Inc. v. Cable & Wireless Internet Servs., Inc.*, 344 F.3d 1186, 1194 (Fed. Cir. 2003) ("Absent evidence that a 'patentee unequivocally [*sic*] imparted a novel meaning to the term or expressly relinquished claim scope during prosecution,' we give the limitation its full ordinary and customary meaning.").

**5.** **"the two legs (44, 48) of the wind deflection strip (142 or 242) are connected to each other by means of a wall (144 or 244) in the vicinity of the two wiper blade ends"**

| Claim | Bosch's Proposed Construction | ADM's Proposed Construction |
|-------|-------------------------------|------------------------------|
| 3 | no construction needed | indefinite |

Claim 3 of the '905 patent recites that "the two legs (44, 48) of the wind deflection strip (142 or 242) are connected to each other by means of a wall (144 or 244) in the vicinity of the two wiper blade ends." The phrase is clear on its face—the two legs of the wind deflection strip are connected to each other by means of a  wall in the vicinity of each of the two ends of the wiper blade—and can be properly applied by a jury without construction.[8]

---

[8]     The reference characters included in the claim do not affect the claim's construction and should not be presented to the jury. *Fressola*, 27 U.S.P.Q.2d at 1613; MPEP § 608.01.

LIONEL SAWYER
& COLLINS
ATTORNEYS AT LAW
1700 BANK OF AMERICA PLAZA
300 SOUTH FOURTH ST.
LAS VEGAS,
NEVADA 89101
(702) 383-8888

ADM has not yet advanced any theory of indefiniteness.  If such a theory is provided, Bosch intends to respond in its answering brief.

**6.** **"the wall (144) is aligned essentially perpendicular to the support element"**

| Claim | Bosch's Proposed Construction | ADM's Proposed Construction |
|-------|-------------------------------|------------------------------|
| 4 | no construction needed | indefinite |

The requirement of claim 4 of the '905 patent that "the wall (144) is aligned essentially perpendicular to the support element" is also clear on its face and can be properly applied by a jury without construction.[9]  The term "essentially perpendicular" is not indefinite.  *See Oakley Inc.*, 316 F.3d at 1341 (a patentee need not "define his invention with mathematical precision in order to comply with the definiteness requirement").  The courts construe "essentially" as permitting "some leeway in the exactness" of the defined characteristics.  *Zenith Labs., Inc. v. Bristol-Myers Squibb Co.*, 19 F.3d 1418, 1424 (Fed. Cir. 1994); *see also Chimie v. PPG Indus., Inc.*, No. Civ. A. 01-389-KAJ, 2003 WL 22400215, at *8 (D. Del. Oct. 9, 2003), *aff'd*, 402 F.3d 1371 (Fed. Cir. 2005) (construing term "essentially spheroidal in geometrical configuration" to mean "less than perfect" spheres).  Courts have consistently rejected indefiniteness challenges to the term.  *See, e.g.*, *Medtronic Xomed, Inc. v. Gyrus ENT LLC*, 440 F. Supp. 2d 1300, 1326–27 (M.D. Fla. 2006) (granting patentee's motion for summary judgment that the claim limitation "remains essentially within," as it relates to a fluid in a surgical instrument, is not indefinite), *Thermal Eng'g Corp. v. Clean Air Sys., Inc.*, 706 F. Supp. 436, 445–46 (W.D.N.C. 1987) (holding that the term "essentially unobstructed paths" in a claim to a high heat transfer oven and process of drying articles was not vague or indefinite).

ADM has not yet advanced any theory of indefiniteness.  If such a theory is provided, Bosch intends to respond in its answering brief.

---

[9]     The reference characters included in the claim do not affect the claim's construction and should not be presented to the jury. *Fressola*, 27 U.S.P.Q.2d at 1613; MPEP § 608.01.

LIONEL SAWYER
& COLLINS
ATTORNEYS AT LAW
1700 BANK OF AMERICA PLAZA
300 SOUTH FOURTH ST.
LAS VEGAS,
NEVADA 89101
(702) 383-8888

7.      **"claw-like projections (56, 58)"**

| Claim | Bosch's Proposed Construction | ADM's Proposed Construction |
|-------|-------------------------------|------------------------------|
| 8, 15 | no construction needed | rounded projections shaped like a claw, as shown by part numbers 56 and 58 in Figures 2 and 3 |

Bosch submits that the phrase "claw-like projections (56, 58)" recited in asserted claims 8 and 15 is clear and can be properly applied by a jury without construction. The claim language unambiguously recites that the free ends of the legs of the wind deflection strip are provided with claw-like projections.

