# UNITED STATES DISTRICT COURT

# DISTRICT OF NEVADA

* * *

| | | |
|---|---|---|
| ROBERT BOSCH LLC, | ) | Case No.: 2:10-cv-01930-RLH-LRL |
| Plaintiff, | ) | **O R D E R** |
| vs. | ) | (Motion to Dismiss and/or Transfer–#20) |
| ADM 21 CO., LTD; ADM USA; and ADM NORTH AMERICA, | ) | |
| Defendants. | ) | |

Before the Court is Defendants ADM 21 Co., Ltd., ADM USA, and ADM North America's **Motion to Dismiss and/or Transfer** (#20, filed Dec. 15, 2010) based on lack of personal jurisdiction and proper venue.  The Court has also considered Plaintiff Robert Bosch LLC's ("Bosch") Opposition (#21, filed Jan. 3, 2011), and Defendants' Reply (#25, filed Jan. 13, 2011).  The Court also notes that the parties have filed numerous supplemental briefs related to this motion.  (*See* Dkt. ## 34, 46, 47, 48, 50.)

## BACKGROUND

This dispute arises from Bosch's allegations that Defendants have infringed on its patent for a wiper blade invention.  Bosch alleges that Defendants violated federal patent law, 35

1  U.S.C. § 271, *inter alia*, by making, importing, offering for sale, using, and selling wiper blades

2  embodying its patented inventions, the GF4 and XF4 wiper blade products.  (Dkt. #1, Compl. ¶¶

3  2–7 (Patent Nos. 6,553,607; 6,944,905; 6,973,698).)  Plaintiff Bosch is a Delaware limited liability

4  company with its principal place of business in Illinois.  Defendant ADM 21 Co. Ltd. is a Korean

5  company that produces wiper blades and imports its products from Asia into the United States

6  through a network of distributors and retailers.  Defendant ADM North America, a New Jersey

7  corporation, is a wholly owned subsidiary of ADM 21.  (Dkt. #20-1, Mot. Attach. 1, Decl. of

8  Leonardo Scuderi ¶ 4; Dkt. #25-2, Reply Attach. 2, Scuderi Reply Decl. ¶ 3.)  Defendants assert

9  however that ADM USA is not a separate or valid entity.

10          According to its marketing materials, Defendants maintain "customer service

11  centers" within the United States in New York, Los Angeles, Detroit, and Dallas as well as in

12  numerous other international locations.  (Dkt. #21, Opp'n Ex. C, Airomaster Wiper Blade &

13  System catalog.)  Defendants have also attended multiple trade shows in Las Vegas related to its

14  wiper blade products.  Their sales representatives and customer management team members

15  attended and participated in the 2010 Automotive Aftermarket Products Expo ("AAPEX") trade

16  show held at the Sands Convention Center in Las Vegas.  (Dkt. #20-1, Scuderi Decl.)

17  Simultaneously, Defendants attended the SEMA Show, a separate automotive trade show held at

18  the Las Vegas Convention Center.  (*Id.*)

19          Bosch filed suit against Defendants in this Court on November 3, 2010.  (Dkt. #1,

20  Compl.)  Defendants now bring a motion to dismiss for a lack of personal jurisdiction and venue.

21  In the alternative, they ask the Court to transfer this case to the U.S. District Court for the District

22  of New Jersey.  For the reasons discussed below, the Court denies the motion.

23                                    **DISCUSSION**

24          In their motion, Defendants argue that the Court lacks personal jurisdiction to

25  proceed with this case.  However, if the Court does find personal jurisdiction, they alternatively

26  assert that venue is improper in Nevada.  The Court addresses each suggestion in turn.

