Michael D. Rounds, Nevada Bar No. 4734
Adam K. Yowell, Nevada Bar No. 11748
WATSON ROUNDS
5371 Kietzke Lane
Reno, Nevada  89511-2083
Telephone:  (775) 324-4100
Facsimile:  (775) 333-8171
E-Mail:   mrounds@watsonrounds.com
E-Mail:   ayowell@watsonrounds.com

Russell E. Levine, P.C., *pro hac vice*
Craig D. Leavell, *pro hac vice*
KIRKLAND & ELLIS LLP
300 North LaSalle Drive
Chicago, Illinois  60654
Telephone:  (312) 862-2000
Facsimile:  (312) 862-2200
E-Mail:   russell.levine@kirkland.com
E-Mail:   craig.leavell@kirkland.com

*Attorneys for Defendants*

## UNITED STATES DISTRICT COURT
## DISTRICT OF NEVADA

| | |
|---|---|
| ROBERT BOSCH LLC,<br><br>          Plaintiff,<br><br>     vs.<br><br>ADM 21 CO. LTD.; ADM USA; and ADM NORTH AMERICA,<br><br>          Defendants. | Civil Action No. 2:10-CV-1930-LRH-RJJ |

## DEFENDANTS' OPENING CLAIM CONSTRUCTION BRIEF
## REGARDING THE '926, '218, AND '988 PATENTS

# REDACTED PUBLIC VERSION

## TABLE OF CONTENTS

**Page**

I.    INTRODUCTION ..................................................................................................1

II.   THE APPLICABLE LAW ....................................................................................2

    A.    All Disputed Claim Terms Need To Be Resolved By This Court. ...................2

    B.    Bosch's Prosecution Disclaimers Must Be Enforced. ...................................3

III.  THE PROPER CONSTRUCTION OF THE '926 PATENT ...............................4

    A.    "$I_{zz}$ Is a Moment of Inertia of a Cross Sectional Profile Around a Z-Axis Perpendicular to an Taxis, Which Adapts Along with the Support Element (12), And Perpendicular to a Y-Axis" ....................................................................4

    B.    "Two Individual Bars" ....................................................................................7

IV.   THE PROPER CONSTRUCTION OF THE '218 PATENT ...............................9

    A.    "The Spoiler Has a Recess Receiving at Least One Retainer" .......................9

    B.    "A Spoiler Having an Outer Profile" ...........................................................12

    C.    "At Least Approximately Adapted" ..............................................................12

    D.    "Recess in the Spoiler Is Groove-Shaped" ..................................................14

V.    THE PROPER CONSTRUCTION OF THE '988 PATENT .............................15

    A.    "Hinge Half" .................................................................................................15

    B.    "Considerably Shallower" ............................................................................17

    C.    "By Each of Which One Cheek Region Is Formed on One of Two Longitudinal Sides (44) of the Coupling Part" ............................................18

    D.    "Near One End of the Coupling Part" ...........................................................19

VI.   CONCLUSION ...................................................................................................23

## <u>TABLE OF AUTHORITIES</u>

**Cases**

*Amgen, Inc. v. Chugai Pharm. Co., Ltd.*,
   927 F.2d 1200 (Fed. Cir. 1991) ................................................................. 14, 19

*Bicon, Inc. v. Straumann Co.*,
   441 F.3d 945 (Fed. Cir. 2006) ..................................................................... 2, 21

*Chef Am., Inc. v. Lamb-Weston, Inc.*,
   358 F.3d 1371 (Fed. Cir. 2004) ............................................................. 3, 17, 24

*Chimie v. PPG Indus., Inc.*,
   402 F.3d 1371 (Fed. Cir 2005) ........................................................................ 4

*Elekta Instrument S.A. v. O.U.R. Scientific Int'l, Inc.*,
   214 F.3d 1302 (Fed. Cir. 2000) .................................................................. 3, 21

*Geneva Pharms., Inc. v. GlaxoSmithKline PLC*,
   349 F.3d 1373 (Fed. Cir. 2003) .................................................................... 20

*Hamilton Prods., Inc. v. O'Neill*,
   492 F. Supp. 2d 1328 (M.D. Fla. 2007) ......................................................... 15

*Int'l Rectifier Corp. v. IXYS Corp.*,
   361 F.3d 1363 (Fed. Cir. 2004) ....................................................................... 3

*Kimberly–Clark Worldwide, Inc. v. First Quality Baby Prods.,
   LLC*, 2011 WL 871479 (M.D. Pa. March 1, 2011) ......................................... 14

*Omega Eng'g, Inc. v. Raytek Corp.*,
   334 F.3d 1314 (Fed. Cir. 2003) ................................................................. 4, 12

*Phillips v. AWH Corp.*,
   415 F.3d 1303 (Fed. Cir. 2005) ....................................................................... 2

*Schriber-Schroth Co. v. Cleveland Trust Co.*,
   311 U.S. 211 (1940)) ........................................................................................ 4

*Synthes (USA) v. Smith & Nephew, Inc.*,
   547 F. Supp. 2d 436 (E.D. Pa. 2008) ............................................................. 14

**Statutes**

35 U.S.C. § 112 ...................................................................................... 1, 13, 17

## I.      INTRODUCTION

In November 2010, Bosch sued ADM, alleging infringement of three U.S. Patents, Nos. 6,973,698 ("the '698 patent"), 6,944,905 ("the '905 patent"), and 6,553,607 ("the '607 patent"). These three patents generally relate to wiper blades and/or wiper arms that connect wiper blades to vehicles.  The parties completed briefing as to the constructions of the disputed claim terms in these three patents on May 6, 2011.

