Michael D. Rounds, Nevada Bar No. 4734
Adam K. Yowell, Nevada Bar No. 11748
WATSON ROUNDS
5371 Kietzke Lane
Reno, Nevada 89511-2083
Telephone:  (775) 324-4100
Facsimile:   (775) 333-8171
E-Mail: mrounds@watsonrounds.com
E-Mail: ayowell@watsonrounds.com

Russell E. Levine, P.C., *pro hac vice*
Craig D. Leavell, *pro hac vice*
Bryce A. Budin, *pro hac vice*
Matthew J. Shiels, *pro hac vice*
KIRKLAND & ELLIS LLP
300 North LaSalle Drive
Chicago, Illinois 60654
Telephone:  (312) 862-2000
Facsimile:   (312) 862-2200
E-Mail: russell.levine@kirkland.com
E-Mail: craig.leavell@kirkland.com
E-Mail: bryce.budin@kirkland.com
E-Mail: matthew.shiels@kirkland.com

*Attorneys for Defendants*

# UNITED STATES DISTRICT COURT
## DISTRICT OF NEVADA

|  |  |
|---|---|
| ROBERT BOSCH LLC,<br><br>            Plaintiff,<br><br>      vs.<br><br>ADM21 CO., LTD.; ADM USA; and ADM NORTH AMERICA,<br><br>            Defendants. | Civil Action No. 2:10-cv-01930-RLH-RJJ |

## DEFENDANTS' RESPONSE CLAIM CONSTRUCTION BRIEF
## REGARDING THE '926, '218, AND '988 PATENTS

## TABLE OF CONTENTS

I.  INTRODUCTION .................................................................................................1

II. THE PROPER CONSTRUCTION OF THE '926 PATENT .............................2

    A.  "$I_{zz}$ Is a Moment of Inertia of a Cross Sectional Profile Around a Z-Axis Perpendicular to an Taxis, Which Adapts Along with the Support Element (12), and Perpendicular to a Y-Axis" .................................................2

    B.  "Two Individual Bars" .............................................................................5

III. THE PROPER CONSTRUCTION OF THE '218 PATENT ............................8

    A.  "The Spoiler Has a Recess Receiving at Least One Retainer" ...............8

    B.  "A Spoiler Having an Outer Profile" ......................................................9

    C.  "At Least Approximately Adapted" .......................................................11

    D.  "Recess in the Spoiler Is Groove-Shaped" ...........................................13

IV. THE PROPER CONSTRUCTION OF THE '988 PATENT .........................13

    A.  "Hinge Half" .........................................................................................13

    B.  "Considerably Shallower" .....................................................................14

    C.  "By Each of Which One Cheek Region Is Formed on One of Two Longitudinal Sides (44) of the Coupling Part" ....................................15

    D.  "Near One End of the Coupling Part" ...................................................17

V.  CONCLUSION ................................................................................................18

**TABLE OF AUTHORITIES**

**Cases**

*Acumed LLC v. Stryker Corp.*,
    483 F.3d 800 (Fed. Cir. 2007)........................................................................................ 5

*Allen Eng'g Corp. v. Bartell Indus., Inc.*,
    299 F.3d 1336 (Fed. Cir. 2002)................................................................................... 18

*Amgen, Inc. v. Chugai Pharm. Co.*
    927 F.2d 1200 (Fed. Cir. 1991) ................................................................................. 13

*Andrew Corp. v. Gabriel Elecs., Inc.*,
    847 F.2d 819 (Fed. Cir. 1988)............................................................................. 12, 13

*Bicon, Inc. v. Straumann Co.*,
    441 F.3d 945 (Fed. Cir. 2006) ..................................................................................... 5

*Biovail Corp. Int'l v. Andrx Pharms., Inc.*,
    239 F.3d 1297 (Fed. Cir. 2001) ................................................................................... 9

*Cat Tech LLC v. TubeMaster, Inc.*,
    528 F.3d 871 (Fed. Cir. 2008)..................................................................................... 5

*CBT Flint Partners, LLC v. Return Path, Inc.*,
    654 F.3d 1353 (Fed. Cir. 2011).................................................................................. 17

*Datamize, LLC v. Plumtree Software, Inc.*,
    417 F.3d 1342 (Fed. Cir. 2005).................................................................................. 20

*Halliburton Energy Servs., Inc. v. M-I LLC*,
    514 F.3d 1244 (Fed. Cir. 2008)............................................................................ 18, 20

*Hamilton Products, Inc. v. O'Neill*,
    492 F. Supp. 2d 1328 (M.D. Fla. 2007) ................................................................... 13

*Hockerson-Halberstadt, Inc. v. Avia Grp. Int'l, Inc.*,
    222 F.3d 951 (Fed. Cir. 2000).................................................................................... 16

*Honeywell Int'l, Inc. v. Int'l Trade Comm'n*,
    341 F.3d 1332 (Fed. Cir. 2003).................................................................................. 18

*Liebel-Flarsheim Co. v. Medrad Inc.*,
    No. 04-607, 2006 WL 335846 (S.D. Ohio Feb. 14, 2006).......................................... 1

*Markman v. Westview Instruments, Inc.*,
    52 F.3d 967 (Fed. Cir. 1995), *aff'd*, 517 U.S. 370 (1996).......................................... 1

*Merck & Co., Inc. v. Teva Pharms. USA, Inc.*,
    395 F.3d 1364 (Fed. Cir. 2005).................................................................................. 12

iii

*Messer v. HO Sports Co.*,
   No. 06-826, 2007 WL 2011210 (D. Or. July 9, 2007) ................................................. 13

*Netword, LLC. v. Centraal Corp.*,
   242 F.3d 1347 (Fed. Cir. 2001)) ................................................................................. 10

