Todd M. Touton
Nevada Bar No. 1744
Marla DaVee
Nevada Bar No. 11098
LIONEL SAWYER & COLLINS
1700 Bank of America Plaza
300 South Fourth Street
Las Vegas, Nevada 89101
(702) 383-8888 (Telephone)
(702) 383-8845 (Fax)

Mark A. Hannemann, *admitted pro hac vice*
Jeffrey S. Ginsberg, *admitted pro hac vice*
Richard M. Cowell, *admitted pro hac vice*
KENYON & KENYON LLP
One Broadway
New York, NY 10004
(212) 425-7200 (Telephone)

*Attorneys for Robert Bosch LLC*

## UNITED STATES DISTRICT COURT
## DISTRICT OF NEVADA

| | |
|---|---|
| ROBERT BOSCH LLC,<br><br>     Plaintiff,<br><br>     v.<br><br>ADM 21 CO., LTD.; ADM USA; and<br>ADM NORTH AMERICA,<br><br>     Defendants. | Case No.  2:10-cv-01930-RLH-RJJ |

## PLAINTIFF ROBERT BOSCH LLC'S RESPONSIVE
## SUPPLEMENTAL CLAIM CONSTRUCTION BRIEF

# TABLE OF CONTENTS

ARGUMENT .................................................................................................................... 1

A. Claim Terms From The '218 Patent ................................................................ 2

1. "the spoiler has a recess receiving at least one retainer" ...................... 2

2. "a spoiler having an outer profile" ........................................................ 5

3. "at least approximately adapted" .......................................................... 5

4. "recess in the spoiler is groove-shaped" .............................................. 9

B. Claim Terms From The '988 Patent ................................................................ 9

1. "hinge half" ............................................................................................ 9

2. "considerably shallower" ...................................................................... 11

3. "by each of which one cheek region is formed on one of two longitudinal sides (44) of the coupling part" .............................................................. 12

4. "near one end of the coupling part" ...................................................... 14

C. Claim Terms From The '926 Patent ................................................................ 16

1. "$I_{zz}$ is a moment of inertia of a cross sectional profile around a z-axis perpendicular to an taxis, which adapts along with the support element (12), and perpendicular to a y-axis" .................................................... 16

2. "two individual bars" ............................................................................ 17

CONCLUSION ................................................................................................................ 19

1

## TABLE OF AUTHORITIES

2

**CASES**

3

*Acumed LLC v. Stryker Corp.*,
    483 F.3d 800 (Fed. Cir. 2007).................................................................................... 2, 14

4

5

*AIA Eng'g Ltd. v. Magotteaux Int'l S/A*,
    657 F.3d 1264 (Fed. Cir. 2011)...................................................................................... 18

6

*Anderson v. Int'l Eng'g & Mfg., Inc.*,
    160 F.3d 1345 (Fed. Cir. 1998)...................................................................................... 10

7

8

*Andrew Corp. v. Gabriel Elec., Inc.*,
    847 F.2d 819 (Fed. Cir. 1988).......................................................................................... 6

9

*Blackboard, Inc. v. Desire2Learn, Inc.*,
    574 F.3d 1371 (Fed. Cir. 2009)........................................................................................ 4

10

*Cent. Admixture Pharmacy Servs., Inc. v. Adv. Cardiac Solutions, P.C.*,
    482 F.3d 1347 (Fed. Cir. 2007)........................................................................................ 6

11

12

*Comark Commc's, Inc. v. Harris Corp.*,
    156 F.3d 1182 (Fed. Cir. 1998).................................................................................... 2, 14

13

*Exxon Research & Eng'g Co. v. United States*,
    265 F.3d 1371 (Fed. Cir. 2001)...................................................................................... 13

14

15

*Freedom Wireless, Inc. v. Alltel  Corp.*,
    Nos. 2:06cv504, 2:06cv505, 2:07cv151, 2:07cv152,
    2008 WL 4647270 (E.D. Tex. Oct. 17, 2008) .............................................................. 13

16

17

*General Mills, Inc. v. Hunt-Wesson, Inc.*,
    103 F.3d 978 (Fed. Cir. 1997)................................................................................... 15, 18

18

*Haemonetics Corp. v. Baxter Healthcare Corp.*,
    607 F.3d 776 (Fed. Cir. 2010)..................................................................................... 1, 9

19

20

*Halo Elecs., Inc. v. Pulse Eng'g, Inc.*,
    721 F. Supp. 2d 989 (D. Nev. 2010).................................................................. 5, 15, 18

21

22

*Hamilton Prods., Inc. v. O'Neill*,
    492 F. Supp. 2d 1328 (M.D. Fla. 2007)........................................................................... 8

23

*Hoffer v. Microsoft Corp.*,
    405 F.3d 1326 (Fed. Cir. 2005).................................................................................. 13, 14

24

25

*Honeywell Int'l, Inc. v. United States*,
    609 F.3d 1292 (Fed. Cir. 2010).................................................................................... 1, 9

26

*Amgen, Inc. v. Chugai Pharm. Co.*,
    927 F.2d 1200 (Fed. Cir. 1991)........................................................................................ 8

27

28

*Int'l Visual Corp. v. Crown Metal Mfg. Co.*,

991 F.2d 768 (Fed. Cir. 1993)................................................................................................ 18

*Kimberly-Clark Worldwide, Inc. v. First Quality Baby Prods., LLC,*
   No. 1:cv-09-1685, 2011 WL 871479 (M.D. Pa. Mar. 1, 2011) ................................ 7

*Kimberly-Clark Worldwide, Inc. v. First Quality Baby Prods., LLC,*
   No. 1:cv-09-1685, 2011 WL 2632352 (M.D. Pa. July 5, 2011) ............................... 8

*Merck & Co., Inc. v. Teva Pharms. USA, Inc.,*
   395 F.3d 1364 (Fed. Cir. 2005)................................................................................... 6

*Mondis Tech., Ltd. v. Hon Hai Precision Indus. Co.,*
   No. 2:07-cv-565, 2011 U.S. Dist. LEXIS 7140 (E.D. Tex. Jan. 24, 2011) ............... 7

*Oakley, Inc. v. Sunglass Hut Int'l,*
   316 F.3d 1331 (Fed. Cir. 2003)............................................................................. 6, 11