ADM's proposed construction impermissibly adds the limitation "rounded." There is no support in the specification for such a limitation; indeed, the word "rounded" does not appear in the patent. Instead, ADM appears to be importing a limitation from the drawings and seeks to rely on reference numerals in the claim as limiting claim scope. Limiting a claim to one illustrated embodiment is improper. *MBO Labs.*, 474 F.3d at 1333–34 ("patent coverage is not necessarily limited to inventions that look like the ones in the figures. To hold otherwise would be to import limitations onto the claim from the specification, which is fraught with 'danger.' Limiting claims from the specification is generally not permitted absent a clear disclosure that the patentee intended the claims to be limited as shown." (internal citations omitted)). Further, the inclusion of reference numerals in a claim have no effect on claim scope and should not be presented to the jury. *Fressola*, 27 U.S.P.Q.2d at 1613 ("Reference characters are now treated as having no effect on claim scope."); *see also* MPEP § 608.01 ("The use of reference characters is to be considered as having no effect on the scope of the claims.").

ADM's construction also redefines "claw-like" as "shaped like a claw." ADM's proposed construction finds not support in the intrinsic evidence. Accordingly, ADM's proposed construction should be rejected.

LIONEL SAWYER
& COLLINS
ATTORNEYS AT LAW
1700 BANK OF AMERICA PLAZA
300 SOUTH FOURTH ST.
LAS VEGAS,
NEVADA 89101
(702) 383-8888

- 18 -

8.    **"wherein a hardness of the material for the wind deflection strip (42) is at most 40 percent greater than the hardness of the material for the wiper strip"**

| Claim | Bosch's Proposed Construction | ADM's Proposed Construction |
|-------|-------------------------------|------------------------------|
| 11    | no construction needed        | indefinite                   |

The limitation in claim 11 "wherein a hardness of the material for the wind deflection strip (42) is at most 40 percent greater than the hardness of the material for the wiper strip" is clear and can be properly applied by a jury without construction.[10] *Silicon Graphics*, 607 F.3d at 798; *Halo Elecs.*, 721 F. Supp. 2d at 1004. This phrase compares the Shore hardness values of the materials from which the respective parts of the wiper blade are made. (*See* Ex. A at 6:21-31).

ADM has not yet advanced any theory of indefiniteness. If such a theory is provided, Bosch intends to respond in its answering brief.

9.    **"the claw-like projections extend from the leg ends (50, 52) into a vicinity of a wall (154 or 254), and suitably encompass end regions (112) of the support element"**

| Claim | Bosch's Proposed Construction | ADM's Proposed Construction |
|-------|-------------------------------|------------------------------|
| 15    | "end regions of the support element" means regions near the end of the support element<br><br>no construction is needed for any additional terms in this phrase | area around and including the end<br><br>the claw-like projections extend from the leg ends (50, 52) into an area near a wall (154 or 254), and the claw-like projections extend from the leg ends (50, 52) beyond the sides so as to surround and enclose the end regions (112) of the support element |

The phrase "end regions of the support element" appears in claim 15 of the '905 patent and should be construed as "regions near the end of the support element." This construction is supported by the specification and the figures. (Ex. A at Figs. 6, 7; 5:44–49.) As discussed

---

[10]    The reference characters included in the claim do not affect the claim's construction and should not be presented to the jury. *Fressola*, 27 U.S.P.Q.2d at 1613; MPEP § 608.01.

LIONEL SAWYER
& COLLINS
ATTORNEYS AT LAW
1700 BANK OF AMERICA PLAZA
300 SOUTH FOURTH ST.
LAS VEGAS,
NEVADA 89101
(702) 383-8888

- 19 -

1   below, ADM's construction finds no support in the patent specification or prosecution history,

2   and would improperly exclude a preferred embodiment.

3       The remaining terms of the phrase "the claw-like projections extend from the leg ends

4   (50, 52) into a vicinity of a wall (154 or 254), and suitably encompass end regions (112) of the

5   support element" are clear on their face and can be properly applied by a jury.[11]

6       ADM's construction impermissibly requires that the claw-like projections extend

7   "beyond the sides" and "surround and enclose the end regions of the support element."  There is

8   no support for these added limitations.   First, ADM's limitation "beyond the sides" is

9   incomprehensible as it does not explain what "the sides" refers to.  An incomprehensible claim

10  construction should be rejected. *Becton, Dickinson & Co. v. Tyco Healthcare Grp., LP*, 616 F.3d

11  1249, 1255 (Fed. Cir. 2010) ("A claim construction that renders asserted claims facially

12  nonsensical 'cannot be correct.'").