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

**I.     Defendants' Motion to Dismiss**

In patent infringement cases, the law of the Federal Circuit governs personal jurisdiction over an out-of-state accused infringer, rather than that of the regional circuit in which the case arose.  *Nuance Commc'ns, Inc. v. Abbyy Software House*, 626 F.3d 1222, 1230 (Fed. Cir. 2010).  In cases where a district court's disposition of a personal jurisdiction question is based upon affidavits and other written materials in the absence of an evidentiary hearing, "a plaintiff need only to make a *prima facie* showing that defendants are subject to personal jurisdiction." *Synthes (U.S.A.) v. G.M. Dos Reis Jr. Ind. Com de Equip. Medico*, 563 F.3d 1285, 1292 (Fed. Cir. 2009) (citation omitted).  Without discovery and a record on jurisdiction, the court must resolve all factual disputes related to personal jurisdiction in a plaintiff's favor.  *Deprenyl Animal Health, Inc. v. Univ. of Toronto Innovations Found.*, 297 F.3d 1343, 1347 (Fed. Cir. 2002).

**A.     ADM North America and ADM USA**

As a preliminary matter, the Court must address Defendants' contention that ADM North America and ADM USA must be treated separately from ADM 21 for the purposes of the personal jurisdiction analysis.  Defendants assert that ADM USA is not a separate or valid entity and that ADM North America, although a wholly-owned subsidiary of ADM 21, did not participate in the Las Vegas trade shows with ADM 21.  However, Defendants marketing materials identify ADM North America and ADM USA as a part of their sales and customer service infrastructure.  (Dkt. #21, Opp'n Ex. C, Airomaster Wiper Blade & System catalog.)  The Court can infer from such reference that ADM North America and ADM USA may be properly named defendants.  Because all factual disputes must be resolved in Bosch's favor without discovery or a record on jurisdiction, the Court will treat Defendants as one for the purpose of this personal jurisdiction analysis.

**B.     Personal Jurisdiction**

"Personal jurisdiction over an out-of-state defendant is appropriate if the relevant state's long-arm statute permits the assertion of jurisdiction without violating federal due process."

1   *Nuance*, 626 F.3d at 1231; *3D Sys., Inc. v. Aarotech Labs., Inc.*, 160 F.3d 1373, 1376–77 (Fed.

2   Cir. 1998).  Therefore, a district court may exercise personal jurisdiction over an out-of-state

3   defendant if two requirements are satisfied: (1) "the defendant must be amenable to service of

4   process;" and (2) exercising jurisdiction "must comport with due process."  *Patent Rights Prot.*

5   *Group, LLC v. Video Gaming Techs., Inc.*, 603 F.3d 1364, 1368–69 (Fed. Cir. 2010).

6         **C.**    **Nevada's Long-Arm Statute**

7           The first requirement involves "considering whether the defendant 'is subject to the

8   jurisdiction of a court of general jurisdiction in the state where the district court is located'."  *Id.* at

9   1368 (citing Fed. R. Civ. P. 4(k)(1)(A)).  To do so, a district court examines the state's long-arm

10  statute.  *Id.* at 1369.  Because Nevada's long-arm statute is co-extensive with federal due process

11  requirements, the jurisdictional analyses under Nevada law and federal law are the same.  *Id.*

12  (noting that NRS § 14.065 permits Nevada courts to exercise personal jurisdiction over a party to

13  the extent permitted by the U.S. Constitution); *see also Baker v. Eighth Jud. Dist. Ct.*, 999 P.2d

14  1020, 1023 (Nev. 2000).  As a result, this Court does not need to address the first requirement any

15  further and the personal jurisdiction analysis narrows to one inquiry: does exercising personal

16  jurisdiction over Defendants satisfy due process?  *See Patent Rights Prot.*, 603 F.3d at 1369.

17        **D.**    **Minimum Contacts**

18          To satisfy the second requirement, exercising jurisdiction over the defendant must

19  comport with due process.  *Id.*  The "constitutional touchstone" of the due process inquiry

20  "remains whether the defendant purposefully established 'minimum contacts' in the forum State."