On July 13, 2011 Bosch amended its Complaint to add three more patents:  U.S. Patents No. 6,836,926 ("the '926 patent"), 6,523,218 ("the '218 patent"), and 6,611,988 ("the '988 patent").  These additional patents raise claim construction issues not addressed in the parties' earlier claim construction briefing.

Pursuant to this Court's Scheduling Order (Docket Entry ("D.E.") 69), the parties exchanged lists of claim terms to be construed and then proposed constructions.[1,2]   ADM identified fifteen claim construction issues to discuss with Bosch, but Bosch proposed constructions for only seven terms.  After the parties met and conferred, ten disputes remained regarding the proper constructions of the asserted claims of the '926, '218 and '988 patents. When asked to provide alternative constructions for several terms that ADM contends are indefinite, Bosch declined to do so.

To resolve issues concerning infringement and invalidity, the parties require guidance from the Court as to the interpretations of the ten phrases addressed in this brief.   Some phrases Bosch has proposed for construction are impossible to construe, because they are indefinite in

---

[1]  Ex. 1 is a list of all the terms addressed by this brief, and the parties' proposed constructions.  *See also* Ex. 2, 10/3/2011 Ltr. from Bosch Counsel to ADM Counsel; Ex. 3, 10/3/2011 Ltr. from ADM Counsel to Bosch Counsel; Ex. 4, 10/31/2011 Ltr. from ADM Counsel to Bosch Counsel; Ex. 5, 11/5/2011 Ltr. from ADM Counsel to Bosch Counsel.

[2]  All of the exhibits cited herein (*e.g.*, Ex. 1, Ex. 2, etc.) are exhibits to the Declaration of Matthew Shiels in Support of Defendants' Opening Claim Construction Brief Regarding the '926, '218 and '988 Patents.

violation of the Patent Act.  This Court, however, cannot "fix" the indefiniteness nor rewrite the claims to cover what Bosch wishes it would have claimed, as opposed to what Bosch actually claimed.  To do so would be legal error.  Rather, the Court is to construe the claims based on the ordinary and customary meaning of the claim terms, viewed in light of how they are used in the claims themselves, how they are disclosed and discussed in the patent specification, and consistent with the prosecution history.  ADM's proposed constructions are based on these fundamentals of claim construction, are the proper constructions, and should be adopted.

## II.     THE APPLICABLE LAW

ADM's earlier claim construction briefs regarding the original three patents-in-suit discussed certain legal standards for claim construction, which apply here as well.  *See generally* D.E. 49; D.E. 55.  ADM addresses two concepts particularly relevant to the claim construction issues addressed in this brief.

### A.     All Disputed Claim Terms Need To Be Resolved By This Court.

The words of the claims define the scope of the invention.  *Phillips v. AWH Corp.*, 415 F.3d 1303, 1312 (Fed. Cir. 2005) (en banc).  Though an inventor may wish for a broad claim scope in litigation, and may wish to effectively eliminate claim limitations, all of the terms in a claim should be construed to have meaning.  That is, claims should not be construed in a manner that would render claim language superfluous or meaningless.  *See*, *e.g., Bicon, Inc. v. Straumann Co.*, 441 F.3d 945, 950 (Fed. Cir. 2006) ("Allowing a patentee to argue that physical structures and characteristics specifically described in a claim are merely superfluous would render the scope of the patent ambiguous, leaving examiners and the public to guess about which claim language the drafter deems necessary to his claimed invention . . ."); *Elekta Instrument S.A. v. O.U.R. Scientific Int'l, Inc.*, 214 F.3d 1302, 1305–07 (Fed. Cir. 2000) (refusing to adopt a construction which would render claim language superfluous).  The Federal Circuit "repeatedly

and consistently has recognized that courts may not redraft claims, whether to make them operable or to sustain their validity," and "in accord with . . . settled practice [the court] construe[s] the claim as written, not as the patentees wish they had written it." *Chef Am., Inc. v. Lamb-Weston, Inc.*, 358 F.3d 1371, 1374 (Fed. Cir. 2004) (construing term "to" in claim limitation reciting "heating the resulting batter-coated dough to a temperature in the range of about 400 °F to 850 °F" as requiring that the dough be heated *to* the specified temperature even though the construction would result in a dough burned beyond use, and rejecting argument that the claim should be construed to mean the dough was heated *at* the specified temperature).