*Nystrom v. TREX Co., Inc.*,
   424 F.3d 1136 (Fed. Cir. 2005) .................................................................................. 16

*O2 Micro Int'l Ltd. v. Beyond Innovation Tech. Co., Ltd.*,
   521 F.3d 1351 (Fed. Cir. 2008) ......................................................................... 1, 6, 10

*Ortho-McNeil Pharm., Inc. v. Carcao Pharm. Labs., Inc.*,
   476 F.3d 1321 (Fed. Cir. 2007) .................................................................................. 13

*Phillips v. AWH Corp.*,
   415 F.3d 1303 (Fed. Cir. 2005) .................................................................................... 2

*PSC Computer Prods., Inc. v. Foxconn Int'l, Inc.*,
   355 F.3d 1353 (Fed. Cir. 2004) .................................................................................. 20

*Rolls-Royce, PLC v. United Techs. Corp.*,
   603 F.3d 1325 (Fed. Cir. 2010) ................................................................................ 3, 4

*Standard Oil Co. v. Am. Cyanamid Co.*,
   774 F.2d 448 (Fed. Cir. 1985) ...................................................................................... 9

*Symbol Techs., Inc. v. Lemelson Med., Educ. & Research Found., Ltd.*,
   301 F. Supp. 2d 1147 (D. Nev. 2004) ................................................................... 10, 15

*Synthes (USA) v. Smith & Nephew, Inc.*,
   547 F. Supp. 2d 436 (E.D. Pa. 2008) ......................................................................... 13

**Statutes**

35 U.S.C. § 112 ........................................................................................................... 15

# I.      INTRODUCTION

As in Bosch's Opening Claim Construction Brief for the earlier-asserted '698, '905, and '607 patents, Bosch urges this Court to decline to construe most of the disputed claim terms.  But, as with the earlier-asserted patents, "[a] claim must be construed before determining its validity just as it is first construed before deciding infringement."  *Markman v. Westview Instruments, Inc.*, 52 F.3d 967, 996 n.7 (Fed. Cir. 1995), *aff'd*, 517 U.S. 370 (1996).   Where, as here, "the parties raise an actual dispute regarding the proper scope of the[] claims, the court, not the jury, must resolve that dispute."  *O2 Micro Int'l Ltd. v. Beyond Innovation Tech. Co., Ltd.*, 521 F.3d 1351, 1360 (Fed. Cir. 2008).  It is not appropriate for Bosch to request that the Court decline to construe disputed terms, nor is it appropriate for Bosch to simply request a "plain and ordinary meaning" construction, without providing any guidance as to what the alleged "plain and ordinary meaning" might be.  *See Liebel-Flarsheim Co. v. Medrad Inc.*, No. 04-607, 2006 WL 335846, at *6 (S.D. Ohio Feb. 14, 2006) (criticizing patentee who failed to provide specific proposed constructions and instead insisted that "plain meaning" of disputed terms should apply).

Bosch's Supplemental Opening Claim Construction Brief (D.E. 84) ("Bosch Opening Br.") fails to provide claim constructions sufficient to instruct one of ordinary skill in the art on the metes and bounds of the patent claims at issue.  In contrast, ADM has provided claim constructions that are supported by evidence both intrinsic and extrinsic to the asserted U.S. Patents, Nos. 6,836,926 ("the '926 patent"), 6,523,218 ("the '218 patent"), and 6,611,988 ("the '988 patent").  Consequently, this Court should adopt ADM's proposed claim constructions.

1

## II.     THE PROPER CONSTRUCTION OF THE '926 PATENT

### A.     "$I_{zz}$ Is a Moment of Inertia of a Cross Sectional Profile Around a Z-Axis Perpendicular to an Taxis, Which Adapts Along with the Support Element (12), and Perpendicular to a Y-Axis"

| Claim Phrase | |
|---|---|
| $I_{zz}$ is a moment of inertia of a cross sectional profile around a z-axis perpendicular to an taxis, which adapts along with the support element (12), and perpendicular to a y-axis | |
| **Bosch's Proposed Construction** | **ADM's Proposed Construction** |
| $I_{zz}$ is a moment of inertia of a cross sectional profile around a z-axis perpendicular to an s-axis which adapts along with the support element, and perpendicular to a y-axis | $I_{zz}$ is the moment of inertia of the cross sectional profile around the z-axis, wherein the z-axis is perpendicular to 1) the s-axis, which adapts along with the support element and 2) the y-axis, and wherein the orientation of the z-axis and the orientation of the y-axis are shown[1] in Figure 4 and Figure 5 |

As shown in the chart above, ADM and Bosch agree that "taxis" means "s-axis." Additionally, ADM and Bosch agree that 1) $I_{zz}$ is the moment of inertia of the cross sectional profile around the z-axis; 2) the z-axis is perpendicular to the s-axis, which adapts along with the support element; and 3) the z-axis is perpendicular to the y-axis.  What the parties do not agree on are the directions of the z-axis and the y-axis:

- Bosch provides no construction for the directions or orientations of the z-axis and the y-axis, thus proposing that the axes can have any directions.

- ADM proposes that the z-axis and the y-axis are oriented as they are depicted in the '926 patent specification, which gives meaning to the claim term and is the way a person of ordinary skill in the art would understand the axes to be oriented.

ADM's proposed construction does not, as Bosch alleges, "impermissibly [or] "unnecessarily import limitations from the figures and specification."  Bosch Opening Br. at 11.  Rather, Bosch's construction ignores the fundamental rule that "claims '***must*** be read in view of the specification, of which they are a part.'"  *Phillips v. AWH Corp.*, 415 F.3d 1303, 1315 (Fed. Cir. 2005) (citation omitted and emphasis added).  Indeed, Bosch itself relies on the specifications of its patents to support several of its proposed claim constructions.  *See, e.g.*, Bosch Opening Br. at 6–8, 11.