*Playtex Prods., Inc. v. Procter & Gamble Co.,*
   400 F.3d 901 (Fed. Cir. 2005)........................................................................ 3, 15, 17

*Power-One, Inc. v. Artesyn Techs., Inc.,*
   599 F.3d 1343 (Fed. Cir. 2010)................................................................................... 7

*Pulse Eng'g, Inc. v. Mascon, Inc.,*
   No. 08-cv-0595, 2009 U.S. Dist. LEXIS 26885 (S.D. Cal. Mar. 9, 2009) .............. 7, 9

*Quantum Corp. v. Rodime, PLC,*
   65 F.3d 1577 (Fed. Cir. 1995)..................................................................................... 7

*Shuffle Master, Inc. v. Awada,*
   No. 2:04-cv-0980, 2007 WL 4166109 (D. Nev. Nov. 16, 2007).......................... 13, 14

*Silicon Graphics, Inc. v. ATI Techs., Inc.,*
   607 F.3d 784 (Fed. Cir. 2010)........................................................................ 5, 15, 18

*Source Search Techs., LLC v. Lending Tree, LLC,*
   588 F.3d 1063 (Fed. Cir. 2009)................................................................................... 1

*SRI Int'l v. Matsushita Elec. Corp. of Am.,*
   775 F.2d 1107 (Fed. Cir. 1985)............................................................................. 4, 14

*Synthes (USA) v. Smith & Nephew, Inc.,*
   547 F. Supp. 2d 436 (E.D. Pa. 2008) .......................................................................... 8

*U.S. Surgical Corp. v. Ethicon, Inc.,*
   103 F.3d 1554 (Fed. Cir. 1997)................................................................................... 5

*W. Union Co. v. Moneygram Int'l, Inc.,*
   No. A-07-CV-372, 2010 U.S. Dist. LEXIS 132700 (W.D. Tex. Aug. 21, 2010)...................... 7

*Wellman, Inc. v. Eastman Chem. Co.,*
   642 F.3d 1355 (Fed. Cir. 2011)................................................................ 1, 8, 12, 14

1   Plaintiff Robert Bosch LLC ("Bosch") submits this Supplemental Claim Construction

2   brief in response to defendants ADM21 Co. Ltd. and ADM21 Co. (North America) Ltd.

3   (collectively, "ADM")'s Opening Claim Construction Brief Regarding The '926, '218 and '988

4   Patents (D.I. 90 ("ADM Br.")) and in further support of its Supplemental Opening Claim

5   Construction Brief (D.I. 84 ("Bosch Br." or "Opening Brief")) of proposed claim constructions

6   with respect to United States Patent Nos. 6,523,218 ("the '218 patent"), 6,611,988 ("the '988

7   patent"), and 6,836,926 ("the '926 patent").[1]

8   **ARGUMENT**

9   ADM argues that many of the claim terms discussed are indefinite.  ADM's positions

10   lack merit.  Indeed, to prove a claim term indefinite, and thus prove the claim invalid, an accused

11   infringer must prove by clear and convincing evidence that the claim term is insolubly

12   ambiguous.  *See Haemonetics Corp. v. Baxter Healthcare Corp.*, 607 F.3d 776, 783 (Fed. Cir.

13   2010); *Source Search Techs., LLC v. Lending Tree, LLC*, 588 F.3d 1063, 1076 (Fed. Cir. 2009).

14   "Thus, [a]n accused infringer must . . . demonstrate by clear and convincing evidence that one of

15   ordinary skill in the relevant art could not discern the boundaries of the claim based on the claim

16   language, the specification, the prosecution history, and the knowledge in the relevant art."

17   *Wellman, Inc. v. Eastman Chem. Co.*, 642 F.3d 1355, 1366 (Fed. Cir. 2011) (quoting

18   *Haemonetics Corp*, 607 F.3d at 783 (alterations in original)).  "If the meaning of the claim is

19   discernible, even though the task may be formidable and the conclusion may be one over which

20   reasonable persons will disagree, we have held the claim sufficiently clear to avoid invalidity on

21   indefiniteness grounds." *Honeywell Int'l, Inc. v. United States*, 609 F.3d 1292, 1301 (Fed. Cir.

22   2010) (citation omitted).

23   As discussed below, all of the claim terms are readily amenable to construction—indeed,

24   many of the terms are easily understandable and can be applied by the jury without

25

26

27   [1]   Citations to Ex. A–I refer to the exhibits to Bosch's Supplemental Opening Claim

28   Construction Brief (D.I. 84); citations  to Ex. J–M refer to the exhibits submitted with this brief.

1   construction—and ADM has failed to produce the clear and convincing evidence needed to meet

2   the "exacting standard" required to prove them indefinite.[2]

3

4       A.    **Claim Terms From The '218 Patent**

5           1.    **"the spoiler has a recess receiving at least one retainer"**

6

| Claim | Bosch's Proposed Construction | ADM's Proposed Construction |
|-------|-------------------------------|------------------------------|
| 1 | No construction is necessary. | the spoiler has a recess receiving at least one retainer; the recess is not an aperture or hole, but merely an indentation |

10      ADM argues that the term "recess" must be negatively defined as "not an aperture or

11  hole, but merely an indentation."   ADM's construction relies on a passage in the specification

12  that states that "it is *possible* for this spoiler to be formed integrally and economically onto the

13  wiper strip" (ADM. Br. at 10 (citing the '218 patent (Ex. A) at 1:37–42 (emphasis added))).   In

14  support of its arguments ADM relies on out-of-context portions of the specification and an

15  improper reading of the prosecution history.

16      ADM first argues that the specification's description of, and figures depicting, preferred

17  embodiments, justifies limiting "recess" (ADM Br. at 9–10).   ADM's position runs contrary to

18  the case law.  *See Comark Commc'ns, Inc. v. Harris Corp.*, 156 F.3d 1182, 1187 (Fed. Cir. 1998)

19  ("the language that Harris [the defendant] argues should limit claim 1 is clearly found in the . . .

20  patent's description of the preferred embodiment. It is precisely against this type of claim

21  construction that our prior case law counsels."); *see also Acumed LLC v. Stryker Corp.*, 483 F.3d

22  800, 807–08 (Fed. Cir. 2007) (rejecting defendant's proposed construction as "an improper

23  attempt to read a feature of the preferred embodiment into the claims as a limitation").