13      ADM also seeks to replace "suitably encompass" with "surround and enclose" thereby

14  reading the word "suitably" out of the claim and redefining "encompass" as "surround and

15  enclose."   There is no support for such redefinition in the specification.   Taken together with

16  ADM's construction of end regions, the result is a requirement that the claw-like projections

17  "surround and enclose" the area around and including the end.   However, the Figures show

18  embodiments where the end of the support element is not "surrounded and enclosed."  (*See, e.g.*,

19  Ex. A at Fig. 4.)   A construction that excludes a preferred embodiment is generally improper.

20  *Primos, Inc. v. Hunter's Specialties, Inc.*, 451 F.3d 841, 848 (Fed. Cir. 2006) ("While we are

21  mindful that we cannot import limitations from the preferred embodiments into the claim, we

22  also should not normally interpret a claim term to exclude a preferred embodiment. Interpreting

23  'engaging' to mean 'interlocking' [as proposed by the accused infringer] would exclude the

24  embodiment shown in the figure and is not consistent with the rest of the specification . . . ."

25  (internal citation omitted)).   Since ADM's construction finds no support in the specification, it

26  should be rejected.

27

28

LIONEL SAWYER
& COLLINS
ATTORNEYS AT LAW
1700 BANK OF AMERICA PLAZA
300 SOUTH FOURTH ST.
LAS VEGAS,
NEVADA 89101
(702) 383-8888

- 20 -

1

**III.     CONCLUSION**

2

For the reasons stated above, Bosch respectfully requests that the Court adopt its

3

constructions where offered and decline to adopt ADM's proposed constructions.

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

---

[11]     The reference characters included in the claim do not affect the claim's construction and should not be presented to the jury.  *Fressola*, 27 U.S.P.Q.2d at 1613; MPEP § 608.01.

LIONEL SAWYER
& COLLINS
ATTORNEYS AT LAW
1700 BANK OF AMERICA PLAZA
300 SOUTH FOURTH ST.
LAS VEGAS,
NEVADA 89101
(702) 383-8888

- 21 -

1    Dated this 22nd day of April, 2011.

2                                              By: /s/ Jennifer L. Braster
3                                                   Cam Ferenbach
                                                    Nevada Bar No. 96
4                                                   Jennifer L. Braster
                                                    Nevada Bar No. 9982
5                                                   LIONEL SAWYER & COLLINS
                                                    1700 Bank of America Plaza
6                                                   300 South Fourth Street
                                                    Las Vegas, Nevada 89101
7                                                   (702) 383-8888

8                                                   Mark A. Hannemann
9                                                   Jeffrey S. Ginsberg
                                                    Richard M. Cowell
10                                                  KENYON & KENYON LLP
                                                    One Broadway
11                                                  New York, NY 10004
                                                    (212) 425-7200
12
13                                             *Attorneys for Robert Bosch, LLC*

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

LIONEL SAWYER
& COLLINS
ATTORNEYS AT LAW
1700 BANK OF AMERICA PLAZA
300 SOUTH FOURTH ST.
LAS VEGAS,
NEVADA 89101
(702) 383-8888

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

**CERTIFICATE OF SERVICE**

I hereby certify that I am an employee of Lionel Sawyer & Collins, and that on this 22nd

day of April, 2011, I caused to be served a true and correct copy of the foregoing **PLAINTIFF**

**ROBERT BOSCH LLC'S OPENING CLAIM CONSTRUCTION BRIEF** in the following

manner:

(ELECTRONIC SERVICE) Pursuant to Fed. R. Civ. P. 5(b)(3) and LR 5-4, the above-

referenced document was electronically filed and served upon the party listed below through the

Court's Case Management and Electronic Case Filing (CM/ECF) system:

Michael D Rounds
Watson Rounds, PC
5371 Kietzke Lane
Reno, NV 89511

Russell E. Levine
Craig Leavell
Bryce Budin
Matthew Shiels
Kirkland & Ellis LLP
300 North LaSalle Street, 26th Floor
Chicago, IL 60654

_/s/ Jennifer L. Braster_

LIONEL SAWYER & COLLINS

LIONEL SAWYER
& COLLINS
ATTORNEYS AT LAW
1700 BANK OF AMERICA PLAZA
300 SOUTH FOURTH ST.
LAS VEGAS,
NEVADA 89101
(702) 383-8888