21  *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 474 (1985) (citing *Int'l Shoe Co. v. Washington*,

22  326 U.S. 310, 316 (1945)).  Depending on their nature and number, a defendant's contacts with a

23  forum can provide a court with general jurisdiction or specific jurisdiction.  *Synthes*, 563 F.3d at

24  1291; *see also Goodyear Dunlop Tires Operations, S.A. v. Brown*, 564 U.S. ----, 2011 WL

25  2518815, at *3 (2011).

26  *///*

AO 72
(Rev. 8/82)

A district court may assert general jurisdiction over "foreign (sister-state or foreign-country) corporations" to hear any and all claims against them "when their affiliations with the State are so 'continuous and systematic' as to render them essentially at home in the forum State." *Goodyear*, 2011 WL 2518815, at *3 (citing *Int'l Shoe*, 326 U.S. at 317); *see also Helicopteros Nacionales de Colombia, S.A. v. Hall*, 466 U.S. 408, 416 (1984). Here, Defendants' contacts with Nevada do not rise to a level that would render them essentially at home in Nevada and, therefore, subject them to general jurisdiction. As a result, the Court must evaluate whether it has specific jurisdiction.

In contrast to general jurisdiction, specific jurisdiction "depends on an affiliation between the forum and the underlying controversy, principally, activity or an occurrence that takes place in the forum State and is therefore subject to the State's regulation." *Goodyear*, 2011 WL 2518815, at *3 (internal citation omitted). The Federal Circuit applies a three factor test to determine whether specific jurisdiction exists: (1) whether the defendant purposefully directed activities at residents of the forum; (2) whether the claim arises out of or relates to those activities; and (3) whether assertion of personal jurisdiction is reasonable and fair. *Nuance*, 626 F.3d at 1231 (citing *Akro Corp. v. Luker*, 45 F.3d 1541, 1543 (Fed. Cir. 1995)). The Court will evaluate these three factors.

### 1.    Purposefully Directed Activities

Under the first factor, a defendant purposefully directs his activities at residents of the forum state where "the defendant's conduct and connection with the forum State are such that he should reasonably anticipate being haled into court there." *Burger King*, 471 U.S. at 474. The essential inquiry is whether "the defendant purposefully avails itself of the privilege of conducting activities within the forum State, thus invoking the benefits and privileges of its laws." *Id.* at 475. "This purposeful availment requirement ensures that a defendant will not be haled into a jurisdiction solely as a result of random, fortuitous, or attenuated contacts." *Id.*

///

AO 72
(Rev. 8/82)

1

       **a.  Defendants' Activities in Nevada**

2

    Numerous courts have found defendants to have purposefully availed themselves by

3

attending trade shows within a forum state.  *See, e.g.*; *Synthes*, 563 F.3d at 1297–98 (concluding

4

that defendant's attendance of multiple trade shows within the forum exhibited "deliberate

5

contacts" and supported a finding of purposeful availment); *Nat'l Cathode Corp. v. Mexus Co.*,

6

855 F. Supp. 644, 647 (S.D.N.Y. 1994).

7

    Bosch alleges that Defendants purposefully availed themselves of the privilege of

8

conducting business in Nevada, primarily because they have attended multiple trade shows in Las

9

Vegas related to their products.  Although Bosch's complaint alleges that Defendants have been,

10

and still are, importing, offering for sale, using, and selling wiper blades embodying the patented

11

inventions, all in violation of 35 U.S.C. § 271(a), Defendants argue that they have no sales agents,

12

employees, offices, manufacturing facilities, bank accounts, telephones or telephone listings in

13

Nevada.  Thus, Defendants maintain that this list of deficiencies render personal jurisdiction

14

improper.  The Court disagrees.