Similarly, if an inventor uses narrow claim language, a court may not apply a broader construction. While "the meaning of claim terms must be considered from the perspective of one of ordinary skill in the art, that does not mean that the inventor's choice of words may be ignored." *Int'l Rectifier Corp. v. IXYS Corp.*, 361 F.3d 1363, 1371 (Fed. Cir. 2004)  A "district court [i]s not free to attribute new meaning to [a] term or to excuse the patentee from the consequences of its own word choice." *Id.* at 1371–72 (holding that "[t]he correct construction of the term 'polygonal' . . . is simply 'a closed plane figure bounded by straight lines'" and that "[t]he district court's construction, [which] relax[ed] the requirements so much as to allow round corners and not straight edges, [was] erroneous.").

### B.     Bosch's Prosecution Disclaimers Must Be Enforced.

An inventor may not argue a position in litigation that is contrary to one taken during prosecution of the patent.  "It is a rule of patent construction . . .  [that] claims allowed cannot by construction be read to cover what was thus eliminated from the patent." *Omega Eng'g, Inc. v. Raytek Corp.*, 334 F.3d 1314, 1323 (Fed. Cir. 2003) (quoting *Schriber-Schroth Co. v. Cleveland Trust Co.*, 311 U.S. 211, 220–21 (1940)).  Where a patentee has made an express disclaimer, or has otherwise "unequivocally disavowed a certain meaning to obtain his patent, the doctrine of

prosecution history disclaimer attaches and narrows the ordinary meaning of the claim congruent with the scope of surrender."  *Chimie v. PPG Indus., Inc.*, 402 F.3d 1371, 1384  (Fed. Cir 2005) (quoting *Omega Eng'g*, 334 F.3d at 1323).

### III.   THE PROPER CONSTRUCTION OF THE '926 PATENT

Bosch has asserted claims 1, 2 and 3 of the '926 patent in this case.

### A.   "$I_{zz}$ Is a Moment of Inertia of a Cross Sectional Profile Around a Z-Axis Perpendicular to an Taxis, Which Adapts Along with the Support Element (12), And Perpendicular to a Y-Axis"

| Claim Phrase | |
| --- | --- |
| $I_{zz}$ is a moment of inertia of a cross sectional profile around a z-axis perpendicular to an taxis, which adapts along with the support element (12), and perpendicular to a y-axis | |
| **Bosch's Proposed Construction** | **ADM Proposed Construction** |
| $I_{zz}$ is a moment of inertia of a cross sectional profile around a z-axis perpendicular to an s-axis which adapts along with the support element, and perpendicular to a y-axis | $I_{zz}$ is the moment of inertia of the cross sectional profile around the z-axis, wherein the z-axis is perpendicular to 1) the s-axis, which adapts along with the support element and 2) the y-axis, and wherein the orientation of the z-axis and the orientation of the y-axis are show in Figure 4 and Figure 5 |

This phrase appears in claim 1 of the '926 patent and therefore is present in dependent claims 2 and 3 as well.  A cross sectional profile of an object has an infinite number of moments of inertia.  This phrase describes *which* moment of inertia of the claimed support element is to be used in the claimed equations.  It does so by reference to axes (*i.e.*, a coordinate system).

ADM and Bosch agree that the sub-phrase "perpendicular to an taxis, which adapts along with the support element" should read "perpendicular to an s-axis, which adapts along with the support element."  This is consistent with Figure 6, which shows that **an s-axis** adapts along the **support element (12)**.

4



Fig. 6

Second, the specification clearly shows the orientations of the z-axis and the y-axis. Specifically, (i) the **z-axis** is perpendicular to the **y-axis**, (ii) the **z-axis** is the axis along which the width [b] of the **support element** is measured, and (iii) the **y-axis** is the axis along which the thickness [d] of the **support element** is measured.  These three relationships are depicted in *every* figure showing the cross section of the claimed **support element**.  *See* Ex. 6 ('926 patent) at FIG. 3, FIG. 4, FIG. 5.



Fig. 3

Fig. 4

Fig. 5

Moreover, the text of the specification specifically references Figure 4 and confirms that (i) the **z-axis** is perpendicular to the **y-axis**, (ii) the **z-axis** is the axis along which the width [b] of the

**support element** is measured, and (iii) the **y-axis** is the axis along which the thickness [d] of the **support element** is measured. *See Id.* at 5:43–47 ("FIG. 4 . . . shows a cross sectional profile 40 that has a rectangular sectional plane with a width b and a thickness d.  In addition, a coordinate system is shown above the support element 12.").

Bosch's proposed construction reads a limitation out of the claim—it renders the claim's axial references meaningless.  If, as Bosch proposes, the z-axis can be in any direction (not just the direction shown in the patent's specification), then there is no reason to include the references to the z-axis and y-axis in the claim.  If the inventor had intended the meaning proposed by Bosch, the claim would simply read "$I_{zz}$ is a moment of inertia of a cross sectional profile around an axis perpendicular to an axis that adapts along with the support element."  The inventor included labels for these axes (z and s, respectively) and included a reference and label for a third axis (the y axis).  Bosch's construction gives no meaning to these inclusions, but ADM's construction does.