---

[1]  ADM's proposed construction for this claim term previously contained a typographical error; specifically, it contained the word "show" rather than "shown."

1  Moreover, in this situation, a person of ordinary skill in the art would have to consult the

2  specification in order to understand the claim language "z-axis perpendicular to the s-axis, which

3  adapts along with the support element (12), and perpendicular to a y-axis," because the directions or

4  orientations of the z-axis and y-axis are not clear from the claim language alone.

5       The only depictions of the z- and y-axes in the '926 patent specification appear in Figures 3,

6  4, and 5:



15       As discussed in ADM's opening brief, each of these figures demonstrates that:  a) the **z-axis**

16  perpendicular to the **y-axis**; b) the **z-axis** is the axis along which the width of the **support element** is

17  measured; and c) the **y-axis** is the axis along which the thickness of the **support element** is

18  measured.  *See* Defendants' Opening Claim Construction Brief Regarding the '926, '218, and '988

19  Patents ("ADM Opening Br.") at 5–6.  These orientations of the axes are corroborated by the

20  description of Figure 4 in the specification.  *See id.* at 6 (citing ADM Opening Br., Ex. 6 ('926

21  patent) at 5:43–47).  Thus, a person of ordinary skill in the art, unclear on the directions of the z-axis

22  and y-axis based on the claim language alone, and reading the claims in view of the specification,

23  would understand that the directions of the z-axis and y-axis to be the particular directions shown in

24  Figures 3, 4, and 5.

25       The situation here is similar to *Rolls-Royce, PLC v. United Techs. Corp.*  In *Rolls-Royce*, that

26  case, the Federal Circuit was presented with the claim term "translated forward," but "the claim

27  language d[id] not designate a clear 'forward' direction."  *Rolls-Royce, PLC v. United Techs. Corp.*,

28  603 F.3d 1325, 1330–31 (Fed. Cir. 2010).  As a result, "[t]he district court found that one of ordinary

skill in the art would necessarily have consulted the specification to learn the meaning of 'translated forward.'" *Id.* at 1331.  The Federal Circuit agreed it was necessary to consult the specification, which provided only one direction for the claim term "forward," explaining:

> As the claim language does not clearly state the directional tilt of the outer region, this court as well consults the specification.  Based on that source, this court construes "translated forward" to mean "moved forward toward the axial direction."  The specification discusses translation forward only with reference to the axial direction, which is parallel to the rotational axis of the fan and engine.

*Id.*  Similarly, here, the directions of the z-axis and y-axis are not clear based on the claim language alone, but the specification of the '926 patent indicates that the direction of the z-axis is the direction in which the support element width is measured, and the direction of the y-axis is the direction in which the support element thickness is measured, as depicted in Figures 4 and 5.

Bosch's construction ignores the fact that the directions of the z-axis and the y-axis are not clear from the claim words alone, and by declining to identify any particular orientations for the z-axis and the y-axis, Bosch renders the "z-axis" and the "y-axis" claim language meaningless.  For example, under Bosch's construction, the z-axis and the y-axis could have any of an infinite number of orientations, only three examples of which are depicted in the modified versions of Figure 4 below:



As explained in ADM's opening brief, if, as Bosch proposes, the z- and y-axes could exist in any of an infinite number of directions, it would have been pointless for the inventor to include the z- and y-axes in the claim.  But it is a basic premise of claim construction that "claims are interpreted with an eye toward giving effect to all terms in the claim."  *Bicon, Inc. v. Straumann Co.*, 441 F.3d 945,

950 (Fed. Cir. 2006); *Cat Tech LLC v. TubeMaster, Inc.*, 528 F.3d 871, 885 (Fed. Cir. 2008) (rejecting claim construction that would have resulted in the claim requiring something "pointless").

Moreover, *Acumed LLC v. Stryker Corp.*, cited in Bosch's opening claim construction brief, is inapposite. *Acumed LLC v. Stryker Corp.*, 483 F.3d 800 (Fed. Cir. 2007). In *Acumed*, the Federal Circuit held that it would be improper to construe the term "transverse holes" to mean "perpendicular holes" where the specification only showed the transverse holes to be perpendicular. But the word "transverse" has meaning and significance (*i.e.*, a "transverse hole" is a more specific limitation than a "hole"). *Id.* at 809. Here, in contrast, the z-axis and y-axis claim limitations are meaningless unless they coincide with specific orientations of the axes. In short, *Acumed* held it improper to narrow a meaningful term; it did not hold it improper to define an otherwise meaningless term. In fact, the Federal Circuit has repeatedly held that the court must define such otherwise meaningless terms. *See, e.g.*, *Bicon*, 441 F.3d at 950 ("Allowing a patentee to argue that physical structures and characteristics specifically described in a claim are merely superfluous would render the scope of the patent ambiguous, leaving examiners and the public to guess about which claim language the drafter deems necessary to his claimed invention . . . ."). ADM's construction, which imparts meaning to the z-axis and y-axis claim limitations and avoids rendering them superfluous, based on the way that the axes are described in the specification, should prevail.

**B.    "Two Individual Bars"**

| Claim Term | |
|---|---|
| two individual bars | |
| **Bosch's Proposed Construction** | **ADM's Proposed Construction** |
| no construction necessary; alternatively, if construction is deemed necessary, two bars separated at least in part by a space | two distinct and separate bars |

Bosch argues the claim term "two individual bars" does not need to be construed. Specifically, Bosch claims the language "is clear and can be properly applied by a jury without construction." Bosch Opening Br. at 11. However, "[w]hen the parties raise an actual dispute regarding the proper scope of the[] claims, the court, not the jury, must resolve that dispute."