24  _____

[2]      An accused infringer's argument that a claim is indefinite does not prevent the court from
25  holding that the term can be applied by the jury without construction. *E.g.*, *Pulse Eng'g, Inc. v.
     Mascon, Inc.*, No. 08-cv-0595, 2009 U.S. Dist. LEXIS 26885, at *12–18 (S.D. Cal. Mar. 9,
26  2009) (holding claim terms not indefinite and not requiring construction); *Mondis Tech., Ltd. v.
     Hon Hai Precision Indus. Co.*, No. 2:07-cv-565, 2011 U.S. Dist. LEXIS 7140, at *83–84 (E.D.
27  Tex. Jan. 24, 2011) (claim term was not indefinite and did not require construction); *W. Union
     Co. v. Moneygram Int'l, Inc.*, No. A-07-CA-372, 2010 U.S. Dist. LEXIS 132700, at *11–12
28  (W.D. Tex. Aug. 21, 2010 (same).

Moreover, the language from the specification on which ADM relies does not support limiting the definition of recess. For example, ADM does not explain how the fact that the recesses are sometimes described as being "groovelike" requires them to be indentations in the spoiler, (*see* ADM Br. at 9–10 (citing the '218 patent (Ex. A) at 2:9, 4:61)). In addition, the description of the recesses as "oriented transversely to the length of the wiper strip" similarly does not imply or require that the recesses be indentations (*see id.* (citing the '218 patent (Ex. A) at 4:10–11)). Indeed, the words "indentation," "hole" and "aperture" are not found anywhere in the '218 patent's specification. And, while the invention does allow for the spoiler to be formed integrally with the wiper strip, claim 1 includes no such limitation. Figure 7, cited by ADM, similarly does not evince any disclaimer of scope. *Playtex Prods., Inc. v. Procter & Gamble Co.*, 400 F.3d 901, 907–08 (Fed. Cir. 2005) (rejecting district court's claim construction because "By its reliance on the figures, the district court improperly limited claim 1 to a preferred embodiment")*; see also MBO Labs., Inc. v. Becton, Dickinson & Co.*, 474 F.3d 1323, 1333–34 (Fed. Cir. 2007) ("patent coverage is not necessarily limited to inventions that look like the ones in the figures. To hold otherwise would be to import limitations onto the claim from the specification, which is fraught with 'danger.' Limiting claims from the specification is generally not permitted absent a clear disclosure that the patentee intended the claims to be limited as shown." (internal citations omitted)).

ADM also cites to an interview summary in the prosecution history of the '218 patent, in which the German Hoyler reference was discussed, to support its limiting construction (ADM Br. at 11).[3] ADM is misguided. In the summary, the Examiner noted that the recess set forth in claim 1 was not "an aperture or hole ***as is shown by Hoyler***." Ex K, Interview Summary, at BOS_LLC0812962 (emphasis added). The "aperture or hole" as shown by Hoyler is located in the upper portion of a wiper blade, *i.e*., it is a void surrounded on all sides by the wiper blade; it is not an aperture or hole in a spoiler. Fig. B-B from Hoyler shows a "retainer," highlighted in blue, passing through this hole, highlighted in red:

---

[3]     Ex. J, German Patent DE 1 028 896.



*Schnitt B-B*

(Ex. J, DE 1 028 896 at Fig. B-B).  The Examiner also noted that "the upper portion of the blade of Hoyler *can not fairly be considered to be a spoiler* in the sense of an airfoil employed to decrease lift" (Ex. L, Examiner's Amendment and Reasons for Allowance, at BOS_LLC0813070 (emphasis added)).  Indeed, the wiper blade described in Hoyler is a conventional bracketed blade, not a flat blade with a spoiler as described and claimed in the '218 patent.

The Examiner's statement thus says nothing about the definition of a recess in reference to a spoiler nor does it provide any support for ADM's construction that the recess is "merely an indentation." Accordingly, ADM's construction should be rejected.  *See Blackboard, Inc. v. Desire2Learn, Inc.*, 574 F.3d 1371, 1377 (Fed. Cir. 2009) (holding that an Examiner's statements that do not bear on a disputed term are irrelevant).

In urging that the Court adopt its construction, ADM discusses the purported differences between its accused products and the claims of the '218 patent making clear that the motivation behind ADM's position is to set up a non-infringement defense at trial.  Such comparison is impermissible at the claim construction stage.  *See SRI Int'l v. Matsushita Elec. Corp. of Am.*, 775 F.2d 1107, 1118 (Fed. Cir. 1985) (*en banc*) ("It is only *after* the claims have been *construed without reference to the accused device* that the claims, as so construed, are applied to the accused device to determine infringement." (emphasis in original)).

Since ADM's construction would import limitations from preferred embodiments in the specification and figures, and relies on irrelevant sections of the prosecution history, it should be

discarded.  As ADM does not dispute that the term is otherwise understandable by the jury without construction, the Court should decline to construe it.  *E.g., Silicon Graphics, Inc. v. ATI Techs., Inc.*, 607 F.3d 784, 798 (Fed. Cir. 2010) (affirming district court's choice to not construe term and apply its ordinary meaning); *Halo Elecs., Inc. v. Pulse Eng'g, Inc.*, 721 F. Supp. 2d 989, 1004 (D. Nev. 2010) (holding that a claim term should be given its ordinary meaning and did not require construction); *see also U.S. Surgical Corp. v. Ethicon, Inc.*, 103 F.3d 1554, 1568 (Fed. Cir. 1997) (claim construction "is not an obligatory exercise in redundancy").

### 2.      "a spoiler having an outer profile"

| Claim | Bosch's Proposed Construction | ADM's Proposed Construction |
|-------|-------------------------------|------------------------------|
| 1 | No construction is necessary | a spoiler having an outer surface shaped so as to prevent the wiper blade from lifting away from the window |

ADM seeks to define the simple term "profile" as "surface shaped so as to prevent the wiper blade from lifting away from the window" (ADM Br. at 12).  The sections of the specification cited by ADM do not support its proposed construction.  Column 1, lines 26–29 of the '218 patent describes the prior art and does not discuss the shape of a spoiler's outer profile.  Similarly, column 1, lines 42–46 does not impose a requirement on the shape of the spoiler's profile, but merely reiterates claim 1's requirement that at least one retainer be at least approximately adapted to that shape.