15

    As discussed in further detail below, the Court can conclude that Defendants'

16

alleged importation of wiper blade products into the United States would reach Nevada

17

consumers—a conclusion that supports a finding that Defendants purposefully availed themselves

18

of the benefits and privileges of doing business in Nevada.  But even more important is

19

Defendants' attendance of multiple trade shows in Las Vegas.  By their own admission, "ADM

20

attends various trade shows around the world"—which necessarily includes Las Vegas—to

21

develop "potential sales leads."  (Dkt. #20-1, Scuderi Decl. ¶ 3.)  "Those leads are followed up by

22

appropriate sales representatives and supervisors...."  (*Id.*)  Defendants' activities in Nevada at the

23

AAPEX and SEMA trade shows, such as conducting promotional activities, exhibiting their

24

products, and establishing business relationships, were commercial exercises directly supporting

25

Bosch's allegations that Defendants have purposefully directed activities in Nevada.  In the

26

Court's view, using Las Vegas' AAPEX and SEMA trade shows to further a commercial purpose

AO 72
(Rev. 8/82)

can hardly be seen as "random, fortuitous, or attenuated contacts" with Nevada. *Burger King*, 471

U.S. at 475; *see also See Patent Rights Prot.*, 603 F.3d at 1372 (finding defendants' contention

that they attended Las Vegas trade shows without a commercial purpose to "strain credulity").

### b.   ADM's Products in the "Stream of Commerce"

As the Supreme Court recently reiterated, "[f]low of a manufacturer's products into

the forum may bolster an affiliation germane to specific jurisdiction." *Goodyear*, 2011 WL

2518815, at *8 (citing *World-Wide Volkswagen Corp. v. Woodson*, 444 U. S. 286, 297 (1980)).

The "stream of commerce" metaphor has been frequently used in cases where "a nonresident

defendant, acting *outside* the forum, places in the stream of commerce a product that ultimately

causes harm *inside* the forum." *Id.* (emphasis in original).  Pursuant to the "stream of commerce"

theory, a defendant could purposefully avail itself of a forum by "deliver[ing] its products into the

stream of commerce with the expectation that they will be purchased by consumers in the forum

[s]tate." *Nuance*, 626 F.3d at 1231 (citing *World-Wide Volkswagen*, 444 U. S. at 298).

Addressing this theory in the context of intellectual property interests, the Federal Circuit has

found personal jurisdiction when a non-resident defendant purposefully ships products through an

established distribution channel with the expectation that those products would be sold in the

forum, even if the defendant has no license to do business in the forum, no assets, employees, or

agents for service of process in the forum, and no direct sales in the forum. *Beverly Hills Fan Co.

v. Royal Sovereign Corp.*, 21 F.3d 1558, 1564–67 (Fed. Cir. 1994).

Here, Defendants assert they have not made, used, sold, or offered for sale any

products in Nevada and have not imported any products into Nevada.  Missing from this list,

however, are contentions that Defendants did not expect consumers in Nevada to purchase their

products or that Defendants' distributors did not make their products available for sale through an

established distribution chain that reaches Nevada.  On the other hand, Bosch presents evidence

suggesting that Defendants have sold products to recognizable national brands such as SOPUS

(Penzoil Quaker State Co.) and Federal Mogul.  (Dkt. #21-5, Opp'n 10 n.14, Ex. E., Panjiva Sales

1    Spreadsheet.)  Defendants are undoubtedly non-residents that act *outside* Nevada to place their

2    products in the stream of commerce that has purportedly caused harm *inside* Nevada in the form of

3    patent infringement.  Accordingly, the Court finds that Bosch has made a *prima facie* showing that

4    Defendants' conduct and connection with Nevada support the conclusion that they purposefully

5    directed activities towards Nevada.

6                    **2.      Bosch's Claim Arises Out of or Relates to Those Activities**

7                    With regard to the second factor of the specific jurisdiction test, a plaintiff's claim

8    must "arise out of or relate to" the defendant's contact with the forum state.  *Burger King*, 471

9    U.S. at 472.  In a typical patent infringement suit, the plaintiff's asserted claim involve some act by

10   the defendant of making, using, offering to sell, selling, or importing products or services which

11   constitutes an infringement of the presumptively valid patent named in a suit.  *Avocent Huntsville*

12   *Corp. v. Aten Intern. Co., Ltd.*, 552 F.3d 1324, 1332 (Fed. Cir. 2008) (citing 35 U.S.C. § 271(a)).