Thus, the specification consistently and exclusively shows the orientation of the z-axis to be perpendicular to the y-axis and in the direction that the support-element width is measured, and it consistently and exclusively shows that the y-axis is perpendicular to the z-axis and in the direction that the support-element thickness is measured.  Consequently, the claim term "$I_{zz}$ is a moment of inertia. . ." should be construed as dictated by these disclosures.  ADM's proposed construction accomplishes this.

[Intentionally left blank]

B.      "Two Individual Bars"

| Claim Term | |
|---|---|
| two individual bars | |
| **Bosch Proposed Construction** | **ADM Proposed Construction** |
| no construction necessary; alternatively, if construction is deemed necessary, two bars separated at least in part by a space | two distinct and separate bars |

This phrase is used in claim 3 of the '926 patent.  ADM's proposed construction gives meaning to the word "individual."  *See* Section II.A, *supra*.  Webster's New College Dictionary defines "individual" as:  "Existing as a distinct entity: SEPARATE <*individual* drops of rain>."  Ex. 7 (Webster's II New College Dictionary  (3d ed. 2005) at 578.  Accordingly, "two individual bars" is appropriately construed as "two distinct and separate bars."

The patent's disclosures are consistent with this definition.  Specifically, the specification explains that "the support element 12" can be "***divided*** into two ***separate*** spring bars 42 and 44, as shown in FIG. 5."  *See* Ex. 6 ('926 patent) at 7:10–11 (emphasis added).  Since *separate* bars are created by *dividing* a single support element, it is accurate to described those bars as "two distinct and separate bars."

Moreover, Figure 5 shows the bars (42 and 44) that comprise the claimed support element (12) to exist as discrete entities wholly independent of each other; for example, there are no connections between the bars.  *See* Ex. 6 ('926 patent) at FIG. 5; *see also id.* at FIG. 4 (showing the support element (12) when it is not divided into two separate spring bars).  Namely, the bars in Figure 5 are shown to be distinct and separate entities.



Fig. 4                         Fig. 5

In a real-world application, Bosch's wiper blades also use two distinct and separate bars, demonstrating how one of skill in the art would understand what is meant by the term "two individual bars."  This can be seen in the image of Bosch's Evolution™ wiper blade below.  The disassembled view is shown on the left, where the two individual bars are visible.  The right side of the image depicts the blade in its assembled form, with the attached spoiler and end cap covering the two individual bars.  The middle portion is covered by a connector.  As can be seen from the left side of the image, the two bars are distinct and separate pieces of metal along the entire length of the blade:



Bosch's proposed construction finds no support in the patent or elsewhere; it is manufactured to expand the scope of the '926 patent in an attempt to cover ADM's unique design.  Unlike the claimed invention and Bosch's products, ADM's wiper blades do not use two

8

individual bars.  Instead, ADM's products use a single bar with a space that retains the rubber wiping element.  This can be seen in the image of ADM's XF4 wiper blade below.



Bosch should not be allowed to manufacture a construction for this term that expands the scope of its patent claim.

Consequently, "two individual bars" should be construed to mean "two distinct and separate bars" so that the phrase is consistent with the patent's disclosure and the ordinary meaning of the word "individual."

## IV.   THE PROPER CONSTRUCTION OF THE '218 PATENT

Bosch asserts six claims of the '218 patent: independent claim 1, and its dependent claims 2, 5, 6, 7, and 10.

### A.   "The Spoiler Has a Recess Receiving at Least One Retainer"

| Claim Term | |
|---|---|
| the spoiler has a recess receiving at least one retainer | |
| **Bosch's Proposed Construction** | **ADM Proposed Construction** |
| no construction necessary | the spoiler has a recess for receiving at least one retainer; the recess is not an aperture or hole, but merely an indentation |

This phrase appears in claim 1 of the '218 patent, and therefore in dependent claims 2, 5–7, and 10 as well.  The phrase is used to describe the recess of the spoiler.  The specification explains that the spoiler has a wind-deflecting function.  *See* Ex. 9 ('218 patent) at 1:42–46. Additionally, the specification describes the spoiler as having "groovelike" recesses for holding

at least one retainer.  *See id.* at 2:9, 4:61.  The specification also describes the recess as "oriented transversely to the length of the wiper strip."  *Id.* at 4:10–11.  These descriptions from the specification are consistent with a recess that is merely an indentation rather than an aperture or hole, and they support ADM's proposed construction for the claim term.  Furthermore, in the "Summary of the Invention" portion of the specification, the specifcication states that recesses allow for a spoiler that is integrally formed onto the blade claimed in claim 1.  In other words, the inventor saw his claim as relating to spoilers and wiper stripes that were formed from one continuous piece of rubber:

> In the wiper blade according to the invention, as defined by the characteristics of the body of claim 1, it is possible for this spoiler to be formed integrally and economically onto the wiper strip; the recesses make an inconspicuous, problem-free placement of the retainers possible.