*O2 Micro*, 521 F.3d at 1360.  To not construe the term "two individual bars" would be improper, because the parties dispute the proper scope of the term "two individual bars":

| Bosch's Proposed Construction | ADM's Proposed Construction |
|---|---|
| no construction necessary; alternatively, if construction is deemed necessary, two bars separated at least in part by a space | two distinct and separate bars |
| **Claim Scope Under Bosch's Proposed Construction** | **Claim Scope Under ADM's Proposed Construction** |
| two wholly separate bars, *or* two bars that are attached but have a large amount of space between them, *or* two bars that are attached but have little space between them, *or* two bars that are attached but have any amount space between them | two distinct and separate bars |

As explained in ADM's opening brief, a person of ordinary skill in the art reading the claim term "two individual bars" in view of the specification would understand the term to mean "two distinct and separate bars."  *See* ADM Opening Br. at 7–8.  First, the plain and ordinary meaning of the word "individual" is "Existing as a distinct entity: SEPARATE."  *Id.* at 7.  Further, the specification clearly depicts two variations of the bars of the support element:

- a single bar, as shown in Figure 4:



Fig. 4

- and two distinct and separate (*i.e.*, individual) bars, as shown in Figure 5:



*Fig.5*

But claim 3 of the '926 patent claims only one of these variations—two distinct and separate bars, as shown in Figure 5.  It is not clear why Bosch cites Figure 5 as support for its proposed construction of "two individual bars."  *See* Bosch Opening Br. at 11–12.  As discussed above, Bosch contends that "two individual bars" means bars that are separate, and also bars that are connected.  But the specification clearly states that in Figure 5, "the support element 12 is divided into ***two separate spring bars*** 42 and 44."  ADM Opening Br., Ex. 6 ('926 patent) at 7:10–11.  Figure 5 supports ADM's construction, not Bosch's construction.

The "Summary of the Invention" section of the '926 patent also indicates that the wiper blade support element may take on different configurations, for example, individual bars disposed laterally next to one another, or alternatively, a "ladder-type" structure:

> Particularly useful cross sectional profiles are rectangular in design and have an essentially constant width and an essentially constant thickness over the length of the wiper blade. ***The support element can also be comprised of individual bars which are disposed laterally next to one another*** or one on top of another and their overall width or their overall thickness are respectively added together to produce an overall width and/or an overall thickness. . . . .

> Particularly ***if more complex cross sectional profiles are chosen for the support element, which vary, for example, over the length of the wiper blade or have a ladder-type structure*** or the like, a favorable wiping quality can nevertheless be achieved if consideration is given to the fact that the lateral deflection angle g does not exceed a magnitude of 0.5° and in particular 0.3° during operation of the wiper blade.

ADM Opening Br., Ex. 6 ('926 patent) at 2:32–54.  Thus, according to the '926 patent there is a difference between a support element comprised of "two individual bars" and a support element that has a "ladder-type" structure—*i.e.*, parallel pieces connected by crossbars or rungs, like the accused wiper blades.  *See* ADM Opening Br. at 9 (showing photograph of ADM's XF4 wiper blade).  In

claiming "two individual bars" in dependent claim 3, the patentee specifically meant two distinct and separate bars, rather than a "ladder-type" structure.

ADM's proposed construction of "two individual bars" is true to the claim language, read in view of the specification, and should be adopted.

## III.   THE PROPER CONSTRUCTION OF THE '218 PATENT

### A.   "The Spoiler Has a Recess Receiving at Least One Retainer"

| Claim Term | |
|:---:|:---:|
| the spoiler has a recess receiving at least one retainer | |
| **Bosch's Proposed Construction** | **ADM's Proposed Construction** |
| no construction necessary | the spoiler has a recess for receiving at least one retainer; the recess is not an aperture or hole, but merely an indentation |

Bosch's opening brief argues that ADM's claim construction adds "unsupported" limitations to the claim term.  Bosch's argument ignores the portions of the prosecution history pertaining to this claim term.  In both the September 25, 2002 Interview Summary and the Reasons for Allowance for the '218 patent, the patent examiner specifically noted that a hole is not considered a recess.  *See* ADM Opening Br., Ex. 10 ('218 patent prosecution history, September 25, 2002 Interview Summary) (discussing that "[the] recess set forth in claim 1 is not an aperture or hole as is shown by [the prior-art reference] Hoyler but merely an indentation"); ADM Opening Br., Ex. 11 ('218 patent prosecution history, Reasons for Allowance) at 4 (a "hole in the wiper blade . . . is not considered to be a recess").  Claim language "must be read consistently with the totality of the patent's applicable prosecution history" (*Biovail Corp. Int'l v. Andrx Pharms., Inc*., 239 F.3d 1297, 1301 (Fed. Cir. 2001)), and yet Bosch fails to acknowledge this key portion of the prosecution history when construing the disputed claim term.  *See also Standard Oil Co. v. Am. Cyanamid Co*., 774 F.2d 448, 452 (Fed. Cir. 1985) ("[T]he prosecution history (or file wrapper) limits the interpretations of claims so as to exclude any interpretation of claims that may have been disclaimed or disavowed during prosecution in order to obtain claim allowance.").

ADM's construction is supported by the '218 patent specification as well as the '218 patent's prosecution history.  As noted in ADM's opening brief, the specification describes the recess as

"groovelike."  *See* ADM Opening Br., Ex. 9 ('218 patent) at 2:9, 4:61.  Further, the inventor saw his claim as relating to spoilers and wiping strips formed from one continuous piece of rubber.  In order for a "recess" to be "integrally formed" into the spoiler, the patent teaches the use of "inconspicuous" indentations into which the retainers can be placed allowing the spoiler to run the entire length of the blade.  *Id.* at 1:37–42.  These descriptions are consistent with ADM's proposed construction that a recess is merely an indentation rather than an aperture or hole.