Since ADM's construction would import limitations from inapplicable sections of the specification, it should be rejected.  Moreover, as the term is readily understandable and able to be applied by the jury without construction, the Court should decline to construe this term.  *Silicon Graphics*, 607 F.3d at 798; *Halo Elecs.*, 721 F. Supp. 2d at 1004.

### 3.      "at least approximately adapted"

| Claim | Bosch's Proposed Construction | ADM's Proposed Construction |
|-------|-------------------------------|------------------------------|
| 1 | No construction is necessary | indefinite |

1

2          As noted in Bosch's Opening Brief, (*see* D.I. 84 at 5–6), the term "at least approximately

3   adapted" is clear and can be applied by the jury without construction.  Indeed, the Federal Circuit

4   has repeatedly found approximation language to not be indefinite and, in many cases, has used

5   the word "approximately" as a construction.  *See, e.g., Merck & Co., Inc. v. Teva Pharms. USA,*

6   *Inc.*, 395 F.3d 1364, 1369 (Fed. Cir. 2005)  (holding that "about" "should be given its ordinary

7   meaning of 'approximately'"); *Andrew Corp. v. Gabriel Elec., Inc.*, 847 F.2d 819, 822 (Fed. Cir.

8   1988) (holding that the term "closely approximate" was not indefinite).  Moreover, it is not

9   necessary for a patentee to "define his invention with mathematical precision in order to comply

10   with the definiteness requirement."  *Oakley, Inc. v. Sunglass Hut Int'l*, 316 F.3d 1331, 1341

11   (Fed. Cir. 2003) (citing *In re Marosi*, 710 F.2d 799, 802-03 (Fed. Cir. 1983)).  ADM has

12   provided no evidence that one of skill in the art would not understand the meaning of "at least

13   approximately adapted" and thus has failed to prove the term indefinite.  Indeed, Bosch's expert,

14   Dr. Steven Dubowsky, found that the term, read in light of the surrounding claim language and

15   the specification, is easily understandable and requires no construction (Dubowsky Dec. at ¶¶ 5–

16   8)[4].

17          ADM argues that the claim term is indefinite because it uses what ADM describes as

18   "three serial terms of approximation" (ADM Br. at 13).  ADM's  argument lacks merit.  First,

19   "adapted" is a not a term of approximation.  *E.g.*, *Cent. Admixture Pharmacy Servs., Inc. v. Adv.*

20   *Cardiac Solutions, P.C.*, 482 F.3d 1347, 1356 (Fed. Cir. 2007) (holding that phrase "adapted to

21   be diluted" did not possess "any significant ambiguity, much less intractable ambiguity making

22   the claim 'not amenable to construction,' which is the requirement to demonstrate

23   indefiniteness" (citation omitted)).  The Federal Circuit has held that "Claims using relative

24   terms such as 'near' or 'adapted to' are insolubly ambiguous only if they provide no guidance to

25   those skilled in the art as to the scope of that requirement."  *Power-One, Inc. v. Artesyn Techs.,*

26

27   _____

    [4]      Citations to "Dubowsky Dec." refer to the declaration of Dr. Steven Dubowsky, filed

28   contemporaneously herewith.

*Inc.*, 599 F.3d 1343, 1348 (Fed. Cir. 2010).  As noted below, the specification of the '218 patent provides guidance as to the meaning of the term "adapted" (*e.g.*, Ex. A at 4:18–25).

Second, the use of "at least" in this context is not ambiguous.  The use of "at least" is to set a minimum level.  *E.g.*, *Quantum Corp. v. Rodime, PLC*, 65 F.3d 1577, 1581 (Fed. Cir. 1995).  Obviously, the maximum level of adaptation here would be a retainer that was exactly adapted to the spoiler's outer profile.

Finally, as noted above, the word "approximately" is not ambiguous.  Read in context, the term simply means what it says, that the retainer is of similar shape to the spoiler.  There is no need for a construction here, as the language of the claim itself is perfectly understandable. *E.g.*, *Pulse Eng'g, Inc. v. Mascon, Inc.*, No. 08-cv-0595, 2009 U.S. Dist. LEXIS 26885, at *12– 18 (S.D. Cal. Mar. 9, 2009) (holding claim terms not indefinite and not requiring construction); *Mondis Tech., Ltd. v. Hon Hai Precision Indus. Co.*, No. 2:07-cv-565, 2011 U.S. Dist. LEXIS 7140, at *83–84 (E.D. Tex. Jan. 24, 2011) (claim term was not indefinite and did not require construction); *W. Union Co. v. Moneygram Int'l, Inc.*, No. A-07-CV-372, 2010 U.S. Dist. LEXIS 132700, at *11–12 (W.D. Tex. Aug. 21, 2010) (same).

Indeed, the specification makes clear that the retainer is "at least approximately adapted" to the shape of the spoiler by having a similar cross-section.

> In the region of the spoiler 23, the **retainers 36-40 have a cross section that substantially coincides with the cross section of the spoiler** 23. Each retainer is accordingly also provided with a leading-edge throat 44 against which the relative wind 25 blows. **Seen in cross section, accordingly, each retainer 36-40 has a profile, in the region of the spoiler, that is at least approximately adapted to the profile of the spoiler**.

(Ex. A at 4:18–25) (emphasis added).  The term does not require construction.

The cases cited by ADM do not compel a different conclusion.  For example, the court in *Kimberly-Clark Worldwide, Inc. v. First Quality Baby Prods., LLC*,[5] while originally finding the claim terms using the language "at least about" to be indefinite, eventually granted reconsideration and held that the term was not indefinite.  *Kimberly-Clark Worldwide, Inc. v.*

---

[5] No. 1:cv-09-168, 2011 WL 871479 (M.D. Pa. Mar. 1, 2011).