13   "Thus, for purposes of specific jurisdiction, the jurisdictional inquiry is relatively easily discerned

14   from the nature and extent of the commercialization of the accused products or services by the

15   defendant in the forum."  *Id*.  "In such litigation, the claim both 'arises out of' and 'relates to' the

16   defendant's alleged manufacturing, using, or selling the claimed invention."  *Avocent*

17   *Huntsville*, 552 F.3d at 1332.

18                   The Court is satisfied that Bosch's patent infringement claims arises out of and

19   relates to Defendants' actions within Nevada because Bosch alleges that they offered infringing

20   goods at the Las Vegas trade shows.  Bosch is not required to show more.  *See Beverly Hills Fan*,

21   21 F.3d at 1565 ("The cause of action for patent infringement is alleged to arise out of [§ 271(a)]

22   activities.  No more is usually required to establish specific jurisdiction.") (citing *Burger King*, 471

23   U.S. at 472–73; *Keeton v. Hustler Magazine, Inc.*, 465 U.S. 770, 774–75 (1984)).  Accordingly,

24   the Court concludes that the second factor supports specific jurisdiction here.

25   ///

26   ///

AO 72
(Rev. 8/82)

### 3.    Personal Jurisdiction Over ADM is Reasonable and Fair

The third factor assesses whether assertion of personal jurisdiction is reasonable and fair. *Burger King*, 471 U.S. at 476. "Even where a party has been shown to have minimum contacts with the forum state, these contacts may be considered in light of other factors to determine whether the assertion of personal jurisdiction would comport with 'fair play and substantial justice,' i.e., whether exercising jurisdiction would be reasonable." *Patent Rights Prot.*, 603 F.3d at 1369 (internal citation omitted). Considerations relevant to this inquiry may include:

> The burden on the defendant, the forum State's interest in adjudicating the dispute, the plaintiff's interest in obtaining convenient and effective relief, the interstate judicial system's interest in obtaining the most efficient resolution of controversies, and the shared interest of the several States in furthering fundamental substantive social policies.

*Id.*

When a defendant seeks to rely on the "fair play and substantial justice" factor to avoid the exercise of jurisdiction by a district court that otherwise would have personal jurisdiction over the defendant, "he must present a compelling case that the presence of some other considerations would render jurisdiction unreasonable." *Burger King*, 471 U.S. at 477. The Supreme Court advises that this third factor applies "only sparingly" and the Federal Circuit has reiterated that restrictive characterization of the third factor in multiple instances. *See, e.g.*, *Nuance*, 626 F.3d at 1231 (stating that "defeats of otherwise constitutional personal jurisdiction 'are limited to the rare situation in which the plaintiff's interest and the state's interest in adjudicating the dispute in the forum are so attenuated that they are clearly outweighed by the burden of subjecting the defendant to litigation within the forum'.") (quoting *Akro*, 45 F.3d at 1549).

Here, the Court finds that exercising jurisdiction over Defendants would be reasonable. Defendants argue that jurisdiction is unreasonable because Bosch is a Delaware corporation with its principal place of business in Illinois; therefore, no witnesses or documents

1     are located in Nevada.  However, this contention does not demonstrate that Defendants would be

2     subject to an overwhelming burden by litigating in Nevada.  Defendants do not represent the rare

3     situation where Nevada's interests are clearly outweighed by the burden of subjecting them to

4     litigation in Nevada.

5             In sum, after analyzing the requirements necessary for specific jurisdiction over an

6     out-of-state defendant, the Court concludes that personal jurisdiction exists in this case.

7     Accordingly, Defendants' Motion to Dismiss is denied.

8     **II.**      **Defendants' Alternative Motion to Transfer Venue**

9         **A.**      **Legal Standard**

10           A motion to transfer an action pursuant to 28 U.S.C. § 1404(a) presents two basic

11     questions: (1) whether the action sought to be transferred might have been brought in the proposed

12     transferee district; and (2) whether the transfer would be for the convenience of parties and

13     witnesses, in the interest of justice.  *Int'l Patent Dev. Corp. v. Wyomont Partners*, 489 F. Supp.