*Id.* at 1:37–42.  In order for a "recess" to be "integrally formed" into the spoiler, the patent teaches the use of mere "indentations," as opposed to an aperture or hole.  This is so the spoiler can run the entire length of the blade, but still allow for recesses into which the retainers can be placed.  A different approach (and the approach implemented in ADM's wiper blades) is to use two separate spoilers, one on each end of the wiper blade, neither of which runs the entire length of the blade.  In this alternative approach, there is no need for "recesses" for "retainers."  Instead, the open space that exists between the two separate spoilers can be used to house a connection piece, without the need to have any recess designed into the spoiler itself.

Figure 7 of the '218 patent further supports ADM's construction.  Figure 7 depicts a recess that has expanded due to the aging of the materials used "to produce the wiper strip 22 and the spoiler 23 integrally joined to it."  *Id.* at 4:62–5:1.  As shown in Figure 7, the claimed recesses are indentations in the spoiler/wiper strip rubber and do not fully sever the spoiler/wiper strip into two separate pieces.  Instead, the single-piece, continuous spoiler continues underneath

the indentations, as shown by reference numerals 22 and 23 and highlighted in blue below:



Fig. 7

In addition to the specification, the prosecution history also dictates a narrow construction for this claim term, which was closely scrutinized during the examination of the application that led to the '218 patent.  During a telephone interview, the examiner and Bosch's patent attorney, Mr. Striker,  "[d]iscussed changes to claims to correct [35 U.S.C. §] 112 second paragraph deficiencies" and "*[a]lso discussed that [the] recess set forth in claim 1 is not an aperture or hole as is shown by* **[the prior-art reference]** *Hoyler but merely an indentation*."  Ex. 10 ('218 patent prosecution history, September 25, 2002 Interview Summary) (emphasis added).[3]  The examiner's Reasons for Allowance also specifically noted that a hole in the wiper blade "is not considered to be a recess."  Ex. 11 ('218 patent prosecution history, Examiner's Am. and Reasons for Allowance) at 4.  The examiner also amended the specification to replace Bosch's phrase ("groove-shaped") with the word that appears in the issued patent ("groovelike").  Ex. 11 ('218 patent prosecution history, Examiner's Am. and Reasons for Allowance) at 3–4.  When construing the patent terms in litigation, Bosch may not take positions that attempt to recapture claim scope that was surrendered during prosecution.  *Omega Eng'g, Inc.*, 334 F.3d at 1323.

---

[3]  A courtesy copy of the entire '218 patent prosecution history will be provided to the Court.

**B.      "A Spoiler Having an Outer Profile"**

| Claim Term | |
|---|---|
| a spoiler having an outer profile | |
| **Bosch's Proposed Construction** | **ADM Proposed Construction** |
| no construction necessary | a spoiler having an outer surface shaped so as to prevent the wiper blade from lifting away from the window |

This phrase appears in claim 1 of the '218 patent, and therefore also is present in dependent claims 2, 5–7, and 10.  According to the specification of the '218 patent, a spoiler, or wind repelling strip, may be included on a wiper blade "if the tendencies of the wiper blade to lift away from the window at relatively high travel speeds are to be averted."  Ex. 9 ('218 patent) at 1:26–29.  It follows that a spoiler's outer surface—the surface facing the wind and other elements a wiper blade may encounter during use—is shaped to permit the spoiler to perform this function.

The specification supports ADM's construction.  For example, the specification identifies the spoiler's outer profile as an outer surface serving the spoiler's wind-deflecting function.  *See* Ex. 9 ('218 patent) at 1:42–46 ("Because of the adaptation of the outer profile of the retainer to the profile of the spoiler, the *spoiler remains operative over its full length, because no gaps that impair the contact pressure distribution remain*.") (emphasis added).  ADM's construction of the claim term is proper.

**C.      "At Least Approximately Adapted"**

| Claim Term | |
|---|---|
| at least approximately adapted | |
| **Bosch's Proposed Construction** | **ADM Proposed Construction** |
| no construction necessary | indefinite |

This phrase appears in claim 1 of the '218 patent, and therefore also is present in

dependent claims 2, 5–7, and 10.  The claim term is not subject to any reasonable interpretation supported—or capable of being supported—by the specification.  Specifically, the claim term includes three serial terms of approximation:  "at least," "approximately," and "adapted to." These terms are used without explanation in the specification, and would not allow one of ordinary skill in the art to be on notice of the metes and bounds of the claimed invention.

While courts routinely construe terms of approximation when a patent's specification gives one of skill in the art guidance as to the meaning of the term, claims containing terms of approximation have been invalidated for indefiniteness when the intrinsic evidence fails to give any such guidance.  This is true particularly when claims contain multiple terms of approximation.  *See Amgen, Inc. v. Chugai Pharm. Co., Ltd.*, 927 F.2d 1200, 1217–18, (Fed. Cir. 1991) (finding the term "at least about 160,000 IU/AU" to be indefinite); *Synthes (USA) v. Smith & Nephew, Inc.*, 547 F. Supp. 2d 436 (E.D. Pa. 2008) (finding that the term "less than about 2%" was insolubly ambiguous and therefore invalid where the specification provided no guidance to one of ordinary skill in the art as to which values qualified as "about 2%."); *Kimberly–Clark Worldwide, Inc. v. First Quality Baby Prods., LLC,* 2011 WL 871479, at *4 (M.D. Pa. March 1, 2011) ("However, this case concerns claim terms with additional modifying language of 'at least.' There is simply no intrinsic evidence that the word 'about' coupled with 'at least' has an accepted meaning."); *Hamilton Prods., Inc. v. O'Neill*, 492 F. Supp. 2d 1328, 1336–41 (M.D. Fla. 2007) (holding that "less than approximately 0.8 [inches]" was indefinite).