It is improper for Bosch to advocate for no construction of a disputed claim term in an effort to expand the scope or strength of Bosch's infringement allegations.[2]  *See O2 Micro*, 521 F.3d at 1360; *Symbol Techs., Inc. v. Lemelson Med., Educ. & Research Found., Ltd.*, 301 F. Supp. 2d 1147, 1161 (D. Nev. 2004) ("The role of claim construction is not to limit or broaden the claims, but to define, as a matter of law, the invention that has been patented.") (citing *Netword, LLC. v. Centraal Corp.*, 242 F.3d 1347, 1352 (Fed. Cir. 2001)).  ADM has proposed a meaningful claim construction that is consistent with the '218 patent specification and prosecution history, and this Court should adopt it.

B.    **"A Spoiler Having an Outer Profile"**

| Claim Term | |
|---|---|
| a spoiler having an outer profile | |
| **Bosch's Proposed Construction** | **ADM's Proposed Construction** |
| no construction necessary | a spoiler having an outer surface shaped so as to prevent the wiper blade from lifting away from the window |

Bosch again improperly proposes that the Court ignore the parties' dispute and declines to provide a construction for the disputed claim term "a spoiler having an outer profile."  But the term is not sufficiently clear such that it could be properly applied by a jury without a construction.

Webster's Dictionary defines "profile" to mean, in relevant part, "1a. A side view of an object or structure, esp. of a human head," "b. A representation of an object or structure seen from the side," and "2.  An outline of an object."  Shiels Decl., Ex. 2 (Webster's II New College

---

[2]  Bosch has represented that it will not seek construction of the term "the spoiler has a recess receiving at least one retainer," nor for any other claim terms for which Bosch advocates no construction.  *See* Shiels Decl., Ex. 1 (11/4/11 e-mail from R. Cowell to M. Shiels).

Dictionary (3d ed. 2005)) at 903. Unlike a human head, however, a wiper blade—or wiper blade spoiler—has more than one possible "side" by which to observe an "outer profile." Would one of ordinary skill in the art examine the "outer profile" of the spoiler as viewed from the short side of the spoiler (**denoted in solid red** ——), as viewed from the long side of the spoiler (**denoted in dotted green** ••••), or as viewed from the top of the spoiler (**denoted in dashed blue** — —)?





Bosch's proposal—*i.e.*, no construction—does not answer this question. Under Bosch's reading of the claim term, a person of ordinary skill in the art would be left with no guidance as to which outer profile is claimed.

ADM's construction provides a meaning for this term that is informed by the specification. As explained in ADM's opening brief, the '218 patent specification teaches that a spoiler, or wind repelling strip, may be included on a wiper blade to avert "the tendencies of the wiper blade to lift away from the window at relatively high travel speeds."  ADM Opening Br. at 12; ADM Opening Br., Ex. 9 ('218 patent) at 1:26–29.  The specification further identifies the spoiler's outer profile as an outer surface serving the spoiler's wind-deflecting function. *See id.* at 1:42–46.  Equipped with this information, a person of ordinary skill in the art could properly evaluate the features of the outer profile of the spoiler.  Thus, a spoiler's outer surface should be shaped to permit the spoiler to perform its function, and ADM's construction of this claim term is proper.

C.   **"At Least Approximately Adapted"**

| Claim Term | |
|---|---|
| at least approximately adapted | |
| **Bosch's Proposed Construction** | **ADM's Proposed Construction** |
| no construction necessary | indefinite |

Bosch's argument consists entirely of references to case law vaguely supporting general canons of claim construction, with no proof this claim term is clear and unambiguous or does not need construction.  *Merck & Co., Inc. v. Teva Pharms. USA, Inc.*, 395 F.3d 1364 (Fed. Cir. 2005) does not support Bosch's position.   While the *Merck* court construed "about" to mean "approximately," the opinion specifically noted the Merck patent's use of the term "about" in the specification as measure of approximate dosage.  *Merck*, 395 F.3d at 1371–72 ("[W]e note that other parts of the specification also suggest that 'about' should be given its ordinary meaning of 'approximately.'   The specification *repeatedly describes a range of acceptable dosage amounts*, with the patentee emphasizing that unit dosages will vary.") (emphasis added).  In contrast, the '218 patent specification makes no attempt to define "approximately," nor does it define "at least" or "adapted."

Similarly, in the *Andrew Corp.* case relied upon by Bosch, the court explained terms of approximation must be read in light of the specification, and agreed with the patentee's assertion,

and the district court's conclusion, that given the particular technology at issue, the "claims could not reasonably be expressed more precisely." *Andrew Corp. v. Gabriel Elecs., Inc.*, 847 F.2d 819, 822 (Fed. Cir. 1988). But the technology at issue in *Andrew Corp.* related to the distribution of microwave energy associated with antennas used in long-distance communication networks; the wiper blade technology at issue here is much simpler than that. The disputed claim term could have been written more precisely; as written, it is indefinite.

Bosch also fails to appreciate that while one term of approximation may potentially be understood by a person of ordinary skill in the art, a sequence of terms of approximation significantly increases a claim's ambiguity. *See, e.g.*, *Amgen, Inc. v. Chugai Pharm. Co.* 927 F.2d 1200, 1217 (Fed. Cir. 1991) (finding claim term "at least about 160,000 IU/AU" indefinite); *Synthes (USA) v. Smith & Nephew, Inc.*, 547 F. Supp. 2d 436, 461 (E.D. Pa. 2008) (finding claim term "less than about 2%" insolubly ambiguous and therefore invalid where the specification provided no guidance as to which values qualified as "about 2%"); *Hamilton Products, Inc. v. O'Neill*, 492 F. Supp. 2d 1328, 1339 (M.D. Fla. 2007) (holding claim term "less than approximately 0.8 [inches]" indefinite).