1   *First Quality Baby Prods., LLC*, No. 1:cv-09-1685, 2011 WL 2632352, at *1-2 (M.D. Pa. July 5,

2   2011) ("Thus, we will construe 'at least about' found in claims 1, 8, 9, 20, and 41 to mean 'equal

3   to or greater than approximately.'").[6]  In *Amgen, Inc. v. Chugai Pharm. Co.*, 927 F.2d 1200,

4   1217–18 (Fed. Cir. 1991), the court specifically noted that its indefiniteness holding concerning

5   the term "about 160,000" was based on the existence of "close prior art" that had been

6   specifically distinguished during prosecution.  The court also specifically noted that its holding

7   was based on the facts of the case and cautioned "that our holding that the term 'about' renders

8   indefinite claims 4 and 6 should not be understood as ruling out any and all uses of this term in

9   patent claims." *Id.* at 1218.  In *Hamilton Prods., Inc. v. O'Neill*, 492 F. Supp. 2d 1328, 1338-41

10  (M.D. Fla. 2007), the court's holding was based on voluminous evidence, including inventor and

11  expert testimony, that supported a finding that the limitation at issue, the dimensions of a

12  universal seatbelt buckle, were "particularly critical to its validity, because it is undisputed that

13  those dimensions are what made it patentable."  In a similar vein, the court in *Synthes (USA) v.*

14  *Smith & Nephew, Inc.*, 547 F. Supp. 2d 436 (E.D. Pa. 2008), invalidated claims incorporating the

15  term "less than about 2%" because the term was directed to an essential feature of the patented

16  invention.  *Id.* at 454 ("The ratio of the studs or bone contact area to the area of the plate's lower

17  surface is a crucial aspect of the invention in the '036 patent, which is directed specifically

18  towards a plate that minimizes bone contact. The phrase 'less than about 2%' is clearly directed

19  at that essential feature, yet it is impossible to tell exactly what constitutes 'about 2%.'").

20       ADM has provided no evidence that the term "at least approximately adapted" could not

21  be understood by one of skill in the art.  Accordingly, the Court should therefore decline to find

22  the term "at least approximately adapted" indefinite.  *Wellman, Inc.*, 642 F.3d at 1366 ("Thus, an

23  accused infringer must demonstrate by clear and convincing evidence that one of ordinary skill

24  in the relevant art could not discern the boundaries of the claim based on the claim language, the

25  specification, the prosecution history, and the knowledge in the relevant art." (quoting

26

27  [6]      It is also worthy of note that the *Kimberly-Clark* court used "approximately" as a
    construction for "about," rending it unlikely that the same court would find "approximately"
28  indefinite, as ADM argues.

*Haemonetics*, 607 F.3d at 783)); *Honeywell*, 609 F.3d at 1301 ("If the meaning of the claim is discernible, even though the task may be formidable and the conclusion may be one over which reasonable persons will disagree, we have held the claim sufficiently clear to avoid invalidity on indefiniteness grounds." (citation omitted)); *Pulse Eng'g,* No. 08-cv-0595, 2009 U.S. Dist. LEXIS 26885, at *12–18 (holding claim terms not indefinite and not requiring construction).

### 4.    "recess in the spoiler is groove-shaped"

| Claim | Bosch's Proposed Construction | ADM's Proposed Construction |
|-------|-------------------------------|-----------------------------|
| 6 | No construction is necessary | recess in the spoiler is groove-shaped and is not an aperture or hole, but merely an indentation |

As noted in Bosch's Opening Brief (D.I. 84 at 6), ADM agrees that this term is understandable, but repeats its arguments and construction with respect to the word "recess." As discussed above, ADM's arguments are without merit and should be rejected (*see* Section A.1, *supra*).

### B.    Claim Terms From The '988 Patent

### 1.    "hinge half"

| Claim | Bosch's Proposed Construction | ADM's Proposed Construction |
|-------|-------------------------------|-----------------------------|
| 1 | portion of the coupling part formed by the bearing recess | the one of the two coupling part halves in which the entire bearing recess is formed |

ADM's proposed construction for "hinge half" (i) reads a limitation into claim 1 of the '988 patent based on an extrinsic dictionary definition for the term "half," and (ii) includes an additional unsupported limitation that "the entire bearing recess" must be formed therein.

As noted in Bosch's Opening Brief, there is no discussion in the specification of a second coupling part half or that the bearing recess is required to be entirely within the hinge half (Bosch Br. at 6–7). ADM states that "the 'hinge half' is repeatedly referenced throughout the specification as having a hinge axis" (ADM Br. at 15 (citing the '988 patent (Ex. B) at 1:51–52;

4:35–37)).  ADM's citations appear to be incorrect as the words "hinge axis" do not appear in the cited sections.  Nonetheless, ADM's argument that the "hinge half" includes a "hinge axis" supports Bosch's construction, which construes "hinge half" as the portion of the coupling part formed by the bearing recess.[7]  (Bosch Br. at 6–7).

ADM's proposed construction misinterprets the coupling part as having both a hinge half and an "other half" (ADM Br. at 16).  However, hinge half, as used in claim 1 of the '218 patent describes half of a hinge, not half of the coupling part as ADM argues.  The coupling part includes a single hinge half, with the other hinge half being embodied on the wiper arm (Ex. B. at 1:20–23 (describing both the "hinge half" of the coupling part, the term at issue here, and the separate "hinge half of the wiper arm," which is not at issue)).

In support of its construction, ADM relies on an extrinsic dictionary definition of the word "half" (ADM Br. at 16).  However, ADM's own definition injects ambiguity as to whether "half" must mean equal portions or simply portions of an item (*see* D.I. 91 Ex. 7 (defining "half" as, among other things, "Partial or incomplete," "Not entirely or sufficiently," "A part of something approx. equal to the remainder")).  None of the definitions cited by ADM require two halves to be on the coupling part.  Other dictionaries evince similar definitions at odds with ADM's construction (though not Bosch's).  *E.g.*, Ex. M, Webster's Third New International Dictionary at 1021 (defining "half" as, among others, "a part of a thing equal approximately equal to the remainder" or "a sizable portion").  ADM's construction, which requires two "halves," both on the coupling part, is unsupported by the intrinsic evidence and relies on an ambiguous, extrinsic dictionary definition of "half."  *See Anderson v. Int'l Eng'g & Mfg., Inc.*, 160 F.3d 1345, 1348–49 (Fed. Cir. 1998) ("dictionary definitions of ordinary words are rarely dispositive of their meaning in a technological context. A word describing patented technology takes its definition from the context in which it was used by the inventor.").