14     226, 228 (D. Nev. 1980) (internal citation omitted).  The court then balances the competing public

15     and private interest factors to determine if transfer is appropriate, recognizing that "1404(a)

16     provides for transfer to a more convenient forum, not to a forum likely to prove equally convenient

17     or inconvenient."  *Van Dusen v. Barrack*, 376 U.S. 612, 645–46 (1964).  Also, "transfer should not

18     be granted if the effect is simply to shift the inconvenience to the party resisting the transfer."  *Id.*

19     at 646.  Nor is the court required to determine the best venue for the action.  *Gherebi v. Bush*, 352

20     F.3d 1278, 1303 (9th Cir. 2003) (internal quotations omitted), *vacated on other grounds*, 542 U.S.

21     952 (2004).  There is a strong presumption in favor of the plaintiff's choice of forum which must

22     be taken into account when deciding whether transfer is required.  *Id.* at 1303.

23           The Ninth Circuit has identified a number of public and private factors that a

24     district court may consider on a case-by-case basis in deciding whether venue should be

25     transferred.  *Jones v. GNC Franchising, Inc.*, 211 F.3d 495, 498–99 (9th Cir. 2000).  These factors

26     include:

(1) the location where the relevant agreements were negotiated and executed, (2) the state that is most familiar with the governing law, (3) the plaintiff's choice of forum, (4) the respective parties' contacts with the forum, (5) the contacts relating to the plaintiff's cause of action in the chosen forum, (6) differences in the costs of litigation in the two forums, (7) the availability of compulsory process to compel attendance of unwilling non-party witnesses, and (8) ease of access to sources of proof.

*Id.* In addition, courts consider judicial economy when determining whether to transfer a case. *Catch Curve, Inc. v. Venali, Inc.*, CV 05-04820 DDP (AJWx), 2006 WL 4568799 (C.D. Cal. Feb. 27, 2006); *see also Van Dusen*, 376 U .S. at 616 (noting that courts seek to avoid duplicative litigation and to prevent waste of time and money).

**B.    Analysis**

Defendants have moved, in the alternative, to transfer this action to the U.S. District Court for the District of New Jersey.  Similar to their argument against the reasonableness of personal jurisdiction, Defendants argue that the Court should transfer this action because Bosch is a Delaware corporation with its principal place of business in Illinois; therefore, no witnesses or documents are located in Nevada.  In addition, Defendants assert that New Jersey would be a more convenient forum because they have many more contacts with that state, which include retaining a lawyer and holding their corporate meetings in New Jersey.

The Court finds Defendants' arguments unpersuasive and do not justify a change in venue.  Defendants do little to address the transfer factors other than mentioning documents and witnesses.  However, they present nothing to show they will be unable to compel witnesses to attend proceedings in Nevada or that sources of proof cannot be accessed in Nevada with relative ease.  At most, Defendants show that a transfer to New Jersey would be equally convenient or inconvenient for the parties.  This is insufficient to overcome the strong presumption in favor of Bosch's choice of forum to warrant transfer.  As the parties have also pointed out, Bosch has at least one other open patent infringement case before this Court.  *See Bosch v. Corea Autoparts Producing Corp*, Case No. 2:10-cv-1924-RLH-RJJ.  Thus, judicial economy also weighs against transfer.  Accordingly, the Court denies Defendants' Motion to Transfer.

11

AO 72
(Rev. 8/82)

**CONCLUSION**

Accordingly, and for good cause appearing,

IT IS HEREBY ORDERED that Defendants ADM 21 Co., Ltd., ADM USA, and ADM North America's Motion to Dismiss and/or Transfer (#20) is DENIED.

Dated: June 30, 2011.

_____
**ROGER L. HUNT**
**United States District Judge**

AO 72
(Rev. 8/82)