Here, the disputed claim term contains not one, but three consecutive terms of approximation:  "at least," "approximately," and "adapted to."  The specification does not give any guidance as to what a single one of these terms—let alone all three together—mean.  And Bosch has not, and cannot point to language in the specification or the claims to shed light on the

13

meaning of "at least approximately adapted to."  Indeed, when asked directly, Bosch took the position that it will not propose any alternative construction for this term.  *See* Ex. 12 (11/4/2011 e-mail from Cowell to Shiels).  Bosch wants this Court to simply ignore the multiple terms of approximation and allow the indefinite terms to stand without any guidance or explanation.  In short, Bosch wants this Court to ignore both the case law and the public disclosure function of the United States patent system.  Instead, this Court should hold that this claim term is indefinite for failure to comply with 35 U.S.C. § 112.

D.     **"Recess in the Spoiler Is Groove-Shaped"**

| Claim Term | |
|---|---|
| recess in the spoiler is groove-shaped | |
| **Bosch's Proposed Construction** | **ADM Proposed Construction** |
| no construction necessary | recess in the spoiler is groove-shaped and is not an aperture or hole, but merely an indentation |

This phrase appears in claim 1 of the '218 patent, and therefore also is present in dependent claims 2, 5–7, and 10.  ADM's proposed construction is supported by the language in the specification of the '218 patent.  The specification describes the recess as "groovelike" (Ex. 9 ('218 patent) at 2:9, 4:61), and "oriented transversely to the length of the wiper strip."  *Id*. at 4:10–11.  These descriptions from the specification are consistent with a recess that is merely an indentation rather than an aperture or hole, and they support ADM's proposed construction for the claim term.

Furthermore, as discussed in Section IV.A of this brief, Bosch argued before the examiner that the claimed "recess" "*is not an aperture or hole as is shown by Hoyler but merely an indentation*" when overcoming a claim rejection. Ex. 9 ('218 patent prosecution history, September 25, 2002 Interview Summary). (emphasis added).  Bosch may not alter from the positions it took during patent prosecution to overcome rejections.   ADM's proposed

14

construction should be adopted.

## V.      THE PROPER CONSTRUCTION OF THE '988 PATENT

Bosch asserts eight claims of the '988 patent:  claims 1–6, 9, and 11.

### A.      "Hinge Half"

| Claim Term | |
|---|---|
| hinge half | |
| **Bosch's Proposed Construction** | **ADM Proposed Construction** |
| portion of the coupling part formed by the bearing recess | the one of the two coupling part halves in which the entire bearing recess is formed |

This claim limitation appears in independent claims 1 and 11, and therefore also is present in dependent claims 2–5, 8, and 9.  ADM's proposed construction is supported by intrinsic evidence and gives meaning to each of the two words used by the inventor in the disputed phrase.  The "hinge half" is repeatedly referenced through the specification as having a hinge axis.  *See*, *e.g.,* Ex. 13 ('988 patent) at 1:51–52, 4:35–37.  While a patentee is free to be his own lexicographer, the references to "hinge half" do not redefine the words in a manner inconsistent with their plain meaning within the context of the asserted claims.

The inventor chose to recite the scope of its claimed invention using the phrase "hinge *half*" as opposed to a hinge "portion" or "region."  In contrast, the inventor *did choose* the term "region" when reciting other aspects of its claims, thus indicating that (i) the inventor knew how to use broader language when it wanted to do so, but (ii) the inventor made a conscious decision to use the narrower "half" in connection with the phrase "hinge half."  *See*, *e.g., id.* at 1:66 (cheek *regions*), 2:30 (end *region*), 2:36–37 (in the *region* where the force is transmitted from the wiper arm to the wiper blade), 6:42 at claim 1 (longitudinal *region*).  Here, Bosch's decision to use the narrower phrase "hinge half" must be honored, and Bosch cannot rewrite its claims in

hindsight to replace "half" with "portion."  *Chef Am., Inc.*, 358 F.3d at 1374 ("[W]e construe the claim as written, not as the patentees wish they had written it").  Further, the specification drawings, such as Figure 3, also teach a hinge half that is approximately half of the connecting part:



Extrinsic evidence also supports ADM's proposed construction.  For example, Webster's defines half to mean "one of two equal parts that together make up a whole" or "a part of something approx. equal to the remainder."  Ex. 7 (Webster's II New College Dictionary  (3d ed. 2005)) at 511.  This dictionary definition is consistent with the term's plain and ordinary meaning, and with ADM's proposed construction.