Moreover, even where courts construe terms of approximation, they can do so only when equipped with information about what those terms of approximation mean. *See, e.g.*, *Ortho-McNeil Pharm., Inc. v. Carcao Pharm. Labs., Inc.*, 476 F.3d 1321, 1328 (Fed. Cir. 2007) (finding claim term "about 1:5" to mean 1:3.6–1:7.1); *Messer v. HO Sports Co.*, No. 06-826, 2007 WL 2011210, at *11 (D. Or. July 9, 2007) (finding claim term "approximately one fourth to one fifth" to mean "no less than fifteen percent and no more than 25 percent" and claim term "approximately three fourths to four fifths" to mean "no less than seventy and no more than eighty-five percent"). Bosch does not point to any intrinsic or extrinsic evidence that would support any meaning of the disputed claim term.

In short, Bosch has not identified any evidence to shed light on what the patentee meant by "at least approximately adapted to." Instead, Bosch asks this Court to overlook the inherent ambiguity of this claim term and its lack of clarification from the specification. This claim term is indefinite for failure to comply with 35 U.S.C. § 112, and this Court should hold as such.

### D.     "Recess in the Spoiler Is Groove-Shaped"

| Claim Term | |
| --- | --- |
| recess in the spoiler is groove-shaped | |
| **Bosch's Proposed Construction** | **ADM's Proposed Construction** |
| no construction necessary | recess in the spoiler is groove-shaped and is not an aperture or hole, but merely an indentation |

Bosch's lack of a proposed claim construction fails to address the meaning of this claim term. As discussed in greater detail in Section III.A of this brief, the '218 patent specification describes the recess as "groovelike" (ADM Opening Br., Ex. 9 ('218 patent) at 2:9, 4:61) and "oriented transversely to the length of the wiper strip" (*id.* at 4:10–11), descriptions consistent with a recess that is simply an indentation rather than an aperture or hole.  Bosch disclaimed a broad reading of the word "recess" during prosecution of the '218 patent when, in order to overcome an examiner's rejection, it accepted that the claimed "recess" is "***not an aperture or hole as is shown by [prior art reference] Hoyler but merely an indentation***."  ADM Opening Br., Ex. 9 ('218 patent prosecution history, September 25, 2002 Interview Summary) (emphasis added).  ADM's proposed construction should be adopted.

## IV.     THE PROPER CONSTRUCTION OF THE '988 PATENT

### A.     "Hinge Half"

| Claim Term | |
| --- | --- |
| hinge half | |
| **Bosch's Proposed Construction** | **ADM's Proposed Construction** |
| portion of the coupling part formed by the bearing recess | the one of the two coupling part halves in which the entire bearing recess is formed |

Bosch's proposed construction reads the word "half" out of the claim term entirely.  The term "hinge half" is used repeatedly and consistently throughout the specification of the '988 patent to refer to the ***half*** of the coupling part having the ***hinge*** axis.  *See, e.g.*, ADM Opening Br., Ex. 13 ('988 patent) at 1:51–52, 4:35–37.  The patentee did not use the term "hinge portion" or "hinge region" or "hinge part"; the patentee specifically chose the word "half," which has a particular

meaning that is different than "portion."  Bosch cannot broaden the scope of its claims through claim construction.  *Symbol Techs., Inc.*, 301 F. Supp. 2d at 1161.

Bosch can point to no evidence, intrinsic or extrinsic, to support its construction of "hinge" or "half," let alone to support its full proposed construction of the disputed claim term "hinge half." This Court should adopt ADM's proposed construction, which is supported by both intrinsic and extrinsic evidence.

### B.   "Considerably Shallower"

| Claim Term | |
|---|---|
| considerably shallower | |
| **Bosch's Proposed Construction** | **ADM's Proposed Construction** |
| visibly lower | indefinite |

The words "considerably shallower" purportedly differentiate one end of the wiper blade coupling part from another end of the coupling part.  But the word "considerably," and even the dictionary definition of "considerably," are vague and subjective.  *See* ADM Opening Br. at 17–18. Worse, the specification does not provide any guidance on what constitutes a depth shallow enough to be considered "considerably" shallower.  *See id.*  Bosch's proposed construction of "considerably shallower," as with other constructions proposed by Bosch, fails to impart any useful meaning to the claim term.  Bosch merely swaps "shallower" for "lower" and substitutes one vague adjective ("considerably") for another ("visibly").  But the term "visibly lower" tells a person of ordinary skill in the art nothing about how much lower one portion of the coupling part must be than another portion of the coupling part—visibly lower from what distance, from what angle?

Bosch's opening claim construction brief provides no support or explanation for Bosch's proposed construction other than one statement that the '988 patent specification and figures "show a region of the coupling part as visibly lower than the remainder."  Bosch Opening Br. at 7.  It is not surprising that a feature of an invention is visible in a drawing in the patent; after all, the purpose of a drawing is to demonstrate something in a visible way.  That an element of a claimed invention is visible in a figure in the patent specification does not mean the claim term describing that element should be construed to require that the feature itself be "visible."  Further, "it is well established that

patent drawings do not define the precise proportions of the elements and may not be relied on to show particular sizes if the specification is completely silent on the issue." *Hockerson-Halberstadt, Inc. v. Avia Grp. Int'l, Inc.*, 222 F.3d 951, 956 (Fed. Cir. 2000).  Thus, Bosch's argument based on the drawings in the '988 patent, which are not explicitly made to scale, is "unavailing." *Nystrom v. TREX Co., Inc.*, 424 F.3d 1136, 1149 (Fed. Cir. 2005).  Moreover, the passage from '988 patent specification Bosch cites in its opening brief simply states, "It can be seen especially from FIG. 3 that the coupling part 20 is considerably shallower over a longitudinal portion 50 than in the region of the bearing recess 36."  Bosch Opening Br. at 7; Bosch Opening Br., Ex. B ('988 patent) at 5:12–15.  This language is not helpful in determining what constitutes a "considerably shallower" or a "visibly lower" portion of the coupling part.