---

[7]      The descriptions of the figures, which do mention "hinge axis," show such axis generally being projected from the bearing recess.  *E.g.*, Ex. B at Figs. 1, 2, 4 (hinge axis is identified by numeral 52); 5:20–22; 6:1.

Further, ADM does not provide any support for its proposed limitation that "the entire bearing recess" must be formed in the hinge half (*see generally* ADM Br. at 15–16). Accordingly, the Court should decline to adopt ADM's construction and accept Bosch's construction.

### 2. "considerably shallower"

| Claim | Bosch's Proposed Construction | ADM's Proposed Construction |
|-------|-------------------------------|------------------------------|
| 1 | visibly lower | indefinite |

ADM argues that "considerably shallower" is unable to be construed because neither "considerably" nor "shallower"[8] can be understood and because the patent does not define "a ratio of the difference in thickness between the shallower portion and the other portion in the claimed coupling part" (ADM Br. at 17–18). As set forth above, it is not necessary for a patentee to "define his invention with mathematical precision in order to comply with the definiteness requirement." *Oakley*, 316 F.3d at 1341 (citation omitted). Indeed, ADM provides no evidence that one of skill in the art would be unable to understand the term.

As noted in Bosch's Opening Brief, the figures of the patent show the difference in thickness between the shallower portion and the rest of the coupling part (Bosch Br. at 7 (citing Ex. B at Fig. 3; 5:12–15)). One of skill in the art would have no trouble discerning that the shallower portion (denoted by reference numeral 50) is visibly lower than the remainder of the coupling part.

---

[8]     ADM argues, citing no support, that "shallower" is a term of approximation. Of course it is not; shallower simply means "more shallow"; *i.e.*, having less depth.



FIG.3

ADM provides no support for its argument that "considerably shallower" is indefinite. Instead, it argues, again relying on extrinsic evidence, that a dictionary definition of "considerably" is at odds with Bosch's proposed construction of "visibly lower" (ADM Br. at 17–18). However, even if the Court were to accept ADM's argument that "considerably" must mean "large in amount, extent or degree," Bosch's construction is still appropriate. As the item being considered is small in size, on the order of between 16–25 mm wide and of a similar order in height (*see* Ex. B at 2:8–10), "visibly" is an appropriate definition for considerably.

ADM has provided no support that the limitation "considerably shallower" is insolubly ambiguous and the Court, to the extent it deems construction necessary, should adopt Bosch's construction. *See Wellman, Inc.*, 642 F.3d at 1366–68.

        **3.**     **"by each of which one cheek region is formed on one of two longitudinal sides (44) of the coupling part"**

| Claim | Bosch's Proposed Construction | ADM's Proposed Construction |
|---|---|---|
| 2 | each side region is formed on one of two longitudinal sides of the coupling part | indefinite |

ADM argues that the phrase "by each of which one cheek region is formed on one of two longitudinal sides (44) of the coupling part" is insolubly ambiguous and incapable of construction (ADM Br. at 18–19). ADM is incorrect—Bosch's construction provides the clarification that "each side region is formed on one of two longitudinal sides of the coupling

part." This clarification is apparent from the face of the patent (Ex. B at 4:45–48; Fig. 3) and there is no other plausible meaning for the term (*see also* Bosch Br. at 8). *Hoffer v. Microsoft Corp.*, 405 F.3d 1326, 1331 (Fed. Cir. 2005) (reversing summary judgment of invalidity for indefiniteness based on typographical error where "the error was apparent from the face of the patent, and that view is not contradicted by the prosecution history"); *Exxon Research & Eng'g Co. v. United States*, 265 F.3d 1371, 1375 (Fed. Cir. 2001) ("If the meaning of the claim is discernible, even though the task may be formidable and the conclusion may be one over which reasonable persons will disagree, we have held the claim sufficiently clear to avoid invalidity on indefiniteness grounds."); *Freedom Wireless, Inc. v. Alltel Corp.*, Nos. 2:06cv504, 2:06cv505, 2:07cv151, 2:07cv152, 2008 WL 4647270, at *13 (E.D. Tex. Oct. 17, 2008) (rejecting argument that typographical error rendered claim indefinite); *Shuffle Master, Inc. v. Awada*, No. 2:04-cv-0980, 2007 WL 4166109, at *10 (D. Nev. Nov. 16, 2007) (construing claim to correct typographical error).

ADM argues that no correction is possible because there are two potential fixes to the language (ADM Br. at 18–19).[9] However, both potential corrections arrive at the same meaning, that each side region is formed on one of two longitudinal sides of the coupling part. Indeed, ADM's own brief says as much—ADM's identified corrections lead to, according to ADM, a limitation that reads either "each cheek region is formed on one of two longitudinal sides," or "one cheek region is formed on one of two longitudinal sides" (ADM Br. at 19). These are, respectively, Bosch's proposed construction[10] and a construction that is essentially the same.

Moreover, the intrinsic evidence makes it clear that each cheek region is formed on one of the two longitudinal sides (*see* Ex. B at 4:45–48 ("one cheek region is disposed on each of the two long sides of the coupling part"); Figs. 3, 4). ADM ignores this clear statement in the specification.

---

[9]     According to ADM, one can either "delete 'by' and 'of which'" or "by each of which" (ADM Br. at 19).

[10]    The only difference is that "cheek region" is substituted with "side region" per the parties' agreed-upon construction of "cheek region" (*see* Bosch Br. at 7).

Because Bosch's construction is appropriate and supported by the specification and because ADM has failed to carry its burden to show the claim is indefinite, the Court should adopt Bosch's construction.  *See Wellman, Inc.*, 642 F.3d at 1366–68; *Hoffer*, 405 F.3d at 1331; *Shuffle Master*, 2007 WL 4166109 at *10.

**4.**        **"near one end of the coupling part"**

| Claim | Bosch's Proposed Construction | ADM's Proposed Construction |
|-------|-------------------------------|------------------------------|
| 11 | no construction necessary; alternatively, if construction is deemed necessary, "in the vicinity of one end of the coupling part" | close to one longitudinal end of the coupling part and closer to that end than to the other longitudinal end of the coupling part |

ADM's proposed construction of the phrase "near one end of the coupling part" improperly reads in a limitation—requiring the bearing recess to be *closer* to one end of the coupling part than the other—from a preferred embodiment described in the specification.  ADM Br. at 19–22.[11]   *See Comark Commc'ns*, 156 F.3d at 1187 ("the language that Harris [the defendant] argues should limit claim 1 is clearly found in the . . . patent's description of the preferred embodiment. It is precisely against this type of claim construction that our prior case law counsels."); *see also Acumed*, 483 F.3d at 807–08 (rejecting defendant's proposed construction as "an improper attempt to read a feature of the preferred embodiment into the claims as a limitation").