In contrast, Bosch's proposed construction attempts to read out words from its claims in a self-serving attempt to broadening its claims.  The term "half" expressly specifies one of the two equal portions of the coupling part, not merely some vague and undefined "portion."  Indeed, "portion" adds nothing to construction, and reads the word "half" entirely out of the disputed claim term.

B.      "Considerably Shallower"

| Claim Term | |
|---|---|
| considerably shallower | |
| **Bosch's Proposed Construction** | **ADM Proposed Construction** |
| visibly lower | indefinite |

This claim term appears in claim 1, and therefore also is present in 2–5, 8, and 9.  The claim term "considerably shallower" purportedly differentiates one end of the coupling part from the end of the coupling part with the bearing recess.  But neither the claims nor the specification provide any guidance as to the meaning or scope of this inherently ambiguous term.  Instead, "considerably shallower" is occasionally referenced in the specification without mention of a specific difference in thickness.  Similarly, a ratio of the differences in thickness between the shallower portion and the other portion of the claimed coupling part does not appear in the specification.  Bosch has failed to disclose any objective or quantifiable measure of the claim term.  Whether a potential infringing product meets this claim limitation may vary based on whose interpretation of "considerably" or "shallower" is applied.  *See also* Section IV.C (discussing indefiniteness of limitations employing multiple terms of approximation).

In addition, Bosch's proposed construction is in tension with the definition of "considerably."  Webster's New College Dictionary defines "considerable" to mean "large in amount, extent, or degree."  Ex. 7 (Webster's II New College Dictionary  (3d ed. 2005)) at 246.  "Shallow" is defined as "measuring little from bottom to top or surface."  *Id*. at 1038.  Taken together, the dictionary definition of the limitation is closer to a "large degree of reduced depth or thickness," or "a lot lower."  This is a far cry from "visibly lower" (as proposed by Bosch), which could encompass merely a slight, but visibly perceptive, change in thickness.

Moreover, Bosch's proposed construction does nothing to cure the ambiguity of the

17

limitation. "Visibly lower" is equally unhelpful to a person of ordinary skill in the art trying to determine whether a product falls within the scope of the claimed invention. Bosch merely proposes replacing one ambiguous term of approximation with another. ADM requests that the Court find the claim limitation to be indefinite.

C. **"By Each of Which One Cheek Region Is Formed on One of Two Longitudinal Sides (44) of the Coupling Part"**

| Claim Term | |
|---|---|
| by each of which one cheek region is formed on one of two longitudinal sides (44) of the coupling part | |
| **Bosch's Proposed Construction** | **ADM Proposed Construction** |
| each side region is formed on one of two longitudinal sides of the coupling part | indefinite |

This limitation, found in dependent claim 2 of the '988 patent, is indefinite because it is insolubly ambiguous. On its face, the limitation is nonsensical; the only way to make sense of the claim is to delete one or more extraneous, confusing words. But because it is unclear exactly which words to delete, this is not a situation where a claim contains a simple typographical error than can easily be understood to have only one unambiguous fix. Instead, the fact that there are multiple potential "fixes," either of which would make grammatical sense, means the phrase is indefinite. *Amgen Inc.,* 314 F.3d at 1342 (Fed. Cir. 2003) ("That the court recognized that one of ordinary skill in the art would have been faced with this 'conundrum' should have ended the inquiry, for such ambiguity in claim scope is at the heart of the definiteness requirement of 35 U.S.C. § 112, ¶2. One cannot logically determine whether an accused product comes within the bounds of a claim of unascertainable scope."); *Geneva Pharms., Inc. v. GlaxoSmithKline PLC*, 349 F.3d 1373, 1384 (Fed. Cir. 2003) ("[O]ne of skill would not know from one bacterium to the next whether a particular composition standing alone is within the claim scope or not. That is the epitome of indefiniteness. This court therefore rejects this proposed construction.")

First, one could delete "by" and "of which" to read:  "each cheek region is formed on one of two longitudinal sides . . ."  Alternatively, one could delete "by each of which" so that the limitation read, "one cheek region is formed on one of two longitudinal sides . . ."[4]  Depending on which words are removed, one of ordinary skill in the art could understand the limitation to have one of two meanings.  Claim 2 therefore has an ambiguous scope (even if a fix is allowed and assumed), is insolubly ambiguous, and is therefore indefinite.

### D.      "Near One End of the Coupling Part"

| Claim Term | |
|---|---|
| near one end of the coupling part | |
| **Bosch's Proposed Construction** | **ADM Proposed Construction** |
| no construction necessary; alternatively, if construction is deemed necessary, in the vicinity of one end of the coupling part | close to one longitudinal end of the coupling part and closer to that end than to the other longitudinal end of the coupling part |

This limitation is found in claim 11 of the '988 patent and refers to the location of the bearing recess. All of the intrinsic evidence supports ADM's construction.  First, the claim language itself requires that the bearing recess must be closer to one side of the coupling part than the other side of the coupling part.  By its explicit terms, claim 11 requires that "in the longitudinal direction of the wiper blade," the bearing recess is "disposed near one end thereof." In other words, when the coupling part is viewed in the longitudinal direction of the wiper blade, the bearing recess must be "near one end" of the coupling part.  It follows that, in order to be near one end of the coupling part, the bearing recess must also necessarily be closer to the end it

---

[4]  Reading the language in context is no better.  Claim 2 reads:

   The wiper blade of claim 1, wherein the wiper arm coupling part (20) has two cheek regions (40 and 42, and 64), extending in a longitudinal direction of the wiper blade (10) and disposed upright relative to the window and glass (24), by each of which one cheek region is formed on one of two longitudinal sides (44) of the coupling part, and that a spacing (46) between the two cheek regions is between 16 mm and 25 mm.