C.      **"By Each of Which One Cheek Region Is Formed on One of Two Longitudinal Sides (44) of the Coupling Part"**

| Claim Term | |
|---|---|
| by each of which one cheek region is formed on one of two longitudinal sides (44) of the coupling part | |
| **Bosch's Proposed Construction** | **ADM's Proposed Construction** |
| each side region is formed on one of two longitudinal sides of the coupling part | indefinite |

Bosch's opening brief, yet again, advances a meager single sentence in support of Bosch's proposed claim construction of the disputed claim term, "by each of which one cheek region is formed on one of two longitudinal sides (44) of the coupling part."  Bosch's entire argument is that Bosch's proposed claim construction "stems from" the patent specification, which Bosch claims "describes that a cheek region is formed on each of the two longitudinal sides of the coupling part."  Bosch Opening Br. at 8 (citing Bosch Opening Br., Ex. B ('988 patent) at 4:45–48).

The portion of the specification cited by Bosch states that "one cheek region is disposed on each of the two long sides 44 of the coupling part."  Bosch Opening Br., Ex. B ('988 patent) at 4:45–48.  ADM does not take issue with the portion of the claim term that tracks this language in the specification—*i.e.*, the portion of the claim term that states "cheek region is formed on one of two longitudinal sides (44) of the coupling part."  But the claim term includes another portion.  The

1    entire claim term in dispute is "*by each of which one* cheek region is formed on one of two

2    longitudinal sides (44) of the coupling part."  As explained in ADM's opening brief, the language

3    "by each of which one" is ambiguous.  Standing alone, the language has no meaning, and even if the

4    language is modified—such as by deleting the words "by" and "of which," or by deleting the words

5    "by each of which"—it would be susceptible to at least two different meanings.  *See* ADM Opening

6    Br. at 18–19.  In such a situation, "the district court [i]s not required to guess which meaning was

7    intended in order to make sense out of the patent claim, nor is one of skill in the art."  *CBT Flint*

8    *Partners, LLC v. Return Path, Inc.*, 654 F.3d 1353, 1360 (Fed. Cir. 2011).

9            The fact that "by each of which one," and therefore the full disputed claim term "by each of

10   which one cheek region is formed on one of two longitudinal sides (44) of the coupling part," is

11   ambiguous and indefinite is evidenced by the fact that Bosch's opening brief completely ignores this

12   part of the claim term.  Bosch makes no attempt to explain, make sense out of, or incorporate this

13   language into the proposed construction.  Indeed, Bosch's proposed claim construction simply drops

14   the language "by each of which one."  It is not the Court's responsibility to rewrite indefinite claim

15   language or delete ambiguous portions of claim terms to preserve their validity.  *See Allen Eng'g*

16   *Corp. v. Bartell Indus., Inc.*, 299 F.3d 1336, 1349 (Fed. Cir. 2002).  Rather, the Court should simply

17   find the claim term "by each of which one cheek region is formed on one of two longitudinal sides

18   (44) of the coupling part" indefinite.  *See Halliburton Energy Servs., Inc. v. M-I LLC*, 514 F.3d

19   1244, 1249–50 (Fed. Cir. 2008) (claim term is indefinite where "a skilled artisan could not discern

20   the boundaries of the claim"); *Honeywell Int'l, Inc. v. Int'l Trade Comm'n*, 341 F.3d 1332, 1338

21   (Fed. Cir. 2003) ("If the court determines that a claim is not 'amenable to construction,' then the

22   claim is invalid as indefinite.") (citation omitted).[3]

23   _____

24   [3] In an apparent attempt to justify its failure to articulate cognizable arguments in certain sections of its opening claim
     construction brief, Bosch states multiple times that "ADM has not yet advanced any theory of indefiniteness" for
25   certain claim terms.  *See* Bosch Opening Br. at 5, 7, 8.  The claim construction briefing process was structured in a
     way such that Bosch and ADM filed their opening briefs simultaneously, with each party having the same obligation
26   to present arguments and facts supporting their respective claim constructions.  Bosch has been aware of ADM's
     position that the terms "at least approximately adapted to," "considerably shallower" and "by each of which one cheek
27   region is formed on one of two longitudinal sides (44) of the coupling part" are indefinite since October 25, 2011,
     when ADM and Bosch exchanged their proposed claim constructions.  ADM's "theory" of indefiniteness for all of the
28   claim terms ADM contends are indefinite, including claim terms in the '698, '905 and '607 patents, is the same theory
     of indefiniteness endorsed by the United States Court of Appeals for the Federal Circuit, and therefore is not
     something of which Bosch can reasonably claim ignorance.

### D.   "Near One End of the Coupling Part"

| Claim Term | |
| --- | --- |
| near one end of the coupling part | |
| **Bosch's Proposed Construction** | **ADM's Proposed Construction** |
| no construction necessary; alternatively, if construction is deemed necessary, in the vicinity of one end of the coupling part | close to one longitudinal end of the coupling part and closer to that end than to the other longitudinal end of the coupling part |

This claim term refers to the location of a bearing recess on the wiper blade coupling part. Contrary to Bosch's argument, the term "near one end of the coupling part" is not "clear" and cannot "be properly applied by a jury without construction." As Bosch acknowledges, "[t]he claim language merely states 'near' one end of the coupling part" (Bosch Opening Br. at 9), with no other useful description to help determine what location for the bearing recess would qualify as "near." The term "near one end of the coupling part" is relative and subjective, and requires guidance from the claims and/or the specification. As discussed in ADM's opening brief, based on the claim language, the specification, and simple logic, the bearing recess must be nearer to that one than the other end in order for it to be near just ***one*** end of the coupling part. *See* ADM Opening Br. at 19–20.