The claim language "near one end of the coupling part" does not discuss any relation to another end.  ADM first argues that "near" taken by itself must mean, essentially, "nearer" (ADM Br. at 19–20).  However, ADM does not identify any support for that position.

The specification language ADM does identify as supporting its position similarly does not require that "near one end" means "closer to that end than to the other longitudinal end"

---

[11]        ADM acknowledges that its motivation for seeking its proposed construction is to read in a limitation in an attempt to set up a non-infringement argument for trial (*see* ADM Br. at 21–22 (describing and showing ADM's accused products)).  *SRI Int'l*, 775 F.2d at 1118 ("It is only *after* the claims have been *construed without reference to the accused device* that the claims, as so construed, are applied to the accused device to determine infringement." (emphasis in original)).

1    (ADM Br. at 20)— the cited passage merely makes clear that there are two ends, at least one of
2    which is near (Ex. B at 1:26–33).

3        ADM also argues that rejecting its construction would allow any bearing recess to meet
4    the claim (ADM Br. at 20).  ADM is incorrect—the recess is required to be near at least one end
5    of the coupling part to meet the limitation.

6        The remainder of ADM's argument relies on the figures, which generally show the
7    bearing recess closer to one end than the other.  However, absent a clear disclaimer, the figures
8    do not limit the scope of the claims.  "Claims of a patent may only be limited to a preferred
9    embodiment by the express declaration of the patentee, and there is no such declaration here."
10   *Playtex Prods., Inc.*, 400 F.3d at 907–08 (rejecting district court's claim construction because
11   "By its reliance on the figures, the district court improperly limited claim 1 to a preferred
12   embodiment"); *see also MBO Labs.*, 474 F.3d at 1333–34 ("patent coverage is not necessarily
13   limited to inventions that look like the ones in the figures. To hold otherwise would be to import
14   limitations onto the claim from the specification, which is fraught with 'danger.' Limiting claims
15   from the specification is generally not permitted absent a clear disclosure that the patentee
16   intended the claims to be limited as shown." (internal citations omitted)).  ADM points to no
17   disclaimer let alone a clear disclaimer that the patentee intended to limit the claims to the
18   drawings.  ADM's proposed construction should therefore be rejected.

19       Since the claim term "the bearing bore is disposed in the coupling part near one end
20   thereof" is easily understandable, it can be applied by the jury without construction.  *Silicon*
21   *Graphics*, 607 F.3d at 798; *Halo Elecs.*, 721 F. Supp. 2d at 1004.  Accordingly, no construction
22   is necessary.  Alternatively, Bosch's construction, "in the vicinity of one end of the coupling
23   part" appropriately sets forth the meaning of the term based on the intrinsic evidence (*see* Ex. B
24   at 4:31–33).  *See General Mills, Inc. v. Hunt-Wesson, Inc.*, 103 F.3d 978, 981 (Fed. Cir. 1997)
25   ("To ascertain the meaning of, or construe, patent claims, the intrinsic evidence of record should
26   be considered first, i.e., the patent itself, including the claims, the specification, and the
27   prosecution history." (citation omitted)).

28

C. **Claim Terms From The '926 Patent**

1. **"$I_{zz}$ is a moment of inertia of a cross sectional profile around a z-axis perpendicular to an taxis, which adapts along with the support element (12), and perpendicular to a y-axis"**

| Claim | Bosch's Proposed Construction | ADM's Proposed Construction |
|-------|-------------------------------|------------------------------|
| 1 | $I_{zz}$ is a moment of inertia of a cross sectional profile around a z-axis perpendicular to an s-axis which adapts along with the support element, and perpendicular to a y-axis | $I_{zz}$ is the moment of inertia of the cross sectional profile around the z-axis, wherein the z-axis is perpendicular to 1) the s-axis, which adapts along with the support element and 2) the y-axis, and wherein the orientation of the z-axis and the orientation of the y-axis are show [*sic*] in Figure 4 and Figure 5. |

ADM argues that the phrase "$I_{zz}$ is a moment of inertia of a cross sectional profile around a z-axis perpendicular to an [s-axis], which adapts along with the support element (12), and perpendicular to a y-axis" limits the moment of inertia, $I_{zz}$, to the particular axes shown in the figures (ADM Br. at 4–5).[12] ADM further argues that because the figures only show one configuration, the claims are limited to that understanding of the axes. But the claims do not limit what "a z-axis" and a "y-axis" can be, other than that both must be perpendicular to the s-axis. ADM's attempt to impose this limitation impermissibly imports limitations from the figures. *MBO Labs.*, 474 F.3d at 1333–34 ("patent coverage is not necessarily limited to inventions that look like the ones in the figures. To hold otherwise would be to import limitations onto the claim from the specification, which is fraught with 'danger.' Limiting claims from the specification is generally not permitted absent a clear disclosure that the patentee intended the claims to be limited as shown." (internal citations omitted)).

ADM argues that without its construction, the limitation would be meaningless and, presumably, one would be unable to calculate $I_{zz}$. However, the specification teaches exactly how to calculate $I_{zz}$ for the situation where the support element has a substantially rectangular

---

[12] The parties agree that "taxis" is a typographical error and should read "s-axis." ADM Br. at 4.

cross-section and substantially constant width and thickness—the only configuration covered by claim 1. Specifically, $I_{zz}$ is calculated by the formula:

$$I_{zz} = \frac{d * b^3}{12}$$

where d is the thickness of the support element and b is the width of the support element (Ex. C at 6:58–7:1). Indeed, claim 1 of the '926 patent specifically references the "d" and "b" elements of the above equation (Ex. C at 10:23–24 (describing the support element's cross-section as having "a substantially constant width b and a substantially constant thickness d")). One of skill in the art would recognize this equation as the equation for calculating a moment of inertia in the direction of the z-axis, that is, horizontally to the support element, and would have no need of axis labels (*see* Dubowsky Decl. ¶¶ 9–16).