Indeed, reading the limitation in the context of claim 2 suggests that the window and glass each form a cheek region, which is then "on one of two longitudinal sides of the coupling part."

is "near" than it is to the other longitudinal end of the coupling part.

Any other construction renders the limitation meaningless, as any bearing recess could potentially meet the limitation, regardless of its relative closeness to either side of the coupling part.   But claims should not be construed in a manner that would render claim language superfluous or meaningless.  *See*, *e.g., Bicon, Inc.*, 441 F.3d at 950 ("Allowing a patentee to argue that physical structures and characteristics specifically described in a claim are merely superfluous would render the scope of the patent ambiguous, leaving examiners and the public to guess about which claim language the drafter deems necessary to his claimed invention . . ."); *Elekta Instrument S.A.*, 214 F.3d at 1305–07 (refusing to adopt a construction which would render claim language superfluous).  Accordingly, in order to give the limitation any meaning, the bearing recess must be closer to one longitudinal end than the other.

The specification of the '988 patent further supports this construction.   First, the specification specifically distinguishes between the end of the coupling part closer to the bearing recess, and "the other end"—implying that the bearing recess is closer to one end of the coupling part than the other end:

> [I]n terms of the longitudinal direction of the wiper blade, the bearing recess is disposed near one end of the coupling part, and the thickness of the coupling part between ***the one end region provided with the bearing recess and the other end of the coupling part*** is less, at least over a longitudinal portion, than the end portion of the coupling part that has the bearing recess.

'988 patent at 1:26–33 (emphasis added).  Additionally, every figure shows a bearing recess (36) (also known as the hinge axis 52) closer to one longitudinal end of the coupling part (30) than the other longitudinal end.  The bearing recess is pointed out in blue; the coupling part is green; and the wiper arm is shown in red:



While there are multiple examples of having a bearing recess closer to one longitudinal side of the coupling part than to the other side of the coupling part, the '988 patent contains no examples of a coupling part with a bearing recess that is equidistant to both longitudinal ends of the coupling part.  Bosch's implicit assertion that the claims would cover a coupling part with a centered bearing recess is yet another example of Bosch attempting to ignore claim language and rewrite the claims to instead cover the accused products (both ADM's XF4 and XF2 blades have centered holes that are equidistant from the longitudinal ends of their connector piece, as shown below):



XF4 (x = y)



XF2 (x = y)

But Bosch must be held to the words they used in the patent, not the words that they wished they had used. *Chef Am., Inc.*, 358 F.3d at 1374.   Accordingly, ADM's proposed construction should be adopted.

## VI.    CONCLUSION

For the reasons set forth above, ADM respectfully requests that this Court adopt ADM's

proposed claim interpretations.

DATED:  November 21, 2011              By:   _/s/ Craig D. Leavell_____

Michael D. Rounds, Nevada Bar No. 4734
Adam K. Yowell, Nevada Bar No. 11748
WATSON ROUNDS
5371 Kietzke Lane
Reno, Nevada  89511-2083
Telephone:  (775) 324-4100
Facsimile:  (775) 333-8171
E-Mail:  mrounds@watsonrounds.com
E-Mail:  ayowell@watsonrounds.com

Russell E. Levine, P.C., *pro hac vice*
Craig D. Leavell, *pro hac vice*
KIRKLAND & ELLIS LLP
300 North LaSalle Drive
Chicago, Illinois  60654
Telephone:  (312) 862-2000
Facsimile:  (312) 862-2200
E-Mail:  russell.levine@kirkland.com
E-Mail:  craig.leavell@kirkland.com

*Attorneys for Defendants.*

**CERTIFICATE OF ELECTRONIC SERVICE**

I hereby certify that on November 21, 2011, I caused the foregoing **DEFENDANTS' OPENING CLAIM CONSTRUCTION BRIEF REGARDING THE '926, '218, AND '988 PATENTS** with the Clerk of the Court for the District of Nevada using the ECF System which will send notification to the following registered participants of the ECF System as listed on the Court's Notice of Electronic Filing:

> Richard M. Cowell
> Jeffrey S. Ginsberg
> Mark Hannemann
> Michael J. Lennon
> Robert W. Hernquist
> Todd M. Touton
> Marla DaVee

I also certify that I have mailed by United States Postal Service the paper to the following non-participants in the ECF System:

> None.

By: _/s/ Craig D. Leavell_
　　　 Craig D. Leavell