ADM's proposed construction is not, as Bosch argues, an improper attempt to limit the claims to an embodiment. One of ordinary skill in the art would consult the specification in order to understand the meaning of "near one end of the coupling part." And all of the depictions of the bearing recess in the coupling part shown in the '988 patent depict the bearing recess closer to one longitudinal end of the coupling part than to the other longitudinal end of the coupling part. The specification also specifically describes "an end region [of the coupling part] provided with the bearing recess," which is an end that is different than the other end of the coupling part. *See* ADM Opening Br. at 20. Thus, a person of ordinary skill in the art properly reading the patent claims in view of the specification would understand "near one end of the coupling part" to mean "close to one longitudinal end of the coupling part and closer to that end than to the other longitudinal end of the coupling part."

1    Like Bosch's proposed construction of "considerably shallower," Bosch's alternative

2    proposed construction for "near one end of the coupling part" ("in the vicinity of one end of the

3    coupling part") is no more helpful than the claim language itself.  Bosch merely swaps the claim

4    word "near" for the virtual synonym "in the vicinity of."  This does nothing to assist a person of

5    ordinary skill in the art in determining locations for the bearing recess on the coupling part that

6    would fall within or outside the scope of the claim.  Under Bosch's proposal that the claim term

7    "near one end of the coupling part" not be construed, or under Bosch's proposed construction "in the

8    vicinity of one end of the coupling part," whether or not a windshield wiper blade product infringes

9    claim 11 of the '988 patent depends upon whether or not a person believes, in their subjective

10   estimation, that the location of the bearing recess is "near" one end of the coupling part.  "[W]hen

11   faced with a purely subjective phrase . . . a court **must** determine whether the patent's specification

12   supplies some standard for measuring the scope of the phrase."  *Datamize, LLC v. Plumtree*

13   *Software, Inc.*, 417 F.3d 1342, 1351 (Fed. Cir. 2005) (emphasis added).

14   Because they require subjective judgment, both Bosch's proposed non-construction and

15   Bosch's proposed construction of the term "near one end of the coupling part" contradict the public

16   notice purpose of patent claims and claim construction.  *See Halliburton Energy Servs., Inc.*, 514

17   F.3d at 1255 (emphasizing that claim language should "provide a clear-cut indication of the scope of

18   subject matter embraced by the claim").  ADM's proposed construction, on the other hand, captures

19   the meaning of the term "near one end of the coupling part" as informed by the patent specification,

20   and therefore ADM's construction is consistent with the public notice function of patent claims.  *See*

21   *id.* at 1350 (finding that "[a] purely subjective construction of 'aesthetically pleasing' would not

22   notify the public of the patentee's right to exclude since the meaning of the claim language would

23   depend on the unpredictable vagaries of any one person's opinion"); *PSC Computer Prods., Inc. v.*

24   *Foxconn Int'l, Inc.*, 355 F.3d 1353, 1360 (Fed. Cir. 2004) (explaining the importance of "both what

25   has been disclosed and what has been claimed" in "tell[ing] the public which products or processes

26   would infringe the patent and which would not").  ADM's is the correct claim construction.

27   **V.    CONCLUSION**

28   For the reasons set forth above, and in ADM's Opening Claim Construction Brief Regarding

18

the '926, '218, and '988 Patents (Docket No. 89), ADM respectfully requests this Court adopt ADM's proposed claim constructions.


DATED:  December 16, 2011                    By:  _/s/  Craig D. Leavell_____

                                             Michael D. Rounds, Nevada Bar No. 4734
                                             Adam K. Yowell, Nevada Bar No. 11748
                                             WATSON ROUNDS
                                             5371 Kietzke Lane
                                             Reno, Nevada 89511-2083
                                             Telephone:  (775) 324-4100
                                             Facsimile:   (775) 333-8171
                                             E-Mail: mrounds@watsonrounds.com
                                             E-Mail: ayowell@watsonrounds.com

                                             Russell E. Levine, P.C., *pro hac vice*
                                             Craig D. Leavell, *pro hac vice*
                                             Bryce A. Budin, *pro hac vice*
                                             Matthew J. Shiels, *pro hac vice*
                                             KIRKLAND & ELLIS LLP
                                             300 North LaSalle Drive
                                             Chicago, Illinois 60654
                                             Telephone:  (312) 862-2000
                                             Facsimile:   (312) 862-2200
                                             E-Mail: russell.levine@kirkland.com
                                             E-Mail: craig.leavell@kirkland.com
                                             E-Mail: bryce.budin@kirkland.com
                                             E-Mail: matthew.shiels@kirkland.com

                                             *Attorneys for Defendants*

## CERTIFICATE OF ELECTRONIC SERVICE

I hereby certify that on December 16, 2011, I caused the foregoing DEFENDANTS' RESPONSE CLAIM CONSTRUCTION BRIEF REGARDING THE '926, '218 AND '988 PATENTS with the Clerk of the Court for the District of Nevada using the ECF System, which will send notification to the following registered participants of the ECF system as listed on the Court's Notice of Electronic Filing:

> Richard M. Cowell
> Jeffrey S. Ginsberg
> Mark Hannemann
> Michael J. Lennon
> Robert W. Hernquist
> Todd M. Touton
> Maria DaVee

I also certify that I have mailed by United States Postal Service the paper copy to the following non-participants in the ECF System:

> None.

By: ___/s/ Craig D. Leavell___
> Craig D. Leavell