As ADM's construction impermissibly imports limitations from the specification and figures, it should be discarded. *Playtex*, 400 F.3d at 907–08 (rejecting district court's claim construction because "By its reliance on the figures, the district court improperly limited claim 1 to a preferred embodiment").

### 2.    "two individual bars"

| Claim | Bosch's Proposed Construction | ADM's Proposed Construction |
|-------|-------------------------------|------------------------------|
| 3 | no construction necessary; alternatively, if construction is deemed necessary, two bars separated at least in part by a space | two distinct and separate bars |

ADM argues that Fig. 5 of the '926 patent supports its overly limiting construction of the phrase "two individual bars (ADM Br. at 7–8). But Fig. 5, as discussed in Bosch's Opening Brief, shows a cross-section of the support element—there is no support in that figure for ADM's construction that the two individual bars be "distinct and separate" (Bosch Br. at 11–12). The specification, which states that the individual bars are "divided into two separate spring bars 42 and 44 as shown in Fig. 5" (Ex. C at 7:10–11), also does not support ADM's attempt to make the bars "distinct." If anything, it supports Bosch's construction that the bars be separated at least in

1   part by a space.  Similarly, ADM's extrinsic evidence, a dictionary definition of "individual,"

2   does not imply that the bars be totally distinct.

3       ADM also relies on the extrinsic evidence[13] in the form of deposition testimony of Peter

4   De Block, the inventor of the '926 patent and a native Dutch speaker, to support its position.  But

5   Mr. De Block was not asked what was meant by "two individual bars" as used in the '926 patent.

6   Instead, Mr. De Block was shown one of ADM's accused products and asked, without reference

7   to the patent, if the support element was "a single piece of metal, as opposed to two individual

8   bars."  (D.I. 91 Ex. 8, De Block Tr. 340:15–20).  Bosch's counsel objected quite appropriately,

9   as a), the question was compound (asking both if the element was a single piece of metal, and

10   whether the element was two individual bars); b) it sought a legal conclusion as to infringement;

11   and c) it misleadingly did not reference what "two individual bars" meant in the context of the

12   patent.[14]

13       The remainder of ADM's argument consists of comparing its product to Bosch's (ADM

14   Br. at 8–9).  The structure of either product is irrelevant to claim construction.  *Int'l Visual Corp.*

15   *v. Crown Metal Mfg. Co.,* 991 F.2d 768, 771–72 (Fed. Cir. 1993) (reversing summary judgment

16   of non-infringement because district court's claim construction was based on patentee's

17   product); *SRI Int'l*, 775 F.2d at 1118 ("It is only *after* the claims have been *construed without*

18   *reference to the accused device* that the claims, as so construed, are applied to the accused device

19   to determine infringement." (emphasis in original)).

20       Because ADM's construction finds no support in the intrinsic evidence and because

21   ADM's argument relies on irrelevant extrinsic evidence, the Court should decline to construe this

22   term.  *Silicon Graphics*, 607 F.3d at 798; *Halo Elecs.*, 721 F. Supp. 2d at 1004.  Alternatively,

23   the Court should adopt Bosch's construction, which is supported by the specification (*e.g.*¸Ex. C

24   at Fig. 5; 7:10–11), and does not rely on extrinsic evidence.  *See General Mills*, 103 F.3d at  981

25

26   [13]     *See AIA Eng'g Ltd. v. Magotteaux Int'l S/A*, 657 F.3d 1264, 1273 (Fed. Cir. 2011)
        (describing "inventor testimony" as "extrinsic evidence").

27   [14]     ADM's statement that Mr. De Block agreed that "a design such as ADM's does not use
28   the *claimed* 'individual two bars,'" (ADM Br. at 9), is misleading.  Mr. De Block made no
        reference to the claims of the patent.  *See* D.I. 91 Ex. 8.

1  ("To ascertain the meaning of, or construe, patent claims, the intrinsic evidence of record should
2  be considered first, i.e., the patent itself, including the claims, the specification, and the
3  prosecution history." (citation omitted)).

4

5  **CONCLUSION**

6       For the reasons set forth above and in Bosch's Opening Brief, the Court should adopt
7  Bosch's proposed constructions where offered and decline to construe the remaining terms.

8

9

10  Dated this 16th day of December, 2011.

11                   By: /s/ Marla DaVee
12                      Todd M. Touton
                    Nevada Bar No. 1744
13                      Marla DaVee
                    Nevada Bar No. 11098
14                      LIONEL SAWYER & COLLINS
                    1700 Bank of America Plaza
15                      300 South Fourth Street
                    Las Vegas, Nevada 89101
16                      (702) 383-8888

17                      Mark A. Hannemann
18                      Jeffrey S. Ginsberg
                    Richard M. Cowell
19                      KENYON & KENYON LLP
20                      One Broadway
                    New York, NY 10004
21                      (212) 425-7200

22                      *Attorneys for Robert Bosch, LLC*

23

24

25

26

27

28

1

## CERTIFICATE OF SERVICE

2       I hereby certify that I am an employee of Lionel Sawyer & Collins, and that on this 16th

3 day of December, 2011, I caused to be served a true and correct copy of the foregoing

4 **PLAINTIFF ROBERT BOSCH LLC'S RESPONSIVE SUPPLEMENTAL CLAIM**

5 **CONSTRUCTION BRIEF** in the following manner:

6       (ELECTRONIC SERVICE) Pursuant to Fed. R. Civ. P. 5(b)(3) and LR 5-4, the above-

7 referenced document was electronically filed and served upon the party listed below through the

8 Court's Case Management and Electronic Case Filing (CM/ECF) system:

9
      Michael D Rounds            Russell E. Levine
      Watson Rounds, PC           Craig Leavell

10
      5371 Kietzke Lane            Bryce Budin

11
      Reno, NV 89511             Matthew Shiels
                                            Kirkland & Ellis LLP

12
                                            300 North LaSalle Street, 26th Floor
                                            Chicago, IL 60654

13

14
                                     */s/ Marla DaVee*

15
                                     LIONEL SAWYER & COLLINS

16

17

18

19

20

21

22

23

24

25

26

27

28